**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Ryan Q. Keech (SBN 280306)
ryan.keech@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com

Ketajh Brown (admitted *pro hac vice*)
ketajh.brown@klgates.com
**K&L GATES LLP**
70 W. Madison Street
Suite 3300
Chicago, IL 60202
Telephone: 312.807.4328

*Attorneys for Plaintiff*
*CITIZENS BUSINESS BANK*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation, <br><br> Plaintiff, <br><br> v. <br><br> MISSION BANK, a California corporation and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No. 5:22-cv-01473-FLA-SP <br> Hon. Fernando L. Aenlle-Rocha <br><br> **PLAINTIFF CITIZENS BUSINESS BANK'S EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ZACHARY T. TIMM IN SUPPORT THEREOF; [PROPOSED] ORDER** <br><br> Current Trial Date:    June 25, 2024 <br><br> Proposed New Trial Date:    August 27, 2024 |

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-19, Plaintiff Citizens Business Bank ("Plaintiff" or "CBB") will, and hereby does, respectfully submit this Ex Parte Application to Modify the Scheduling Order (the "Application") to continue all deadlines by approximately two months.

The trial in this action is currently set for June 25, 2024, at 8:30 a.m. (*See* Docket Entry "DE") 42.)  CBB has previously requested one modification of the Scheduling Order (DE 35), which was granted on October 13, 2023 (DE 38), extending the original March 12, 2024 trial date by approximately three months.  CBB recognizes this Court's prior Order explaining good cause would be required for any further continuance.  Good cause exists because, *inter alia*, CBB just learned of serious discovery misconduct perpetuated by Mission, including that Mission failed to produce vital documents establishing its liability even though Mission previously represented that its productions in response to CBB's requests for production served a year ago were complete as of July 2023.

Mission's conduct throughout this action can best be described as aggressive interference with third party discovery that, until recently, hid what now appears to be Mission's serious and material failure to comply with discovery obligations.  Mission told CBB in July 2023 that it had produced all documents responsive to discovery requests that CBB served on it over a year ago.  Mission even used its now-disproven representation that it had produced all documents responsive to discovery requests as justification to attempt to prevent third parties from producing communications with Mission and its employees regarding facts relevant to this dispute.  Mission's efforts failed.  CBB started to receive those third party productions in December 2023.  CBB has now learned from those productions that Mission's repeated representations that it had produced all responsive documents were false.  The third party productions included precisely the documents that Mission represented to CBB and this Court that

they would not—namely, communications with Mission that Mission had not produced. Again, Mission represented to this Court that the third party productions were unnecessary because Mission had searched for and produced all communications with the third parties. The third party productions have now proved that representation was false.

For example, third party (and former CBB employee) Dustin Della ("Della") has now produced communications between Della and Mission executives in which Della transmits CBB's confidential, proprietary, and trade secret information **while Della was still employed by CBB**. Mission did not produce these documents, despite them being sent to executives at Mission email addresses. These communications definitively demonstrate that Della sent Mission executives CBB's documents and information, including customer, financial, policy, and pipeline information while he was employed by CBB, and also expressly include notes that those documents were being sent for the purpose of soliciting CBB's customers. These communications also include information pertaining to CBB's former employees to left to work for Mission and demonstrate that Della was instrumental in identifying and recruiting these employees on Mission's behalf—again, while he was still employed by CBB. CBB had raised concerns that Mission and Della had engaged in such conduct with Mission before ever filing its Complaint, and was repeatedly assured that no such conduct had occurred. Third party productions demonstrate those assurances were false. As a result of Mission's misconduct, Mission has still not yet finished producing all documents responsive to CBB's discovery requests that were served in December 2022, despite repeatedly assuring CBB that it had. CBB only learned of this deficiency through review of third party document productions made in December 2023—and which, again, Mission fought to prevent.

Additionally, seven of the nine former CBB employees that Mission's counsel represents have still not produced *any* documents in response to subpoenas served in late September and early October 2023. And CBB has concerns about the sufficiency

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

of the productions made by the remaining two, including because third party productions also include at least one document that should have been produced by those former CBB employees, but was not. CBB has raised concerns about these productions, with further productions promised but not yet complete.

Mission and the former employees' deficient document productions are of further issue, as the Parties have been engaged in scheduling depositions and CBB desires to utilize complete document productions in order to best prepare for the same.

Good cause further exists to grant this Application and modify the scheduling order because, through CBB's meet and confer efforts on Mission's discovery misconduct and deficient document productions, CBB learned that Mission's executive had deleted important documents and apparently has continued to delete documents up through the present, leading to potential spoliation issues. Specifically, CBB learned for the first time on January 15, 2024, that certain emails and documents appeared to be missing from the electronic database Mission's counsel had access to. CBB then learned on January 19, 2024 that one of Mission's custodians, Bryan Easterly ("Easterly") had indeed deleted highly relevant documents and emails, and that he has continued to delete emails and documents throughout the course of this litigation. CBB requires time to, *inter alia*, compel production as to the remaining deficient productions before the depositions of the third parties and party witnesses and conduct a forensic analysis to identify the extent of potential spoliation issues, and to further investigate and bring potential motions as a result.

CBB makes this Application on the grounds that:

1) CBB has been diligently engaging in discovery since discovery opened in this matter, and including since this Court granted CBB's first *ex parte* application;

2) despite Mission's repeated representations that it had conducted an extensive collection and review of documents in responsive to CBB's requests and had completed its document productions in July 2023, that collection, review, and production was fundamentally flawed and woefully deficient in that it failed to include key documents

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

confirming Mission's liability.  CBB learned this through third party discovery that it

obtained since the first continuance (and over Mission's objection and motion to quash),

that confirms the conspiracy between Della and Mission, whereby Della sent CBB's

confidential, proprietary, and trade secret information to Mission while he was still

employed at CBB as early as January 2022—two months *before* Della resigned from

CBB and joined Mission;

3) Mission had not produced many of these documents,[1] despite that they are

clearly relevant and responsive to requests for production served on Mission over a year

ago—in December 2022—and in response to which Mission contended it had

completed its productions by July 2023;

4) upon CBB's inquiry into *why* Mission had not produced these documents,

CBB learned, for the first time on January 15, 2024, that Missions collection and review

of documents was woefully deficient in that it, among other things, excluded key

documents confirming Mission's liability.  On January 19, 2024, CBB learned that one

of Mission's executives and custodians, Bryan Easterly ("Easterly") had deleted those

key documents and, even more disturbing, has continued to delete documents through

the present.  Concerned with potential spoliation issues, CBB, therefore, has requested

a forensic inspection of Easterly's devices and/or Mission's servers to determine the

extent, timing, and scope of Easterly's deletions, as well as to determine if any other

Mission custodians have engaged in similar deletions.  Mission has refused this demand.

Thus, CBB will likely be forced to file a motion to compel.  What's more, the documents

identified through Della's and other third parties' productions are of the type that would

likely be shared internally at Mission in order to best use the same to solicit CBB's

customers.  And these documents were further of the type that CBB notified Mission

likely existed before ever bringing this action.  Easterly's deletion of those documents

---

[1] Mission made a further production on January 23, 2024, which CBB will need to review and compare with third party productions (including those still being made) to evaluate its completeness.

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

does not explain why Mission failed to identify and/or produce those documents, or why CBB is only now obtaining them through third party discovery despite Mission repeatedly insisting they did not exist; and

5) despite repeated promises to do so, former CBB employees represented by Mission's counsel have not produced any documents in response to subpoenas issued and served upon them in September and October 2023. Counsel has stated that these productions are forthcoming this week, but as yet have not been made. CBB is concerned that the productions, if they are ever made, will not be complete, which may require further motion practice. Once these productions are finally complete, CBB will then need time to review the same and utilize them in order to prepare for depositions. CBB will be unable to do so prior to the current, February 9, fact discovery cut-off.

For these reasons and as explained in greater detail in the accompanying Memorandum of Points and Authorities, CBB has good cause in seeking *ex parte* relief, which is warranted under the circumstances. Specifically, CBB seeks this continuance to, *inter alia*:

- Pursue complete document productions from Mission given that CBB has recently discovered that Mission's prior representations that its productions were complete was false. CBB was only able to discern deficiencies in Mission's production through a review third party productions, including those made in December 2023, and a comparison with Mission's own productions. Mission sought to prevent these third party productions on the grounds that, *inter alia*, Mission had already produced all responsive documents in the possession of these third parties (including Della)—something Mission assured both CBB and this Court of. Again, it is now clear that this was false. Mission has recognized the deficiencies in its document collection and production, and agreed to produce additional documents. Mission made one such production on January 23, 2024, and CBB expects to need time to review this and any

6

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

1   further productions and evaluate them for completeness, as well as utilize

2   such productions in impending depositions.  Mission has asserted that,

3   with this new production Mission has now completed its production and

4   produced all responsive documents.  Mission has made this assertion

5   before, however, which proved to be false.  CBB needs time to verify if

6   such assertion is true this time. CBB will be unable to effectively do so

7   prior to the depositions that are scheduled/being scheduled to occur before

8   the February 9 fact discovery cut-off.

9   • Seven of the former CBB employees subpoenaed by CBB (each of whom

10   are represented by Mission's counsel) have not yet produced documents

11   in response to the subpoenas issued in September 2023 and served on them

12   in September and early October 2023, despite repeated promises that such

13   productions were forthcoming.  Further, two additional former CBB

14   employees (both of whom are also represented by Mission's counsel)

15   made document productions that, like Mission's, appear to be deficient

16   and incomplete as they are missing at least one document produced by

17   Della.  These productions are important because CBB's claims include

18   that Mission and Della conspired to solicit these former employees, and

19   Della's production to-date demonstrates he did indeed have a large role in

20   that process.

21   • Pursue an investigation into the potential spoliation issue that it

22   discovered for the first time on January 15 (a discovery that was bolstered

23   by information learned on January 19, but the extent of which CBB is still

24   trying to ascertain), including through forensic investigation and by any

25   other appropriate means.  With the close of fact discovery currently set for

26   February 9, and given Mission's counsel's stated unwillingness to conduct

27   such forensics to-date, such investigation simply cannot be completed

28   before the close of fact discovery.

7

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

Mission knows that a continuance is not in its interest given that it will likely only further reveal its discovery misconduct. Thus, Mission has refused to cooperate in an investigation into that misconduct and has refused to stipulate to jointly request a short continuance of dates to allow such investigation. Mission has not identified any prejudice or inconvenience it will experience as a result of a continuance. Rather, Mission's position appears to be that it believes it has done nothing wrong, and so should not be required to remain in this lawsuit. That is not prejudice sufficient to prevent the short continuance requested given that it was Mission's discovery misconduct that has caused the current situation.

Accordingly, *ex parte* relief is warranted here. If this issue is heard on regular notice, any decision would be rendered after the close of discovery. Further, Mission will undoubtedly use that close of discovery to frustrate any attempts by CBB to engage in investigations (forensic an otherwise) to determine the scope and extent of the potential spoliation issue facing Mission. Moreover, CBB is bringing this Application as expeditiously as possible—and in fact only two business day after learning that Easterly actively deleted relevant emails and has continued to delete emails throughout the course of this action.

CBB has met and conferred with Mission regarding the relief sought in this Application on several occasions in the hopes that Mission would agree to the requested relief so as not to be forced to file this Application. Such meet and confer efforts included providing written and oral notice of this Application pursuant to Local Rule 7-19.1. CBB has repeatedly raised the need to continue dates, the most recent during a telephonic meet and confer (and subsequent email) on January 19. (Timm Decl., at ¶¶ 51-52.) During the January 19, 2024 telephone conference, CBB's counsel informed Mission's counsel that, if Mission would not agree to extend the discovery cut-off, CBB intended to file this Application by early the next week. Mission has not agreed, thus necessitating this Application. Mission's counsel indicated they expected CBB to file this Application, and would oppose the same.

8

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

1       Pursuant to Local Rule 7-19, the contact information for all other parties in this

2   action is as follows:

| | |
|---|---|
| Stephen G. Larson (SBN 145225) | *Attorneys for Defendant Mission Bank* |
| slarson@larsonllp.com | |
| Jonathan E. Phillips (SBN 233965) | |
| jphillips@larsonllp.com | |
| Catherine S. Owens (SBN 307626) | |
| cowens@larsonllp.com | |
| Tyler J. Franklin (SBN 324281) | |
| tfranklin@larsonllp.com | |
| LARSON LLP | |
| 555 South Flower Street, Suite 4400 | |
| Los Angeles, California 90071 | |
| Telephone:  (213) 436-4888 | |
| Facsimile:   (213) 623-2000 | |

    This Application is based on this Notice, the attached memorandum of points and authorities, the attached declaration of Zachary T. Timm, all pleading, papers and records in this action, and upon such further evidence as may be presented at the hearing.

Respectfully Submitted,

**K&L Gates LLP**

Dated:  January 23, 2024    By:  */s/ Zachary T. Timm*

Christina N. Goodrich
Zachary T. Timm
*Attorneys for Plaintiff Citizens Business Bank*

**EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER**

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................1

**I.     INTRODUCTION** .................................................................................1

**II.    FACTUAL AND PROCEDURAL HISTORY** .....................................2

     A.    Della Secretly Works as a Double Agent for Mission While Still Working at CBB, which CBB Discovers after Della Resigns from CBB ....................................................................................2

     B.    CBB Files its Complaint Against Mission, who Asserts that it has Conducted a "Comprehensive Investigation" and Did Not Receive CBB's Information From Della ..........................................3

     C.    CBB Diligently Pursues Discovery on Mission and Third Parties, which Mission Tries to Prevent ...............................................3

     D.    Mission Represents to CBB, and this Court, That it Had Produced All Responsive Documents, Including Those Contained in CBB's Former Employees' Personal Email Addresses ..............................4

     E.    Mission's Motion to Quash is Denied and CBB Pursues Third Party Discovery on Customers and Former Employees, Which Mission Represented was Unnecessary Because it had Produced All of the Documents Sought ................................................................5

     F.    A Review of Della's Production Demonstrates Mission's and the Former CBB Employees' Productions Were Deficient ...................7

     G.    CBB's Counsel Inquires About Mission's Deficient Production and Learns of Potential Spoliation ..........................................9

**III.   JUDICIAL STANDARD** .....................................................................11

**IV.    ARGUMENT** .....................................................................................12

     A.    CBB Has Been Diligent ..............................................................12

     B.    The Needs for the Continuance Would Be Met if the Continuance Is Granted ....................................................................................16

     C.    Neither Mission Nor the Court Will Be Inconvenienced by a Continuance .............................................................................18

     D.    CBB Will Be Prejudiced if the Continuance is Denied ................19

**V.     CBB SATISFIES THE REQUIREMENTS FOR EX PARTE RELIEF** ..................................................................................................21

**VI.    CONCLUSION** .................................................................................22

i

TABLES OF CONTENTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Am. Career Coll., Inc. v. Medina*,
  No. CV 21-698 PSG (SKX), 2022 WL 3452790 (C.D. Cal. July 6, 2022) ..............15

*Bearchild v. Cobban*,
  947 F.3d 1130 (9th Cir. 2020) ...................................................................................11

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  No. 10-CV-03428-LHK, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012).........................17

*Bryant v. Mattel, Inc.*,
  No. C 04-09049 SGL RNBX, 2007 WL 5416681 (C.D. Cal. Jan. 26, 2007)...........17

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995).........................................................................21

*Mkrtchyan v. Sacramento Cnty.*,
  No. 2:17-CV-2366 TLN KJN, 2021 WL 5284322 (E.D. Cal. Nov. 12, 2021)..18, 19, 20

*Nolan v. City of Los Angeles*,
  2014 WL 66416 (C.D. Cal. Jan. 8, 2014)..................................................................11

*United States v. Pope*,
  841 F.2d 954 (9th Cir. 1988) ....................................................................................12

*United States v. Zinnel*,
  No. 2:11-CR-00234-TLN, 2019 WL 4054845 (E.D. Cal. Apr. 26, 2019)...............12

**Rules**

C.D. Cal. Local Rule 11-6.1 .........................................................................................22

C.D. Cal. Local Rule 7-19 ..............................................................................................2

Fed. R. Civ. P. 16(b)(4) ................................................................................................11

Fed. R. Civ. P. 26(f)........................................................................................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff Citizens Business Bank ("CBB") hereby brings this Ex Parte Application seeking a modification of the Court's Scheduling Order (the "Application") for multiple reasons.

First, Mission has engaged in discovery misconduct throughout this action, preventing CBB from timely obtaining all necessary discovery.  Mission previously that its productions were complete in July 2023.  Mission then sought to prevent third party discovery CBB determined was necessary, including by moving to quash the same, and asserting it had already produced the documents that CBB sought from the third parties (including from the former CBB employees' personal email addresses). CBB recently learned that argument was entirely meritless, and Mission's representation it had produced all responsive documents by July 2023 was false.  CBB made this discovery through a review of the very third party productions Mission sought to prevent (including, specifically, productions made in December 2023).  The recently uncovered emails—which Mission did not produce—included highly damaging emails from Della's personal email address to the Mission-issued email addresses of certain Mission executives, including key emails in which Della sent, *inter alia*, CBB's customer, financial, policy, employee, and pipeline information.  The fact that Mission withheld these documents and CBB only obtained them through third party discovery is shocking, particularly given Mission's attempt to prevent the very discovery that revealed its misconduct, as well as the fact that CBB notified Mission it believed these types of emails existed before even filing its complaint. Mission has now admitted it has many of these documents in its possession, and agreed to produce them.  Mission made a first such production on January 23, 2024.  CBB needs time to review that production to verify its completeness and/or Mission demand further productions to ensure completion, as well as additional time to review that production and cross-reference with all third party productions (including those that are still being made).

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Second, despite repeated promises of productions, many of the third parties have not commenced and/or completed their productions.  CBB has been careful to be sensitive to the holidays and any potential burden of motion practice on the third parties, but these productions need to be made.  CBB served subpoenas on several third parties, including its former employees, who were served between September and October 2023.  Mission's counsel represents nine such employees.  Seven of those nine have still not made any document productions to date.  The remaining two made initial productions on January 2, 2024, but those productions, like Mission's, appear deficient as they are missing at least one document included in third party productions.

Finally, CBB recently learned that Mission will not, and cannot produce, all responsive documents, because some of those documents have been deleted by Mission's executives.  In fact, a Mission executive has been deleting emails throughout this litigation up through the present.  CBB, therefore, requires time to conduct an investigation into potential spoliation issues, including through forensic analysis, and bring any motions warranted by the results of such investigation, including to determine *when* this executive deleted the emails Mission has admitted to deleting, what other relevant emails and documents may have been deleted, if any of the other Mission custodians have engaged in similar deletion habits, and if Mission itself has preserved any backup copies of any deleted information.

Despite attempts to resolve these issues without requiring judicial resources or interference, CBB has been unable to reach an agreement with Defendant and, thus, was forced to file this Application.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Della Secretly Works as a Double Agent for Mission While Still Working at CBB, which CBB Discovers after Della Resigns from CBB

Della resigned from CBB on March 14, 2022 and immediately joined Mission. On March 25, 2022, CBB sent a letter to Mission expressing concerns that Della (and other former CBB employees) had, *inter alia*, stolen CBB's confidential, proprietary,

2

and trade secret information to use with Mission to unfairly compete with CBB.  (DE
1-1.) CBB requested, *inter alia*, that Mission return all such information.  (*Id*.)  Mission
denied wrongdoing.  Thereafter, the Parties exchanged several communications.  In
CBB's correspondence, it set forth specific facts supporting its believe that Mission,
Della, and others had engaged in wrongdoing, but Mission held fast that it had done
nothing wrong, and that Della had never given Mission any of CBB's information.  (*See,
e.g.,* DE 1-1 – 1-6, 11.)  CBB even specifically demanded that Mission institute a
litigation hold, to the extent such hold had not already been instituted.  (*See* DE 1-2.)

**B.**     **CBB Files its Complaint Against Mission, Who Asserts That it Has
          Conducted a "Comprehensive Investigation" and Did Not Receive
          CBB's Information From Della**

On August 19, 2022, CBB filed this action asserting claims against Mission for,
*inter alia*, misappropriation of trade secrets.  (DE 1.)  Thereafter, CBB commenced
arbitration against Della for similar claims.  (Timm Decl., ¶2)  On November 30, 2022,
Mission's counsel sent CBB's counsel a letter, asserting Mission had conducted a
comprehensive investigation into CBB's claims, and had determined it had not engaged
in any wrongdoing.  (*Id.*, Ex. A.)  The letter asserted that Mission had not asked Della
or other former CBB employees to provide Mission with CBB's information, Della had
never sent Mission any of CBB's information, Mission did not possess CBB's
information, and Mission had never used CBB's information to solicit CBB's
customers.  (*Id*.)  This letter also asserted that CBB's claims were unfounded and
unsupported by evidence, and that CBB's lawsuit was frivolous and had been brought
in bad faith.  (*Id*.)  This letter lacked any factual basis and, in fact, ignored key evidence
that CBB had shared with Mission before it ever filed suit.

**C.**     **CBB Diligently Pursues Discovery on Mission and Third Parties,
          which Mission Tries to Prevent**

CBB served discovery on Mission on December 2, 2022—the same day the
Parties Joint Rule 26(f) Report was file.  (*See* DE 20; Timm Decl., ¶4.)     Mission

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

produced documents on a rolling basis. Mission's production on July 10, 2023—which Mission represented completed its production of responsive documents—was the largest production, consisting of 4,449 documents and 23,725 pages. (*Id.*, at ¶5.)

CBB reviewed Mission's documents and identified that third-party discovery was necessary. (*Id.*, at ¶6.) The first set of those subpoenas were promptly prepared and notice was given to Mission of the same on August 10, 2023. (*Id.*) Seven of those subpoenaed entities—all represented by counsel who states Mission selected him—served objections and responses to the subpoenas, including that they would consider producing documents only after Mission's motion to quash was decided (a motion that had not yet been filed). (*Id.*, at ¶7.) To avoid burden on the third parties and conserve judicial resources of the court from dozens of discovery motions, CBB agreed to allow Defendant's motion to quash to be heard instead of immediately moving to compel production. (*Id.*, at ¶8.)

**D.** **Mission Represents to CBB, and this Court, That it Had Produced All Responsive Documents, Including Those Contained in CBB's Former Employees' Personal Email Addresses**

On September 5, 2023, counsel for CBB and Mission met and conferred, during which Mission's counsel requested CBB withdraw subpoenas that had been issued to customers. (*Id.*, at ¶9.) During that meeting, CBB's counsel also states CBB intended to serve subpoenas on CBB's former employees who joined Mission. (*Id.*, at ¶10.) CBB's counsel explained that Mission's productions demonstrated these individuals' personal email addresses likely contained responsive documents and information. (*Id.*) Mission's counsel represented that he believed if any Mission employees had used their personal email addresses on behalf of Mission, those emails would be within Mission's possession, custody, or control, and would therefore be produced by Mission. (*Id.*, at ¶11.) Mission's counsel stated he believed any subpoenas on the former CBB employees were inappropriate and unnecessary. (*Id.*)

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

Mission's counsel later asserted that Mission had already collected all responsive documents from CBB's former employees' personal email addresses and had produced same.  (*See, e.g.,* DE 29-3, at ¶9.)  On September 26, 2023, Mission filed its motion to quash third party subpoenas, again arguing the documents sought had already been collected and produced by Mission.  (DE 33 2:8-11.)  Mission's opposition to CBB's prior *ex parte* application also asserted that each of the third party subpoenas (including those served on Della and the other former CBB employees) sought documents "***that have already been produced by Mission to CBB***," and that "Mission has already collected, reviewed, and produced to CBB these categories of documents, including communications on the ***personal devices and emails*** of the Mission Bank employees." (DE 35 at 6:6-15) (emphasis in original).  Mission argued that "there [was] no need to extend the case schedule to wait for these customers and employees to re-produce the very same documents that are already in CBB's possession." (DE 35 at 16-18.)

## E.    Mission's Motion to Quash is Denied and CBB Pursues Third Party Discovery on Customers and Former Employees, Which Mission Represented was Unnecessary Because it had Produced All of the Documents Sought

On October 17, 2023, the Magistrate Judge denied Mission's Motion to Quash. (DE 39.)  The Magistrate recognized, *inter alia*, that "Plaintiff is entitled to test the completeness of defendant's production by seeking the same or similar documents from another party." (*Id.*, at 5.)  CBB has continued to pursue third party discovery from the customers, including in pending motions to compel. (*See, e.g.,* DE 46-49; Timm Decl., ¶10.)

While Mission's motion to quash was pending, CBB issued subpoenas to its former employees who subsequently worked for Mission.  (Timm Decl., ¶¶13-14.)

CBB served a subpoena on Della on October 1, 2023.  (*Id.*, at Ex. B.)  On October 16, Della served objections to that subpoena, including that it sought information duplicative of what had previously been requested from Mission.  (*Id.*, at Ex. C.)  On

5

October 20, CBB's counsel emailed Della's counsel to meet and confer regarding Della's objections, which occurred on October 26. (*Id.*, at ¶15.) Della's counsel agreed to produce document, and made a first document production on December 3, indicating further productions were forthcoming. (*Id.*) On December 27, CBB's counsel emailed Della's counsel requesting the status of Della's additional document productions, and challenging certain redactions in Della's production. (*Id.*, at ¶17.) On January 12, 2024, CBB's and Della's counsel conducted a meet and confer, during which Della's counsel indicated a further production would be made by January 19, 2024. (*Id.*, at ¶18.) On January 19, Della made an additional document production, indicating that further productions may be forthcoming. (*Id.*) On January 22, another subpoenaed third party entity made an additional production. (*Id.*, at ¶55.)

The former CBB employees that Mission's counsel represents were served with their respective subpoenas between September 23 and October 6, 2023 (with the exception of one individual, who was served on October 14, 2023), and each served responses and objections to their respective subpoenas between October 6 and October 27, 2023. (*Id.*, at ¶19, Ex. D.) Each of these objections argues, *inter alia*, that the documents sought were duplicative of requests propounded on Mission, and that all responsive documents had already been collected and produced by Mission. (*Id.*) Again, this turned out to be false.

On November 17, CBB's counsel sent Mission's counsel a detailed meet and confer letter relating to these responses. (*Id.*, at ¶20, Ex. E.) On November 27, the Parties met and conferred regarding the former CBB employees' objections, during which Mission's counsel agreed to supplement the responses and produce documents. (*Id.*, at ¶21.) Mission's counsel agreed to interview each former CBB employee to determine the personal email address and other accounts for each, as well as cell phone numbers, and then to conduct searches of such accounts. (*Id.*) Mission's counsel expressed continuing concerns about the scope of four requests in the subpoenas, and the Parties agreed that search terms could be used in searching for documents responsive

6

**MEMORANDUM OF POINTS AND AUTHORITIES**

thereto. (*Id*., at ¶22.) On December 11, CBB's counsel provided a final list of search terms to Mission's counsel and identified each of the former CBB employees' personal email addresses and phone numbers that appeared in Mission's production. (*Id*., at ¶22, Ex. F.)

On December 18, Mission's counsel sent CBB's counsel passwords for productions of two of the former CBB employees, but did not send CBB the actual productions. (*Id*., at ¶23.) On December 20, CBB's counsel responded and asked for the actual productions. (*Id*.) Mission's counsel indicated they had previously been sent, but CBB's counsel re-confirmed that they had never received the productions. (*Id*., at ¶23, Ex. G.) On January 2, 2024, CBB finally received productions from two of the former CBB employees' represented by Mission's counsel. (*Id*., at ¶24, Ex. H.)

## F.    A Review of Della's Production Demonstrates Mission's and the Former CBB Employees' Productions Were Deficient

During December 2023, CBB's counsel diligently reviewed Della's document production, and identified numerous documents not previously produced by Mission. This included documents contained on Della's personal email address, as well as documents containing Mission-issued email addressed for several Mission Bank employees, including Mission's Chief Banking Officer (Bryan Easterly), Mission's Chief Credit Officer (Michael Congdon), Mission's President and CEO (A.J. Antongiovanni). (Timm Decl., ¶26.) Della's production demonstrated that Mission's document production had been deficient.

In particular, Della's production included emails in which he sent those Mission executives CBB's confidential, proprietary, and trade secret information as early as January 19, 2022—two months earlier than Della's resignation from CBB on March 14, 2022. (*Id*., at ¶26.) This included sending certain customer information and loan/deal information with indications that Della intended to move those accounts from CBB to Mission. (*Id*., at ¶27-42.) Della's production also included an email from Della to Easterly in which he appears to recognize he was not supposed to be sending Mission

7

CBB's information, as he stated: "I do have it at Citizens, but since we migrated to the Citizens network I am less inclined to print any customer info going forward." (*Id.*, at ¶43.)

Della's production also demonstrated that Della had sent Mission CBB's financial information and projections, as well as CBB's policy and procedures. (*See e.g., Id.*, at ¶37.) Della's production also demonstrated that Della had sent Easterly an entire pipeline report showing potential customer and business deals. (*Id.*, at ¶41.) Della's production also included at least one email exchanged between his and Brett's personal email addresses, which was not included in either Mission's or Brett's document productions. (*Id.*, at ¶45.) Della's production demonstrated the misappropriation of CBB's documents and information with Mission continued up through, and after, Della's resignation from CBB. (*See e.g., Id.*, at ¶42.)

Della's first production disproved Mission's repeated representation that it had produced all documents, including those contained on the former CBB employees' personal email addresses. Mission relied on such assurances and assertions to, *inter alia*, oppose CBB's prior application to modify the scheduling order. (*See, e.g.,* DE 35 at 6:6-18.)

Importantly, Della's emails demonstrate that he sent Mission these documents for the purpose of soliciting CBB's customers (and employees). And such solicitation efforts would have required numerous people at Mission to view and use these documents. Moreover, these are the exact types of communications CBB was concerned had occurred when it sent its initial March 25, 2022 demand letter. That these emails were either not identified or else withheld from production is inexcusable—particularly in light of Mission's and its counsel's repeated statements that no evidence existed that Della sent Mission any of CBB's information.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**G.    CBB's Counsel Inquires About Mission's Deficient Production and
Learns of Potential Spoliation**

Concerned by the deficiencies in Mission's production, CBB's counsel sent a meet and confer letter on January 5, 2024, identifying a representative sample of documents produced by Della, but missing in Mission's production. (Timm Decl., Ex. I.)  CBB's letter also explained that, because of the recent discovery of missing documents, as well as the failure of the other former CBB employees to produce documents, a brief extension of the discovery cut-off was likely necessary. (*Id*.)  The Parties then held a telephonic meet and confer conference on January 15, 2024 to address same.  (Timm Decl., ¶47.)

During that conference, Mission's counsel informed CBB's counsel that they believed Mission had produced certain documents, but recognized that others had not been produced.  (*Id*.)  Mission's counsel explained that they had used search terms to identify responsive documents, which had missed the emails Della sent Mission's executives containing CBB's documents and confidential information.  Mission's counsel agreed to re-review the documents collected from Mission and make a further production.  (*Id*.)  Mission's counsel also stated that they were in the process of collecting and reviewing the remaining former CBB employees' documents, and would be producing the same.  (*Id*.)

During this same telephone conference, Mission's counsel informed CBB that some of the documents identified in CBB's January 5 letter did not exist in their database, and that is why they had not been produced.  (*Id*. at ¶48, Ex. J.)  Mission's counsel indicated they had not yet completed its investigation to determine why those documents did not exist in their database.  (*Id*.)  CBB's counsel expressed concerns regarding potential spoliation, and encouraged Mission's counsel to conduct an investigation and relay the results thereof.  (*Id*.)

On January 19, the Parties held a follow-up meet and confer telephone conference.  (*Id*., at ¶49, Ex. J.)  During that conference, Mission's counsel informed

9

CBB's counsel they had conducted an investigation and determined Easterly had a practice of deleting all emails from both his personal and Mission email addresses once he had addressed them. (*Id.*)  Mission's counsel stated that they believed this to be a true practice, as he had shared his screen to show them his Outlook, which had very few (if any) emails dating more than a few weeks old—this was subsequently corrected to say Easterly only had a few emails in his inbox, but that Mission's counsel had not looked at any of the other folders in his Outlook account. (*Id.*)  Mission's counsel stated that Easterly had told them he had deleted the emails identified in CBB's January 5 letter (which CBB believes were dated between January 18 to March 14, 2022) prior to receiving CBB's March 25, 2022 demand letter. (*Id.*)  Mission's counsel further explained that Easterly has continued his practice of deleting emails throughout the course of this litigation, and clarified that he appeared to only have a single email dating more than a few weeks old saved in his Outlook account. (*Id.*)

CBB's counsel, even more concerned with spoliation issues after learning this new information, asked whether Easterly's device had been forensically imaged, and was told it had not been. (*Id.*, at ¶50, Ex. J.)  CBB's counsel asked if Mission kept backup copies of Easterly's emails, and were told that Mission's counsel had not inquired, and did not think such an inquiry was necessary. (*Id.*)  CBB's counsel asked if any other Mission custodians were engaged in similar deletion practices, and were told Mission's counsel did not know, and did not think an inquiry was necessary or required. (*Id.*)

CBB's expressed concerns of spoliation, and Mission's counsel stated that CBB had no evidence Easterly had deleted anything after he was obligated to preserve the same, and that CBB's concerns were entirely unfounded and unsupported. (*Id.*)  Not so.  Mission's counsel admitted that Easterly has continued to delete documents up through the present, such that there only appeared to be a single email older than a few weeks old in his Outlook.  When CBB asked for a forensic investigation to be conducted to verify when Easterly deleted the highly relevant emails the Parties now know *were*

10

deleted by Easterly, Mission's counsel stated they did not think such investigation was necessary, but that they would consider a formal written request for the same. (*Id*.)

During this same call, Mission's counsel stated they would produce Mission's further documents (which necessarily will not include anything else Easterly may have deleted) no later than January 23, 2024, and would produce documents on behalf of the former CBB employees they represent no later than January 24, 2024. (*Id*., at ¶51.) Mission made a production on January 23, 2024, and asserts its production is now complete. The last time Mission made such an assertion in July 2023, it was false. CBB, therefore, needs time to evaluate if this production is complete, or if further productions are necessary.

Also during this call, CBB once against asked if Mission would stipulate to extend deadlines, including discovery. CBB's counsel informed Mission's counsel if they could not reach an agreement on a discovery extension, CBB would file this Application. (*Id*.)

## III. <u>JUDICIAL STANDARD</u>

A movant seeking to modify the trial schedule must show good cause. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit has adopted a four-factor test to evaluate whether good cause exists to grant a trial continuance in a civil case. See *Bearchild v. Cobban*, 947 F.3d 1130, 1138 (9th Cir. 2020) (applying the *Flynt* factors). The four factors set forth in *Flynt* include: (1) the movant's diligence in preparing for trial, (2) whether a continuance would have achieved the movant's purpose, (3) the inconvenience of a continuance to the court and non-moving party, and (4) any resulting prejudice the movant may have suffered as a result of the denial. 756 F.2d at 1359; *see also Nolan v. City of Los Angeles*, 2014 WL 66416, at *6 (C.D. Cal. Jan. 8, 2014) (applying the four-factor test). Each factor may be assigned "varying weight," but "the last factor— prejudice resulting from the denial—is required before error will be assigned to the failure to grant a continuance. *Bearchild*, 947 F.3d at 1138. A district court has wide latitude to grant a motion to modify a scheduling order. *See, e.g.*, *United States v.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Zinnel*, No. 2:11-CR-00234-TLN, 2019 WL 4054845, at *2 (E.D. Cal. Apr. 26, 2019)
(citing *United States v. Pope*, 841 F.2d 954, 956 (9th Cir. 1988)).

## IV.    ARGUMENT

### A.    CBB Has Been Diligent

The first *Flynt* factor weighs heavily in CBB's favor.  In determining whether the
moving parties have been diligent, the Court considers the moving parties' diligence in
preparing their case or "whether [their] request for continuance appears to be a delaying
tactic." *United States v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010) (citing *Flynt*, 756
F.2d at 1359).  CBB's requested continuance is not a delaying tactic, and instead has
become necessary due to recently learned potential spoliation issues, which were only
discovered within the last week. (Timm Decl., ¶¶47-48.)  Moreover, this discovery was
only possible after CBB was able to review third party document productions made in
December 2023 (productions which Mission sought to prevent, including because
Mission assured CBB and this Court it had already produced all responsive documents
within the possession of the subpoenaed third parties).

CBB previously sought only one other continuance in this action, which this
Court granted on October 13, 2023.  (DE 38.)  One of the grounds for CBB's prior
request was that CBB had discovered certain third party discovery was necessary.  (*See,
e.g.,* DE 34 at 3:16-24.)  CBB had begun pursuing third party discovery as early as
August 10, 2023, by issuing subpoenas to various third party entities.  (Timm Decl.,
¶6.)  CBB furthered these efforts by issuing subpoenas in September 2023 to its former
employees that had left to work for Mission.  Mission opposed CBB's efforts to obtain
third party discovery, asserting that it had already produced all responsive documents
in those third parties' possession, including documents and emails from CBB's former
employees personal email addresses.  (*See, e.g.,* DE 29-3 at ¶9; DE 35 at 6:6-18.)

While Mission's Motion to Quash was pending, CBB was unable to effectively
pursue enforcement of these various subpoenas, including because third parties all
objected to the same on the grounds that Mission had already produced all responsive

12

documents.  (*See* Timm Decl., Ex. D.)  Mission's Motion to Quash was denied on
October 17, 2023 (DE 39) and CBB promptly set about to enforce the previously issued
subpoenas.

On October 20, 2023, CBB's counsel emailed Della's counsel requesting a time
to meet and confer regarding Della's objections, which occurred on October 26.  (*Id.*,
at ¶15.)  During that call, Della's counsel agreed to produce documents, and Della
thereafter made his first production on December 3.  (*Id.*, at ¶16.)

On November 17, 2023, CBB's counsel sent Mission's counsel a meet and confer
letter relating to the former CBB employees' responses to subpoenas, including, *inter
alia*, stating that objections on the basis that Mission had produced similar documents
were inappropriate.  (*Id.*, at ¶20.)  On November 27, the Parties held a telephonic meet
and confer regarding, during which Mission's counsel agreed to supplement the
responses and produce documents on behalf of each former CBB employee they
represented.  (*Id.*, at ¶21.)  Two of the nine former CBB employees represented by
Mission's counsel made initial document productions on January 2, 2023, though the
sufficiency of each is in question following a comparison to Della's production.  (*Id.*,
at ¶24.)

Through a review of Della's December 2023 document production, CBB
identified key documents that had not previously been produced by Mission.  (*Id.*, at
¶25.)  This included numerous documents sent from Della's personal email address—
contradicting and disproving Mission's prior assertion that it had produced all
documents on the former CBB employees' personal email addresses.  This also included
emails to and from the Mission-issued email addresses for several Mission executives,
which undoubtedly should have been collected and produced in response to discovery
requests to Mission.  (*Id.*, at ¶26.)  These emails included Della sending those Mission
executives CBB documents and information, including customer, financial, policy, and
pipeline information.  (*See e.g., Id.*, at ¶41.)

**MEMORANDUM OF POINTS AND AUTHORITIES**

These documents should have been found through Mission's "comprehensive investigation" it purportedly conducted before asserting it did not have any of CBB's information.  (*Id.*, at ¶3.)  They also should have then been produced in response to discovery, which included requests specifically asking for communications between Mission and Della while Della was employed by CBB.  This is especially true, as many of these documents were of the type that would have been shared internally at Mission to support efforts to solicit CBB's customers and open accounts with Mission.  That they were not produced by Mission, and were only obtained through third party discovery (which itself was obtained over Mission's objection and repeated assertions that it had already produced all documents in the possession of third parties, including on former CBB employees' personal email addresses) is concerning and inexecusable.

CBB sent a meet and confer letter regarding the missing documents to Mission's counsel on January 5, 2024, followed by a meet and confer on January 15.  (*Id.*, at ¶¶46-47.)  During that January 15 call, Mission's counsel indicated that Mission had additional responsive documents, but that other documents appeared to be missing from their database.  (*Id.*, at ¶48.)  Mission's counsel indicated they would conduct an investigation into the missing emails.  (*Id.*)

During a follow-up call on January 19, Mission's counsel confirmed that the missing emails had been deleted by one of Mission's executives, Easterly, and that he had continued deleting emails throughout the course of this action.  (*Id.*, at ¶49.)  Mission's counsel agreed to produce the documents that had not been deleted by January 23, however stated that they did not believe any further forensic investigation or inquiry regarding Easterly's deleted emails and/or deletion habits were warranted or necessary.  Mission made a production on January 23, asserting it has now completed its production of responsive documents.  Mission previously made the same assertion in July 2023.  That initial assertion turned out to be false, and CBB needs time to review this new production and verify if it is complete, or if further productions are necessary.

**MEMORANDUM OF POINTS AND AUTHORITIES**

CBB only discovered the deficiencies in Mission's production and the potential spoliation issues through a review of third party productions, including those made in December 2023. Due to Mission's Motion to Quash and the third parties' objections based thereon, CBB was unable to discover these issues at any earlier time. As such, there is good cause to modify the scheduling order to permit CBB to investigate this recently discovered spoliation issue, determine if any lost information can be restored, and, if necessary, bring an appropriate sanctions motion. *See, e.g., Am. Career Coll., Inc. v. Medina*, No. CV 21-698 PSG (SKX), 2022 WL 3452790, at *4 (C.D. Cal. July 6, 2022) (Recognizing it was difficult based on available data to know whether ESI could be replaced or restored, and whether it was essential to the plaintiffs' claims, and modifying the scheduling order, including by extending discovery nearly nine months to allow the plaintiff to review late-produced documents, evaluate any potential further discovery that was needed, including to "shore up any gaps created by Defendants' unpreserved ESI," and thereafter incorporate any additional information into its spoliation motion.)

Mission's argument otherwise is nonsensical. Mission has asserted that CBB should have served subpoenas on each of the third parties at the very outset of this action. Again, subpoenas that Mission has previously argued were unnecessary because Mission had already produced the documents sought thereby. Mission's argument is that, had CBB subpoenaed third parties earlier, it would have known Mission had not actually completed its production in July 2023 as it represented, and would have also learned that at least one of Mission's executives had deleted highly relevant emails and documents earlier.

CBB has diligently pursued discovery, including through third parties, and that diligent pursuit has uncovered issues with Mission's document production and retention that warrant further examination. Had Mission not so strongly opposed third party discovery, CBB might have been able to uncover these issues sooner. Though, to be clear, Mission's deficient production and spoliation of evidence is not CBB's fault.

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**B.**     <u>**The Needs for the Continuance Would Be Met if the Continuance Is Granted**</u>

To determine whether the need for a continuance would be met if granted, the Court inquires into the usefulness of a continuance in the case by asking how likely it is that the purpose of the continuance would be achieved if the continuance is granted. *See Kloehn*, 620 F.3d at 1127. Here, the need for a reasonable continuance is two-fold. First, to ensure there is sufficient time for Mission and the former CBB employees represented by Mission's counsel to produce documents, and to then allow CBB to review such productions to verify their completeness including through a comparison with the other third party document productions. This process is particularly important, as Mission has previously and repeatedly insisted that it has produced all responsive documents, including those within its possession as well as those within the possession of all subpoenaed third parties. A review of productions made by those third parties (over Mission's objections) prove Mission's prior assertions false, and CBB needs time to determine if Mission's new assertion suffers the same defect. Second, to allow CBB to conduct an investigation into potential spoliation issued that it learned of on January 19, 2024. Both of these goals would be satisfied if a continuance is granted.

First, CBB needs time to conduct a thorough investigation into Mission's discovery misconduct, the extent of which CBB only learned within the last week. Mission has repeatedly insisted it has done no wrong, and that it does not have CBB's documents and information. This was asserted before CBB filed its Complaint, in a letter immediately after CBB filed its Complaint, and at every available change Mission has had. Mission informed CBB in July 2023 that it had completed its document productions in response to CBB's discovery requests—which included, *inter alia*, requests for communications between Della and Mission sent while Della was still employed by CBB. Mission then also informed CBB, this Court, and the Magistrate that it had produced all documents that would be in the possession of third parties— including CBB's former employees personal email addresses. (*See, e.g.,* DE 29-3, at

16

¶9; DE 35 at 6:6-118)  Over Mission's objection, CBB was able to eventually obtain third party discovery.  Through a review of third party productions made in December 2023, CBB first discovered how false Mission's assertions were.  Neither Mission nor seven of the nine former CBB employees Mission's counsel represents have finished their document productions in this action.  Given Mission's conduct to date, CBB expects that further meet and confer efforts, and potentially motions to compel will become necessary once those productions are complete and can be compared with the other third party productions (which are still being made).  These productions are needed, *inter alia*, prior to taking the depositions of Mission's witnesses.

Second, CBB requires time to investigate potential spoliation issues identified on January 19, 2024.  Specifically, that at least one Mission executive deleted highly relevant emails and documents, and has apparently continued to delete emails throughout this litigation.  (Timm Decl., ¶49.)  CBB is entitled to determine when these emails were deleted, as well as the extent to which any additionally relevant emails may have been deleted.  To-date, CBB only learned that *any* emails had been deleted because a third party (Della) produced them.  That CBB has identified *some* emails that were deleted does not mean that CBB has identified *all* emails that were deleted, and so the extent of this spoliation issue is unknown.  This includes that CBB is entitled to have a forensic inspection and analysis of Easterly's devices and drives conducted by a neutral third party vendor.  *See, e.g., Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012) (ordering forensic inspection and analysis of hard drive in a trade secrets case where there were concerns over files being deleted from such hard drive) (collecting cases); *see also, Bryant v. Mattel, Inc.,* No. C 04-09049 SGL RNBX, 2007 WL 5416681, at *4, 10 (C.D. Cal. Jan. 26, 2007) (ordering responding party to "produce hard drives of his computer for forensic imaging" where emails and other electronic documents were known to exist, but had not been produced).  CBB also needs confirmation that Mission's counsel has

17

inquired with all other custodians about their respective email retention and deletion habits to confirm the extent of the potential spoliation issue is limited to Easterly.

A continuance will provide time for each of the aforementioned productions to be made, as well as allow CBB time to review and compare those productions with the other third party productions to determine if they are in fact now complete.

## C.   Neither Mission Nor the Court Will Be Inconvenienced by a Continuance

Neither the Court, the Parties, nor the witnesses to this litigation would not be inconvenienced by a trial continuance. In meet and confer discussions, Mission's only stated reason for opposing a continuance is that Mission does not think it did anything wrong (and that Mission's deficient document production and spoliation issues were somehow CBB's fault), and so does not want to move the trial. Mission further expressed that its extremely late document production (which was only made after third party productions proved Mission's earlier productions deficient) will be of no consequence because Della already produced *some* of these documents. Again, Mission previously argued that third party discovery (including against Della) was unnecessary because Mission had already produced all responsive documents in the possession of the third parties (including on the former CBB employees' email addresses). Mission should not be rewarded because CBB was able to determine Mission's prior assertions were false, and CBB needs time to ensure all discovery is completed.

Mission has further expressed that the spoliation issues are of no concern, also because Della produced *some* of the documents that Mission deleted, and because spoliation can be addressed at trial. This may not be possible, however, because courts have previously expressed a wariness of "any spoliation motion made on the eve of trial." *Mkrtchyan v. Sacramento Cnty.*, No. 2:17-CV-2366 TLN KJN, 2021 WL 5284322, at *3 (E.D. Cal. Nov. 12, 2021). Even if the spoliation concerns can be addressed at trial, however, CBB still needs to conduct a thorough investigation into such issues prior to bringing any motion. Once discovery closes, that will not be

**MEMORANDUM OF POINTS AND AUTHORITIES**

possible. *See, e.g., id.* ("in deciding a spoliation motion, the court may order that additional discovery take place either to develop facts needed to rule on the motion or to afford the party deprived of relevant evidence an additional opportunity to develop it from other sources. The least disruptive time to undertake this is during the discovery phase, not after it has closed.")   As such, in order to conduct an appropriate investigation, the current case schedule must be modified.

A continuance would also benefit the Court, because it would ensure that fulsome discovery has been completed before trial and will avoid needless motion practice. Moreover, investigating the potential spoliation issues will help ensure justice is done.

Finally, extending the discovery cut-off to allow for the investigation and further discovery discussed herein (including relating to the recently discovery spoliation issues) is the most efficient and least disruptive course of action.  Re-opening discovery after it has closed is extremely disruptive and can cause significant expense and place a significant burden on both the Parties and the Court. *See, e.g., Mkrtchyan*, 2021 WL 5284322, at *3.

### D.    CBB Will Be Prejudiced if the Continuance is Denied

The fourth *Flynt* factor also significantly favors a continuance in this action. Mission made deficient document productions and attempted to prevent CBB from conducting the third party discovery it needed to discover those deficiencies.  Then, once those deficiencies were discovered through a review of third party productions made in December 2023, Mission revealed the existence of potential serious spoliation issues.  CBB just learned of these issues on January 19, 2024, only three weeks before the February 9, 2024 fact discovery cut-off.

Mission was served with document requests in December 2022.  It asserted in July 2023 it had completed its production of responsive documents. CBB discovered through a review of the aforementioned third party discovery that this was false. Mission has now made a further production on January 23, 2024, once again asserting

**MEMORANDUM OF POINTS AND AUTHORITIES**

its production is now complete.  CBB needs time to verify that, or else demand further productions to ensure Mission's production is complete.

Further, the former CBB employees represented by Mission's counsel have not completed their document productions in response to subpoenas issued in September 2023.  Mission's counsel has stated those productions will be complete this week, however CBB has serious concerns with how "complete" those productions will be given the deficiencies in Mission's and the two former CBB employees' productions that have been made to date.  CBB requires time to review these productions, test them for completeness (including by reviewing against other third party productions, which are still being made), and conduct any follow-up efforts stemming therefrom.  CBB also intends to take depositions of numerous Mission witnesses, several of which are already scheduled to occur before the current discovery cut-off.  If these depositions are taken before aforementioned productions and follow-up efforts (which would be necessary with the current schedule), it is likely that the newly learned information would require CBB to take second depositions of witnesses.  CBB desires to avoid this inefficiency, and CBB believes Mission would oppose any such efforts.

CBB also lacks the time to conduct a thorough examination of these issues (including potential spoliation), even if Mission were to cooperate entirely.  Mission, however, has expressed resistance to any forensic investigation into spoliation issues, and CBB expects a motion to compel the same may be necessary.  There is simply not enough time before the close of discovery to conduct the inquiry necessary, and move to compel the same.  CBB will be severely prejudiced if it is precluded from investigating those issues.  As noted above, courts have previously expressed that the appropriate time to conduct spoliation investigations is *during discovery*, not after it has closed, and some courts have even expressed a wariness of spoliation motions filed on the eve of trial.  *See, e.g., Mkrtchyan* 2021 WL 5284322, at *3.  As such, without a continuance of the current discovery cut-off, CBB will be severely prejudiced.

**MEMORANDUM OF POINTS AND AUTHORITIES**

CBB will be greatly prejudiced if it is required to proceed to trial without a reasonable opportunity to finish conducting discovery in this matter, including into the recently discovered spoliation issues.

**V.    CBB SATISFIES THE REQUIREMENTS FOR EX PARTE RELIEF**

A party seeking ex parte relief must: (1) show it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures;" and (2) it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). CBB satisfies both requirements.

As discussed above, CBB will be irreparably prejudiced if this Application is heard according to regular noticed motion procedures. Specifically, if this issue is heard on regular notice, any decision would be rendered after the February 9, 2024 discovery cut-off, and would allow Mission to evade further discovery and investigation into the potential spoliation.

Further, if this Application were to be heard after discovery closes, the only way CBB could conduct the appropriate and required investigation into spoliation, would be if discovery was re-opened. Such re-opening of discovery would disrupt the rest of this action's schedule, and would place unnecessary burdens and costs on both the Parties and this Court.

Additionally, CBB is not at fault in creating the need for ex parte relief. CBB has been diligently conducting, reviewing, and responding to discovery by Defendant. CBB sought third party subpoenas as soon as it became apparent that other, responsive documents likely exist within the control of those third parties. CBB thereafter moved to enforce those subpoenas as soon as the Magistrate Judge denied Mission's Motion to Quash. CBB was only able to discover the issued discovered herein through that third part discovery, including through documents produced in December 2023, and only discovered the spoliation issues on January 19, 2024.

**MEMORANDUM OF POINTS AND AUTHORITIES**

1  **VI.    CONCLUSION**

2      For the foregoing reasons, Plaintiff respectfully requests that the Court grant

3  CBB's Application to modify its Scheduling Order.

4

5

6

7                    **CERTIFICATE OF COMPLIANCE**

8      The undersigned, counsel of record for Plaintiff Citizens Business Bank

9  certifies that this brief contains 6,988 words, which complies with the word limit of

10  L.R. 11-6.1.

11

12

13   Dated:  January 23, 2024          **K&L GATES LLP**

14                                By: */s/ Zachary T. Timm*
                                   Christina N. Goodrich
15                                 Ryan Q. Keech
                                   Zachary T. Timm
16                                 Ketajh Brown (admitted *pro hac vice*)

17                                 *Attorneys for Plaintiff Citizens Business Bank*

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**