# EXHIBIT A

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation, | Case No. 5:22-cv-01473-FLA-SP |
| Plaintiff, | Hon. Fernando L. Aenlle-Rocha |
| vs. | **DECLARATION OF ANDREW JOSEPH ANTONGIOVANNI IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| MISSION BANK, a California corporation and DOES 1 through 10, inclusive, | |
| Defendant. | *[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]* |
| | Date:        August 30, 2024<br>Time:        1:30 p.m.<br>Courtroom:  6B |
| | Complaint Filed: August 19, 2022<br>Trial Date:        November 12, 2024 |

LARSON
LOS ANGELES

1

Docusign Envelope ID: 0223EFAA-C361-4210-9FC9-DD4C2C4BA146

## <u>DECLARATION OF ANDREW JOSEPH ANTONGIOVANNI</u>

I, Andrew Joseph Antongiovanni, declare as follows:

1.     I am the President and Chief Executive Officer of Mission Bank ("Mission") and have held those positions throughout the time relevant to the lawsuit filed by Citizens Business Bank ("CBB") against Mission. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.     The exhibits cited herein are attached to the Declaration of Catherine S. Owens.

3.     In or around February 2022 to April 2022, Mission hired the following employees: Armidelia Avila, Dave Brett, Lori Carabay, Angela Dempsie, Jorge Espinoza, Virginia Hopper, Ericka Melo, Patricia Palacios, and Dianis Pimentel (collectively, the "Former CBB Employees").

4.     Prior to and at the time Mission interviewed and hired each of the Former CBB Employees, I never received, possessed, or had any knowledge of or any information concerning any of the agreements or contracts between CBB and the Former CBB Employees, except with regard to Brett as discussed below.

5.     In particular, at the time Mission hired Avila, Carabay, Dempsie, Espinoza, Hopper, Melo, and Pimentel, I did not have any knowledge of any contractual provisions between any of them and CBB that would in any way purport to restrict their ability to leave CBB, join Mission, or solicit CBB customers or other CBB employees to leave CBB.

6.     At the time Mission hired Palacios, it was my understanding that she retired from Suncrest Bank ("Suncrest") and was not hired by CBB when CBB acquired Suncrest in January 2022.

7.     In addition to the Former CBB Employees, Mission also hired Dustin

2

LARSON
LOS ANGELES

DECLARATION OF ANDREW JOSEPH ANTONGIOVANNI IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 0223EFAA-C361-4210-9FC9-DD4C2C4BA146

Della in or around March 2022. Prior to and at the time Mission interviewed and hired Della, I did not receive or possess any copies of any agreements or contracts between CBB and Della.

8.     In addition, at the time Mission hired Della, the only knowledge I had regarding Della's employment agreement with CBB was the amount of the retention bonus that Della would receive from CBB if he stayed. I did not have knowledge of any other terms or conditions of any other contractual agreements or provisions between CBB and Della. In particular, I did not have any knowledge of any contractual provision between Della and CBB that would in any way purport to restrict his ability to leave CBB, join Mission, or solicit CBB customers or other CBB employees to leave CBB.

9.     Similarly, at the time Mission hired Brett, the only knowledge I had regarding Brett's employment agreement with CBB was the amount of the retention bonus that Brett would receive from CBB if he stayed. I did not have knowledge of any other terms or conditions of any other contractual agreements or provisions between CBB and Brett. In particular, I did not have any knowledge of any contractual provision between Brett and CBB that would in any way purport to restrict his ability to leave CBB, join Mission, or solicit CBB customers or other CBB employees to leave CBB.

10.     On or around March 25, 2022, I reviewed a cease-and-desist letter sent to Mission by CBB (Ex. 140). CBB's letter alleged that Della may have violated California law and his contractual obligations to CBB. CBB's letter also threatened to hold Mission responsible if Mission took advantage of Della's purported wrongdoing. After receiving this letter, I took steps to have Mission hire outside counsel and conduct an investigation into the allegations contained in CBB's letter. The investigation revealed that Della did not disclose any trade secrets to Mission, that Mission did not possess any CBB trade secrets, and that Mission did not misappropriate any such trade secrets.

LARSON
LOS ANGELES

DECLARATION OF ANDREW JOSEPH ANTONGIOVANNI IN SUPPORT OF DEFENDANT MISSION
BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 0223EFAA-C361-4210-9FC9-DD4C2C4BA146

11.     Shortly after August 19, 2022, I received a copy of the Complaint that CBB filed in this lawsuit (Ex. 7).

12.     After this lawsuit was filed, and during the course of discovery, I learned that Della emailed certain Suncrest Bank credit memoranda (collectively, the "Suncrest Credit Memos") to Bryan Easterly and Michael Congdon in January to February 2022. At the time Della emailed the Suncrest Credit Memos, I had no knowledge or awareness of those emails or of the Suncrest Credit Memos, nor did I have any knowledge or awareness of Della's confidentiality and non-solicitation agreement with CBB or the terms of that agreement. I also never asked, and have never asked, Della to send me or anyone else at Mission any Suncrest Credit Memos. Outside of my discussions with counsel in defending this litigation, I have never discussed the Suncrest Credit Memos with anyone at Mission, including Mission's Board of Directors, and I have no knowledge of anyone at Mission using or disclosing any of the Suncrest Credit Memos to service customers at Mission or otherwise for the benefit of Mission. To the contrary, to my personal knowledge, no one at Mission has ever used or disclosed any of the Suncrest Credit Memos in any way at any time. In fact, due to various regulations governing how Mission approves loans, as well as Mission's standard business practices, those Suncrest Credit Memos have never had any value to Mission and never could have been used by Mission to obtain or service its customers.

13.     After this lawsuit was filed, and during the course of discovery, I also learned that Della emailed a copy of an old Suncrest loan policy (Ex. 65B) to Bryan Easterly and Michael Congdon. I have never used the Suncrest loan policy to solicit or service a customer. I am also not aware of anyone else at Mission who has used the Suncrest loan policy to solicit or service a customer. Indeed, as with the Suncrest Credit Memos, banking regulations and Mission's business practices preclude any use of the Suncrest loan policy by Mission to solicit or service customers; instead, Mission always uses its own loan policy.

LARSON
LOS ANGELES

DECLARATION OF ANDREW JOSEPH ANTONGIOVANNI IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 0223EFAA-C361-4210-9FC9-DD4C2C4BA146

14.     I have reviewed Paragraph 149 of the Complaint filed by CBB. I understand that CBB alleges that "on or around February 11, 2022, Della requested, and was provided, an excel spreadsheet (called a promotional rate report) that included the names and contact information for the decision makers at approximately 40 CBB clients, as well as their average deposit rates and balances and a listing of Suncrest's historical rates for those same clients." I have never acquired, used, or disclosed to anyone any document fitting that description. I am also not aware of anyone else at Mission who has acquired, used, or disclosed to anyone any document that fits that description.

15.     I have reviewed Paragraph 152 of the Complaint filed by CBB. I understand that CBB alleges that "on or around February 22, 2022, Della requested, and was provided with, a much larger excel spreadsheet that contained the names and contact information for the primary decision makers for approximately 664 Suncrest clients, which in this case comprised information pertaining to all Suncrest clients that had taken out loans with Suncrest under the Small Business Administration PPP loan program." I have never acquired, used, or disclosed to anyone any document fitting that description. I am also not aware of anyone else at Mission who has acquired, used, or disclosed to anyone any document fitting that description.

16.     I have no knowledge of what documents and files, if any, Della may have taken with him from CBB on his last day at CBB.

17.     I have never acquired, used, or disclosed to anyone the Spreadsheet of New Business (Ex. 22) that CBB alleges was misappropriated by Mission. I am also not aware of anyone else at Mission who has improperly acquired, or has used or disclosed to anyone, the Spreadsheet of New Business.

18.     I have never acquired, used, or disclosed to anyone the Spreadsheet of New Deposit Business (Ex. 23) that CBB alleges was misappropriated by Mission. I am also not aware of anyone else at Mission who has improperly acquired, or has

DECLARATION OF ANDREW JOSEPH ANTONGIOVANNI IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 0223EFAA-C361-4210-9FC9-DD4C2C4BA146

1 | used or disclosed to anyone, the Spreadsheet of New Deposit Business.

2 |     19.    I have never acquired, used, or disclosed to anyone the Pipeline Report

3 | (Ex. 122) that CBB alleges was misappropriated by Mission. I am also not aware of

4 | anyone else at Mission who has improperly acquired, or has used, or disclosed to

5 | anyone, the Pipeline Report.

6 |     20.    Mission views CBB as a competitor. Mission also believes that the

7 | most effective way to compete for business in any market is to provide the best

8 | possible customer service and banking products. Mission does not, and has never,

9 | violated any federal or state laws—including the laws protecting trade secrets—in

10 | order to gain a competitive advantage over CBB or any other competitor.

11 |     21.    I do not believe, and have never believed, that Della improperly took

12 | any CBB or Suncrest proprietary confidential information without authorization.

14 |     I declare under penalty of perjury under the laws of the United States of

15 | America that the foregoing is true and correct.

16 |     Executed on this ___ 24.00 day of July, 2024, at _____ Bakersfield, California.

DocuSigned by:

*Aj Antongiovanni*

76B6B01736E5463

Andrew Joseph Antongiovanni

LARSON
LOS ANGELES

DECLARATION OF ANDREW JOSEPH ANTONGIOVANNI IN SUPPORT OF DEFENDANT MISSION
BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT B

Docusign Envelope ID: B320F18F-8EB2-4A25-B7D7-5B49425E071E

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>              Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF BRYAN EASTERLY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:      August 30, 2024<br>Time:      1:30 p.m.<br>Courtroom: 6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:       November 12, 2024 |

LARSON
LOS ANGELES

1

DECLARATION OF BRYAN EASTERLY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: B320F18F-8EB2-4A25-B7D7-5B49425E071E

# DECLARATION OF BRYAN EASTERLY

I, Bryan Easterly, declare as follows:

1.      I am the Chief Banking Officer of Mission Bank ("Mission") and have held that position throughout the time relevant to the lawsuit filed by Citizens Business Bank ("CBB") against Mission. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.      The exhibits cited herein are attached to the Declaration of Catherine S. Owens.

3.      In or around February 2022 to April 2022, Mission hired the following employees: Armidelia Avila, Dave Brett, Lori Carabay, Angela Dempsie, Jorge Espinoza, Virginia Hopper, Ericka Melo, Patricia Palacios, and Dianis Pimentel (collectively, the "Former CBB Employees").

4.      Prior to and at the time Mission interviewed and hired each of the Former CBB Employees, I never received, possessed, or had any knowledge of or any information concerning any of the agreements or contracts between CBB and the Former CBB Employees, except with regard to Brett as discussed below.

5.      In particular, at the time Mission hired Avila, Carabay, Dempsie, Espinoza, Hopper, Melo, and Pimentel, I did not have any knowledge of any contractual provisions between any of them and CBB that would in any way purport to restrict their ability to leave CBB, join Mission, or solicit CBB customers or other CBB employees to leave CBB.

6.      At the time Mission hired Palacios, it was my understanding that she retired from Suncrest Bank ("Suncrest") and was not hired by CBB when CBB acquired Suncrest in January 2022.

7.      In addition to the Former CBB Employees, Mission also hired Dustin Della in or around March 2022. Prior to and at the time Mission interviewed and

2

LARSON
LOS ANGELES

DECLARATION OF BRYAN EASTERLY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: B320F18F-8EB2-4A25-B7D7-5B49425E071E

1   hired Della, I did not receive or possess any copies of any agreements or contracts
2   between CBB and Della.

3       8.      In addition, at the time Mission hired Della, the only knowledge I had
4   regarding Della's employment agreement with CBB was the amount of the retention
5   bonus that Della would receive from CBB if he stayed. I did not have knowledge of
6   any other terms or conditions of any other contractual agreements or provisions
7   between CBB and Della. In particular, I did not have any knowledge of any
8   contractual provision between Della and CBB that would in any way purport to
9   restrict his ability to leave CBB, join Mission, or solicit CBB customers or other
10  CBB employees to leave CBB.

11      9.      Similarly, at the time Mission hired Brett, the only knowledge I had
12  regarding Brett's employment agreement with CBB was the amount of the retention
13  bonus that Brett would receive from CBB if he stayed. I did not have knowledge of
14  any other terms or conditions of any other contractual agreements or provisions
15  between CBB and Brett. In particular, I did not have any knowledge of any
16  contractual provision between Brett and CBB that would in any way purport to
17  restrict his ability to leave CBB, join Mission, or solicit CBB customers or other
18  CBB employees to leave CBB.

19      10.     I am aware that Della emailed both me and Michael Congdon certain
20  Suncrest Bank credit memoranda ("Suncrest Credit Memos") in January and
21  February 2022. I never asked Della to send me any Suncrest Credit Memos. At the
22  time Della sent me the Suncrest Credit Memos, I also had no knowledge or
23  awareness of Della's confidentiality and non-solicitation agreement with CBB or the
24  terms of that agreement.

25      11.     At the time Della emailed me and Congdon the Suncrest Credit Memos
26  in January and February 2022, I believed that he was sending us those documents
27  because those customers were unable to obtain a loan at CBB on terms that the
28  customer wanted and the customer was determining if it could get a loan at another

LARSON
LOS ANGELES

Docusign Envelope ID: B320F18F-8EB2-4A25-B7D7-5B49425E071E

1   bank. It was also my understanding that Della sent us the Suncrest Credit Memos to

2   determine if Mission would be willing to do business with the types of customers

3   that Della had, and thus, to determine if Della would fit within Mission's overall

4   credit culture. When I received information from Della regarding Suncrest or CBB

5   customers, I never believed that I was improperly acquiring any CBB or Suncrest

6   Bank information without authorization.

7         12.    To my knowledge, no one at Mission has ever used any of the Suncrest

8   Credit Memos in any way at any time. In fact, due to various regulations governing

9   how Mission approves loans, as well as Mission's standard business practices, those

10   Suncrest Credit Memos have never had any value to Mission and never could have

11   been used by Mission to obtain or service its customers.

12         13.    I am aware that, in February 2022, Della emailed me a copy of an old

13   Suncrest loan policy (Ex. 65B). I disclosed the Suncrest loan policy to Michael

14   Congdon. I did not disclose the Suncrest loan policy to anyone else, and I am not

15   aware of Congdon disclosing the Suncrest loan policy to anyone. I never used the

16   Suncrest loan policy to solicit or service a customer. I am also not aware of anyone

17   else at Mission who used the Suncrest loan policy to solicit or service a customer.

18   Indeed, as with the Suncrest Credit Memos, banking regulations and Mission's

19   business practices preclude any use of the Suncrest loan policy by Mission to solicit

20   or service customers; instead, Mission always uses its own loan policy.

21         14.    I have reviewed Paragraph 149 of the Complaint filed by CBB. I

22   understand that CBB alleges that "on or around February 11, 2022, Della requested,

23   and was provided, an excel spreadsheet (called a promotional rate report) that

24   included the names and contact information for the decision makers at

25   approximately 40 CBB clients, as well as their average deposit rates and balances

26   and a listing of Suncrest's historical rates for those same clients." I have never

27   acquired, used, or disclosed to anyone any document fitting that description. I am

28   also not aware of anyone else at Mission who has acquired, used, or disclosed to

LARSON
LOS ANGELES

Docusign Envelope ID: B320F18F-8EB2-4A25-B7D7-5B49425E071E

anyone any document that fits that description.

15. I have reviewed Paragraph 152 of the Complaint filed by CBB. I understand that CBB alleges that "on or around February 22, 2022, Della requested, and was provided with, a much larger excel spreadsheet that contained the names and contact information for the primary decision makers for approximately 664 Suncrest clients, which in this case comprised information pertaining to all Suncrest clients that had taken out loans with Suncrest under the Small Business Administration PPP loan program." I have never acquired, used, or disclosed to anyone any document fitting that description. I am also not aware of anyone else at Mission who has acquired, used, or disclosed to anyone any document fitting that description.

16. I have no knowledge of any documents or files, if any, that Della may have taken with him from CBB on his last day at work at CBB.

17. On April 28, 2022, I asked Della to send me an update on Visalia, including a loan pipeline update and a deposit pipelines update (Ex. EE [MB134560-MB134561]). Della responded to my request and sent me two pipeline reports. I understand that the pipeline reports attached to Della's email to me are marked as Exhibit 22 [MB07784] and Exhibit 23 [MB00785] (collectively, "New Business Spreadsheets"). I never asked Della to prepare or send me any documents using any proprietary confidential information from Suncrest or CBB. I also never used any of the information contained in the New Business Spreadsheets or disclosed the New Business Spreadsheets, or any of the information contained within them, to anyone. I do not recall even looking at the New Business Spreadsheets when they were emailed to me or at any time prior to this lawsuit.

18. I received an email from Della on March 7, 2022 that attached a pipeline report (the "Pipeline Report") (Ex. 122). I never asked Della to prepare or send me this Pipeline Report. I have no idea why Della sent me the Pipeline Report. I also have no idea how Della created the Pipeline Report or where he obtained the

DECLARATION OF BRYAN EASTERLY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: B320F18F-8EB2-4A25-B7D7-5B49425E071E

information within the Pipeline Report. I never looked at the Pipeline Report, never discussed the Pipeline Report with Della or anyone at Mission, and never forwarded or disclosed the contents of the Pipeline Report to anyone.

19.     I do not believe, and have never believed, that Della improperly took any CBB or Suncrest proprietary confidential information without authorization.

20.     Exhibit 12 is a true and correct copy of a February 2, 2022 email from Dustin Della's yahoo email address to my Mission email address and Michael Congdon's Mission email address. I received this email from Della on February 2, 2022.

21.     Exhibit 136 is a duplicate of Exhibit 12.

22.     Exhibit 137 is a true and correct copy of a February 7, 2022 email from Dustin Della's yahoo email address to my Mission email address and Michael Congdon's Mission email address. I received this email from Della on February 7, 2022.

23.     I have a long-standing practice of deleting emails from my inbox once I have addressed the email. I also have a practice of deleting those same emails from the "delete" folder in my inbox. This practice of deleting emails is generally indiscriminate. I do not cherry pick which emails I delete, and which ones I do not delete, unless I have some reason not to delete an email (for example, if I or Mission had an obligation to preserve emails). More specifically, I have never purposely selected emails between myself and Della for deletion. Finally, while I may delete the emails from my inbox, it is my understanding that Mission has a back-up system, called Spanning, that preserves the emails for up to two years and to archive emails for an additional two years.

//
//
//
//

LARSON
LOS ANGELES

6
DECLARATION OF BRYAN EASTERLY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: B320F18F-8EB2-4A25-B7D7-5B49425E071E

1      I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3      Executed on this 19.00 day of July, 2024, at _____Ventura_____, California.

4

5

Bryan Easterly

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

DECLARATION OF BRYAN EASTERLY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT C

Docusign Envelope ID: BBEB8250-C702-4A87-9614-CA16B1B866DC

1 | Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
2 | Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
3 | Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
4 | Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
5 | **LARSON LLP**
555 South Flower Street, 30th Floor
6 | Los Angeles, California 90071
Telephone:(213) 436-4888
7 | Facsimile: (213) 623-2000

8 | Attorneys for Defendant
MISSION BANK

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

12

| | |
|---|---|
| 13 CITIZENS BUSINESS BANK, a California banking corporation, | Case No. 5:22-cv-01473-FLA-SP |
| 14 Plaintiff, | Hon. Fernando L. Aenlle-Rocha |
| 15 vs. | **DECLARATION OF MICHAEL CONGDON IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| 16 MISSION BANK, a California corporation and DOES 1 through 10, inclusive, | |
| 17 | |
| 18 Defendant. | *[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]* |
| 19 | |
| 20 | |
| 21 | Date:       August 30, 2024 |
| 22 | Time:       1:30 p.m. Courtroom: 6B |
| 23 | |
| 24 | Complaint Filed: August 19, 2022 Trial Date:       November 12, 2024 |
| 25 | |

26

27

28

LARSON
LOS ANGELES

1

DECLARATION OF MICHAEL CONGDON IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: BBEB8250-C702-4A87-9614-CA16B1B866DC

## DECLARATION OF MICHAEL CONGDON

I, Michael Congdon, declare as follows:

1. I am the Chief Credit Officer of Mission Bank ("Mission") and have held that position throughout the time relevant to the lawsuit filed by Citizens Business Bank ("CBB") against Mission. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2. The exhibits cited herein are attached to the Declaration of Catherine S. Owens.

3. In or around February 2022 to April 2022, Mission hired the following employees: Armidelia Avila, Dave Brett, Lori Carabay, Angela Dempsie, Jorge Espinoza, Virginia Hopper, Ericka Melo, Patricia Palacios, and Dianis Pimentel (collectively, the "Former CBB Employees").

4. Prior to and at the time Mission interviewed and hired each of the Former CBB Employees, I never received, possessed, or had any knowledge of or any information concerning any of the agreements or contracts between CBB and the Former CBB Employees.

5. In particular, at the time Mission hired Avila, Carabay, Dempsie, Espinoza, Hopper, Melo, and Pimentel, I did not have any knowledge of any contractual provisions between any of them and CBB that would in any way purport to restrict their ability to leave CBB, join Mission, or solicit CBB customers or other CBB employees to leave CBB.

6. At the time Mission hired Palacios, it was my understanding that she retired from Suncrest Bank ("Suncrest") and was not hired by CBB when CBB acquired Suncrest in January 2022.

7. In addition to the Former CBB Employees, Mission also hired Dustin

2

LARSON
LOS ANGELES

DECLARATION OF MICHAEL CONGDON IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: BBEB8250-C702-4A87-9614-CA16B1B866DC

Della in or around March 2022. Prior to and at the time Mission interviewed and hired Della, I did not receive or possess any copies of any agreements or contracts between CBB and Della. I also did not have any knowledge of any terms or conditions of any contractual agreements or provisions between CBB and Della. In particular, I did not have any knowledge of any contractual provision between Della and CBB that would in any way purport to restrict his ability to leave CBB, join Mission, or solicit CBB customers or other CBB employees to leave CBB.

8.     I am aware that Della emailed both me and Bryan Easterly certain Suncrest Bank credit memoranda ("Suncrest Credit Memos") in January and February 2022. I never asked Della to send me any Suncrest Credit Memos. At the time Della sent me the Suncrest Credit Memos, I also had no knowledge or awareness of Della's confidentiality and non-solicitation agreement with CBB or the terms of that agreement.

9.     At the time Della emailed me and Easterly the Suncrest Credit Memos in January and February 2022, I believed that he was sending us those documents because those customers were unable to obtain a loan at CBB on terms that the customer wanted and the customer was determining if it could get a loan at another bank. It was also my understanding that Della sent us the Suncrest Credit Memos to determine if Mission would be willing to do business with the types of customers that Della had, and thus, to determine if Della would fit within Mission's overall credit culture. When I received information from Della regarding Suncrest or CBB customers, I never believed that I was improperly acquiring any CBB or Suncrest Bank information without authorization.

10.    To my knowledge, no one at Mission has ever used or disclosed any of the Suncrest Credit Memos in any way at any time. In fact, due to various regulations governing how Mission approves loans, as well as Mission's standard business practices, those Suncrest Credit Memos have never had any value to Mission and never could have been used by Mission to obtain or service its

LARSON
LOS ANGELES

3

DECLARATION OF MICHAEL CONGDON IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: BBEB8250-C702-4A87-9614-CA16B1B866DC

1   customers.

2       11.   In or around February 2022, Bryan Easterly forwarded me a copy of an

3   old Suncrest loan policy. It was my understanding at that time that he had obtained

4   the copy of the Suncrest loan policy from Della. I never used the Suncrest loan

5   policy to solicit or service a customer. I am also not aware of anyone else at Mission

6   who used the Suncrest loan policy to solicit or service a customer. Indeed, as with

7   the Suncrest Credit Memos, banking regulations and Mission's business practices

8   preclude any use of the Suncrest loan policy by Mission to solicit or service

9   customers; instead, Mission always uses its own loan policy. I have also never

10  disclosed any portion of the Suncrest loan policy to anyone. Other than Easterly

11  forwarding me a copy of the Suncrest loan policy, I am not aware of anyone else at

12  Mission who has disclosed any portion of the Suncrest loan policy to anyone.

13      12.   In 2022, I read articles explaining that regulators wanted banks to start

14  implementing a debt yield policy, as many of the larger banks have a debt yield. I

15  asked Easterly if he could ask Della for a copy of the Suncrest loan policy because I

16  wanted to know if the Suncrest loan policy had a debt yield policy within it. I

17  wanted to see sample language regarding these new regulations as part of my efforts

18  to potentially create a debt yield policy for Mission. In addition to requesting a copy

19  of the Suncrest loan policy, I obtained a copy of a debt yield policy from a friend of

20  mine at Tri Counties Bank and another person at Wells Fargo bank. In my

21  experience, there is not a lot of variability in loan procedures from bank-to-bank,

22  since most, if not all, of the loan procedures within the policy are simply procedures

23  to implement regulations that apply to all banks. After I reviewed the Suncrest loan

24  policy and determined it had no debt yield policy within it, I immediately deleted

25  the document, as it had no use to me or Mission.

26      13.   I have reviewed Paragraph 149 of the Complaint filed by CBB. I

27  understand that CBB alleges that "on or around February 11, 2022, Della requested,

28  and was provided, an excel spreadsheet (called a promotional rate report) that

4

DECLARATION OF MICHAEL CONGDON IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: BBEB8250-C702-4A87-9614-CA16B1B866DC

1  included the names and contact information for the decision makers at

2  approximately 40 CBB clients, as well as their average deposit rates and balances

3  and a listing of Suncrest's historical rates for those same clients." I have never

4  acquired, used, or disclosed to anyone any document fitting that description. I am

5  also not aware of anyone else at Mission who has acquired, used, or disclosed to

6  anyone  any document that fits that description.

7      14.    I have reviewed Paragraph 152 of the Complaint filed by CBB. I

8  understand that CBB alleges that "on or around February 22, 2022, Della requested,

9  and was provided with, a much larger excel spreadsheet that contained the names

10 and contact information for the primary decision makers for approximately 664

11 Suncrest clients, which in this case comprised information pertaining to all Suncrest

12 clients that had taken out loans with Suncrest under the Small Business

13 Administration PPP loan program." I have never acquired, used, or disclosed to

14 anyone any document fitting that description. I am also not aware of anyone else at

15 Mission who has acquired, used, or disclosed to anyone any document fitting that

16 description.

17     15.    I have no knowledge of what documents and files, if any, Della may

18 have taken with him from CBB on his last day at CBB.

19     16.    I never received the documents marked as Exhibit 22 [MB07784] and

20 Exhibit 23 [MB00785] (collectively, "New Business Spreadsheets"). In fact, prior to

21 this litigation, I had never even seen the New Business Spreadsheets or known about

22 their existence. As such, I never used or disclosed to anyone any of the information

23 contained in the New Business Spreadsheets..

24     17.    I never received the document marked as Exhibit 7 (the "Pipeline

25 Report"). In fact, as with the New Business Spreadsheets, I had never even seen the

26 Pipeline Report or knew about its existence prior to this litigation. As such, I never

27 used or disclosed to anyone any of the information contained in the Pipeline Report.

28     18.    I do not believe, and have never believed, that Della improperly took

LARSON
LOS ANGELES

5

DECLARATION OF MICHAEL CONGDON IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: BBEB8250-C702-4A87-9614-CA16B1B866DC

1   any CBB or Suncrest proprietary confidential information without authorization.

2       19.    Exhibit 12 is a true and correct copy of a February 2, 2022 email from

3   Della's yahoo email address to my Mission email address and Easterly's Mission

4   email address. I received this email from Della on February 2, 2022.

5       20.    Exhibit 136 is a duplicate of Exhibit 12.

6       21.    Exhibit 137 is a true and correct copy of a February 7, 2022 email from

7   Della's yahoo email address to my Mission email address and Easterly's Mission

8   email address. I received this email from Della on February 7, 2022.

9

10      I declare under penalty of perjury under the laws of the United States of

11  America that the foregoing is true and correct.

12      Executed on this 19.00 day of July, 2024, at _____Bakersfield_____, California.

13

14

15  Michael Congdon

16

17

18

19

20

21

22

23

24

25

26

27

28

6

DECLARATION OF MICHAEL CONGDON IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT D

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF DUSTIN DELLA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:       August 30, 2024<br>Time:       1:30 p.m.<br>Courtroom:  6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:       November 12, 2024 |

LARSON
LOS ANGELES

1

## <u>DECLARATION OF DUSTIN DELLA</u>

I, Dustin Della, declare as follows:

1.     I am presently employed by Mission Bank ("Mission") as Regional President for the Visalia region within California's Central Valley. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.     The exhibits cited herein are attached to the Declaration of Catherine S. Owens.

3.     From approximately February 2014 to January 2022, I worked at Suncrest Bank ("Suncrest") as Market President. Initially, I was the Market President for Porterville, and I later became the Market President for Porterville, Visalia, and Kingsburg. Following Suncrest's merger with Citizens Business Bank ("CBB") on January 7, 2022, I continued to work at CBB as a Senior Vice President and Center Manager of the Porterville branch.

4.     After Suncrest and CBB announced the merger agreement in 2021, I was told that I would be reporting to Brian Mauntel, the President of CBB at that time. Mr. Mauntel and I had ongoing conversations about continuing to develop my customer relationships and maintaining business with CBB, and I was optimistic about working at CBB. However, within a couple months, Mr. Mauntel left CBB— leaving a vacuum of leadership.

5.     As a result of the merger, I was effectively demoted. While working for Suncrest, I managed the Porterville, Visalia, and Kingsburg branches. After the merger, I was only given responsibility for the Porterville branch. Although I was having conversations with Mr. Mauntel regarding continuing to service customers in Kingsburg and Visalia, after Mr. Mauntel left, the majority of my customers in Visalia and Kingsburg were transferred to other personnel at CBB to manage. With

a few exceptions, I was limited to servicing customers in the Porterville area.

6.     Following the merger, I grew concerned about my ability to service the customers that I had developed relationships with over the course of my banking career. Immediately following the merger, CBB declined to approve or renew loans on the terms that already had been negotiated with my customers. I also believed CBB did not prioritize retaining my existing customers, but instead focused on gaining new customers.

7.     At CBB, I was also forced to navigate several levels of bureaucracy that did not exist at Suncrest. For example, although I was the Center Manager, I had to seek upper-level approval for tasks as simple as waiving a late fee for a customer, which impacted my ability to manage my customer relationships effectively.

8.     I also witnessed the morale in the Porterville branch deteriorate quickly following the CBB-Suncrest merger because of the way former Suncrest employees were treated by their new colleagues at CBB. Rather than engage in a meaningful dialogue when questions were raised, CBB employees responded in a condescending and arrogant way. It seemed like CBB employees expected the former Suncrest employees to know CBB protocols and processes even before they received adequate training. I experienced this personally when I spoke with CBB's Chief Credit Officer about loans that I was submitting for approval. In addition, Lori Carabay and Angie Dempsie, who were also former Suncrest employees that were hired by CBB as part of the merger, both expressed to me their frustration about the way they were treated by their new CBB counterparts when they asked questions.

9.     I resigned from CBB on March 14, 2022, and began to work at Mission on March 15, 2022. I left CBB because of the decreased ability to support my existing customer relationships, loss of autonomy in my role as Center Manager, cultural shift in the banking department, and drop in morale following the CBB-Suncrest merger as described above.

LARSON
LOS ANGELES

3

DECLARATION OF DUSTIN DELLA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

10.     During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, loan billing statements, deposit statements, account statements, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information to competitor banks.

11.     Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. When a customer pays for an appraisal report, preliminary title report, or environmental reports, I am not aware of any bank policy or procedure at either Suncrest or CBB that prohibits the customer from requesting a copy of the report from the bank or disclosing the report to any third-party.

12.     During the course of my employment with Suncrest, CBB, and Mission, I reviewed and dealt with purchase agreements and escrow instructions. I understand that purchase agreements and escrow instructions contain information that can be obtained directly from the customer. I am not aware of any policies or procedures at Suncrest or CBB that prohibited the customer from sharing purchase agreements and escrow instructions with third-parties.

13.     In the course of my employment at Suncrest and CBB, I never personally observed or asked customers to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require customers to execute confidentiality or non-disclosure agreements.

14.     It is my understanding and experience that customers at both Suncrest and CBB were free to share their banking and financial information with whomever they choose and frequently did so.

LARSON
LOS ANGELES

4

DECLARATION OF DUSTIN DELLA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

15.     It is my understanding and experience that Suncrest and CBB customers had knowledge of loan interest rates, amounts, and structures offered by Suncrest and CBB, and could freely share that information with another bank.

16.     In all my years working as a banker, I have never heard of a bank preventing or prohibiting customers from sharing their own banking and financial information with other banks, or otherwise restricting customers from accessing and/or sharing the information needed to find a new banking relationship or solicit competitive rates from other banks.

17.     In January and February 2022, I emailed certain credit memoranda prepared by Suncrest (the "Suncrest Credit Memos") to Bryan Easterly and Michael Congdon at Mission. I did not send any Suncrest Credit Memos to anyone else at Mission. It is my understanding that CBB claims that I improperly sent the Suncrest Credit Memos to Easterly and Congdon. The Suncrest Credit Memos are credit analyses that Suncrest performed to determine if the bank would approve a loan and, if so, on what terms.

18.     I never believed, nor do I currently believe, that I was improperly disclosing any CBB or Suncrest information to Mission without the customer's authorization. I emailed Easterly and Congdon the Suncrest Credit Memos because those specific transactions were declined, or were going to be declined, by CBB, and I wanted to assist the customer in finding a bank that would potentially be able to do the transaction on the terms the customer wanted, or because I wanted to determine if Mission's credit culture would be a good fit for me and my customer relationships. Moreover, prior to emailing any Suncrest Credit Memo to Easterly and Congdon, I conferred with the customer and obtained the customer's approval to share the customer's information and details about the transaction with Mission.

19.     With respect to the Suncrest Credit Memos on pending transactions, my only goal in sending the Suncrest Credit Memos to Easterly and Congdon was to help the customer find a home for the specific transaction at issue. I was not, and did

5

LARSON
LOS ANGELES

DECLARATION OF DUSTIN DELLA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

not, seek to move that customer's entire business away from CBB to Mission (or to any other bank). To the contrary, I was actively encouraging the customers to keep their business at CBB, but also telling them that if CBB would not entertain that specific transaction, I could assist the customer in finding another bank that would do the transaction. For example, I referred customers to Bank of Sierra and Farm Credit for specific loans that CBB was unwilling to do. Those same customers, however, continued to engage in other business transactions with CBB during my time at CBB.

20.     Exhibit 65B contains a true and correct copy of the Suncrest loan policy. After the merger with CBB was completed, it was my understanding that the Suncrest loan policy was no longer applicable to any CBB loans or loan processes; instead, all loans had to be issued and serviced pursuant to the CBB loan policy. As such, I did not use the Suncrest loan policy for any purpose after the merger with CBB. In early 2022, I sent the Suncrest loan policy to Easterly, and I understand that he then forwarded the policy to Congdon. When I sent the Suncrest loan policy to Easterly, I did not and do not believe that I was improperly disclosing any CBB or Suncrest information without authorization. In my experience, it is not unusual for bankers to share loan policies, or portions of loan policies, as a professional courtesy. Given the purpose of loan policies, and their contents, seeing another bank's loan policy would not give the receiving bank any type of competitive advantage, nor could the receiving bank use another bank's loan policy to issue or service loans. Not surprisingly, since joining Mission in March 2022, I have never used the Suncrest loan policy to service any customers or solicit customers, and I am not aware of anyone else at Mission who has used the Suncrest loan policy to service or solicit any customers. In addition, I only disclosed the Suncrest loan policy to Easterly and Congdon, and I am not aware of either of them disclosing the Suncrest loan policy to anyone else at Mission (or outside of Mission).

21.     I understand that CBB claims that I improperly disclosed a promotional

LARSON
LOS ANGELES

6

DECLARATION OF DUSTIN DELLA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

rate report ("Promo Rate Report") (Ex. 10) to Mission. In February 2022, I asked Katrina Puerner to run a Promo Rate Report, which is the document attached to the email in Exhibit 10. At that time, the operating system of Suncrest was being converted to the operating system of CBB, which meant we would be migrating all of the deposit account customers and loan customers from the Suncrest platform to the CBB platform. At the direction of Michael Stain, my then-supervisor at CBB, I was asked to contact the former Suncrest customers to notify them that their interest rates were going to change as a result of the merger. I asked Puerner to generate the Promo Rate Report so I could have the list of customers to contact about this change in the interest rates. This list was limited to the customers in the regions that I managed at Suncrest (Porterville, Visalia, and Kingsburg.). I ultimately never used the Promo Rate Report because of other pressing business and ongoing merger activity. I never emailed a copy of the Promo Rate Report to my personal email address or to anyone at Mission, I did not take a copy of the Promo Rate Report with me when I left CBB, and I have never provided a copy of the Promo Rate Report to anyone outside of CBB, including anyone at Mission.

22.     I understand that CBB claims that I improperly disclosed an excel spreadsheet that contained the names and contact information for the primary decision makers for approximately 664 Suncrest customers that had taken out loans with Suncrest under the Small Business Administration PPP loan program ("PPP Sheet") (Ex. 9). In January or February 2022, I asked Armie Avila, a CBB employee at that time, to send me a list of all PPP loans. Later in February, Annie Buchanan, a CBB employee at that time, sent me the PPP Sheet. I asked for a list of all PPP loans because I was planning to contact the customers to inform them about the opportunity to apply for the Employee Retention Credit. Ultimately, I never used the PPP Sheet because I left CBB to go work at Mission. I never emailed a copy of the PPP Sheet to my personal email address or to anyone at Mission, I did not take a copy of the PPP Sheet with me when I left CBB, and I have never provided a copy

of the PPP Sheet to anyone outside of CBB, including anyone at Mission.

23.     I resigned from CBB on March 14, 2022. On my last day at CBB, I went to the Porterville branch in the early morning to retrieve my personal belongings, including my graduate banking school binders, personal notebooks, personal tax returns, and personal property information. I did not take any CBB or Suncrest proprietary confidential information.

24.     On March 7, 2022, I emailed Easterly a pipeline report (the "Pipeline Report") (Ex. 122). I created this Pipeline Report by taking an old Suncrest Excel template and deleting the Borrower Name on each spreadsheet.  On the first spreadsheet, entitled "New Business," I added the information in the columns labeled "Date Logged," "Borrower Name," "Loan Type," and "Loan Commitment." The information I added in those columns was based upon information that I received from the customers or from my memory. I did not obtain the information from CBB or Suncrest. Under the column labeled "Notes," I included my thoughts on potential financing for the Borrower; I did not obtain the information from CBB or Suncrest. The information in the columns labeled "Status" and "Priority" was left-over from the template and did not relate to the listed Borrower. I do not recall if I added the information in the columns labeled "Est. Closing Date," "Relationship Manager," "Credit Assistant," "Credit Action," or "Annual Review" to reflect information related to the listed Borrower, or if the information was left-over from the old template and did not relate to the listed Borrower. I deleted the Borrower Names in the subsequent spreadsheets entitled "Upcoming Maturity," "Credit Approvals 2021," "Payoffs/Closed," "Credit Withdrawal/Decline" so the information that remained in those spreadsheets was meaningless. Easterly did not ask me to send him the Pipeline Report. I did not send this Pipeline Report to anyone else at Mission. I am not aware of Easterly sharing this Pipeline Report or its contents with anyone. I also did not speak to Easterly or anyone at Mission about this specific Pipeline Report. Nor am I aware of anyone at Mission that used this

LARSON
LOS ANGELES

specific Pipeline Report to solicit customers or conduct business.

25.     On April 28, 2022, which was more than one month after my departure from CBB, Easterly asked me to give him an update on Visalia, including a loan pipeline update and a deposit pipeline update (Ex. EE). I emailed Easterly the requested documents, which I understand are marked as Exhibit 22 and Exhibit 23 (collectively, "New Business Spreadsheets"). I did not create the New Business Spreadsheets at Suncrest or CBB. I also did not retrieve or obtain any proprietary confidential information from Suncrest or CBB to create either spreadsheet. Rather, I took the same Excel template I used in the Pipeline Report that I emailed to Easterly on March 7, 2022 (Ex. 122), and completed the spreadsheet entitled "New Business" by adding current information from the customers or from my memory to reflect the current status of those transactions at Mission. Like Exhibit 122, Exhibit 22 contains spreadsheets titled "Upcoming Maturity," "Payoffs/Closed," "Credit Withdrawal/Decline" that do not list any Borrower Names so the information that remained in those spreadsheets was meaningless and those spreadsheets were not relevant at that time. In Exhibit 22, the spreadsheet entitled "Credit Approvals 2021" lists a loan that had been approved at Mission for the listed borrower, however, I inadvertently left the title as "Credit Approvals 2021" instead of updating the year. No one at Mission, including Easterly, asked me to prepare or send them a spreadsheet using any proprietary confidential information from Suncrest or CBB. In addition, I only sent the New Business Spreadsheets to Easterly, and no one else.

26.     Prior to CBB's counsel sending a demand letter to Mission and me on March 25, 2022, I did not disclose to anyone at Mission the contents of the CBB Associate Handbook and Employment Agreement Concerning Confidential Information and Non-Solicitation of Employees and Customers that I signed as part of my employment with CBB and I did not provide Mission any information about the provisions in those agreements or contracts except for the amount of a retention bonus I had received from CBB.

9

LARSON
LOS ANGELES

27.    Exhibit 28 is a true and correct copy of an April 20, 2022 email and attachments that was sent from ███████████ to me, with a copy to ███████████ with subject line ███████████ ███████████

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of July, 2024, at Visalia, California.

Dustin Della

DECLARATION OF DUSTIN DELLA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT E

Docusign Envelope ID: AA65E8C3-87B7-443E-BC11-D43236BB8B8B

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>   Plaintiff,<br><br>  vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>   Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF ARMIDELIA AVILA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:  August 30, 2024<br>Time:  1:30 p.m.<br>Courtroom: 6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:  November 12, 2024 |

LARSON
LOS ANGELES

Docusign Envelope ID: AA65E8C3-87B7-443E-BC11-D43236BB8B8B

## <u>DECLARATION OF ARMIDELIA AVILA</u>

I, Armidelia Avila, declare as follows:

1.     I am presently employed by Mission Bank ("Mission") as a Small Business Administration ("SBA") Closing Manager. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.     From approximately October 2015 to January 2022, I worked at Suncrest Bank ("Suncrest") as a Credit Service Center Manager. Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as a Loan Documentation Manager.

3.     During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

4.     Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest or CBB policy or procedure that prohibited customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from either Suncrest or CBB.

5.     I am also not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents third-party vendors from disclosing to other third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on

2

LARSON
LOS ANGELES

DECLARATION OF ARMIDELIA AVILA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: AA65E8C3-87B7-443E-BC11-D43236BB8B8B

1  behalf of a CBB or Suncrest customer.

2  　　　6.　　In the course of my employment at Suncrest and CBB, I never

3  personally observed or asked customers to execute non-disclosure or confidentiality

4  agreements with Suncrest or CBB. I am also not aware of any policies or procedures

5  at CBB or Suncrest that require customers to execute confidentiality or non-

6  disclosure agreements. I have also never personally observed or asked third-party

7  vendors to execute non-disclosure or confidentiality agreements with Suncrest or

8  CBB. I am also not aware of any policies or procedures at CBB or Suncrest that

9  require third-party vendors to execute non-disclosure or confidentiality agreements.

10  　　　7.　　I understand that CBB and Suncrest customers own their loan billing

11  statements, deposit statements, and account statements issued by the bank. I am not

12  aware of any agreement, policy, or procedures that dictates that CBB or Suncrest

13  customers do not own their loan billing statements, deposit statements, and account

14  statements. It is my understanding and experience that customers at both Suncrest

15  and CBB were free to share their banking and financial information—including their

16  bank statements—with whomever they choose, and frequently did so.

17  　　　8.　　It is my understanding and experience that CBB and Suncrest

18  customers have knowledge of loan interest rates, amounts, and structures offered by

19  CBB and Suncrest, respectively, and could freely share that information with

20  another bank.

21  　　　9.　　I resigned from CBB on or around March 7, 2022, and began to work at

22  Mission on March 25, 2022. I decided to leave CBB because of my position change

23  post-merger to Loan Documentation Manager (which I viewed as a demotion),

24  increased health insurance costs under CBB, and CBB's inability to manage the

25  transition of business following the merger. CBB laid off half of my team—

26  employees that I supervised—and transitioned me to a position where I did not

27  supervise or manage any employees. CBB was not including those of us working at

28  the corporate office in Visalia in CBB's day-to-day business processes. For

LARSON
LOS ANGELES

DECLARATION OF ARMIDELIA AVILA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: AA65E8C3-87B7-443E-BC11-D43236BB8B8B

example, we were instructed to forward payments made to the Visalia branch to CBB's Rancho branch instead of processing them at our office, as we had done before the merger. Moreover, my new supervisor from CBB, Mark Cannon, quit soon after the merger. I frequently asked CBB leadership for training or guidance on their systems and processes, but was not provided any. The bank became very disorganized and many of us who joined CBB from Suncrest felt abandoned by CBB's leadership.

10.   On or around March 25, 2022, I started my employment with Mission. I never provided Mission with any of the agreements or contracts that I executed with CBB or Suncrest, nor did I provide Mission any information about the provisions in those agreements or contracts. I also never disclosed to anyone at Mission the contents of the CBB Associate Handbook and Employment Agreement Concerning Confidential Information and Non-Solicitation of Employees and Customers that I signed as part of my employment with CBB.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ___18.00___ day of July, 2024, at _____Porterville_____, California.

Armidelia Avila

LARSON
LOS ANGELES

4
DECLARATION OF ARMIDELIA AVILA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT F

Docusign Envelope ID: F9F23C74-5F36-4B99-84AE-7895C83AF4E1

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>    Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF DAVID BRETT IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:        August 30, 2024<br>Time:        1:30 p.m.<br>Courtroom: 6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:        November 12. 2024 |

1

Docusign Envelope ID: F9F23C74-5F36-4B99-84AE-7895C83AF4E1

# <u>DECLARATION OF DAVID BRETT</u>

I, David Brett, declare as follows:

1.     I am presently employed by Mission Bank ("Mission") as a Business Development Officer. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.     The exhibits cited herein are attached to the Declaration of Catherine S. Owens.

3.     From approximately December 2016 to January 2022, I worked at Suncrest Bank ("Suncrest") as a Regional Market President for the Visalia region. Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as Relationship Manager.

4.     During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

5.     Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest policy or procedure that prohibited Suncrest Bank customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from Suncrest.

6.     I am not aware of any bank policy or procedure at either Suncrest or CBB that prohibits or prevents these third-party vendors from disclosing to other

2

LARSON
LOS ANGELES

DECLARATION OF DAVID BRETT IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: F9F23C74-5F36-4B99-84AE-7895C83AF4E1

1  third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on

2  behalf of a CBB or Suncrest customer.

3       7.     In the course of my employment at Suncrest and CBB, I never

4  personally observed or asked customers to execute non-disclosure or confidentiality

5  agreements with Suncrest or CBB. I am also not aware of any policies or procedures

6  at CBB or Suncrest that require customers to execute confidentiality or non-

7  disclosure agreements. I have also never personally observed or asked third-party

8  vendors to execute non-disclosure or confidentiality agreements with Suncrest or

9  CBB. I am also not aware of any policies or procedures at CBB or Suncrest that

10  require third-party vendors to execute non-disclosure or confidentiality agreements.

11       8.     During the course of my employment with Suncrest, CBB, and

12  Mission, I reviewed and dealt with escrow agreements. I understand that escrow

13  agreements contain information that can be obtained directly from the customer. I

14  am not aware of any policies or procedures at Suncrest Bank that prohibited the

15  customer from sharing escrow agreements with third parties.

16       9.     I understand that CBB and Suncrest customers own their loan billing

17  statements, deposit statements, and account statements issued by the bank. I am not

18  aware of any agreement, policy, or procedures that dictates that CBB or Suncrest

19  customers do not own their loan billing statements, deposit statements, and account

20  statements. It is my understanding and experience that customers at both Suncrest

21  and CBB were free to share their banking and financial information—including their

22  bank statements—with whomever they choose, and frequently did so.

23       10.    It is my understanding and experience that CBB and Suncrest

24  customers have knowledge of loan interest rates, amounts, and structures offered by

25  CBB and Suncrest Bank, respectively, and could freely share that information with

26  another bank.

27       11.    I have been a banker for over 35 years and have never heard of a bank

28  preventing or prohibiting customers from sharing their banking information to find a

3

LARSON
LOS ANGELES

DECLARATION OF DAVID BRETT IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: F9F23C74-5F36-4B99-84AE-7895C83AF4E1

new banking relationship. Without being able to share information about their current banking, customers would be prevented from soliciting competitive rates from other banks.

12.    When CBB's merger with Suncrest was announced in the summer of 2021, I was hopeful that CBB would complete the business transition while retaining Suncrest's customers and employees, but I had my doubts. I was aware of CBB's prior acquisition of Valley Business Bank ("VBB") in or around March of 2017 and that a significant number of VBB's customers had left the bank soon thereafter. Many of VBB's former customers came to Suncrest's Visalia branch for their banking needs after the acquisition.

13.    From early January 2022 through March 2022, Suncrest's former Visalia branch remained open and continued to service clients under CBB's control. At some point during this period the Suncrest operating platform was replaced by CBB's operating platform. Once operating on CBB's platform, I and other former Suncrest employees at the Visalia branch expected support from CBB to navigate the branch's transition to CBB's way of doing business. CBB did not provide any support or training to the original Suncrest team at the Visalia branch during this period. On many occasions, it felt like we were abandoned.

14.    It also became evident that customers—particularly Suncrest's existing customers—were not CBB's primary focus. Suncrest's existing customers frequently complained to members of the Visalia branch, including myself, about the declining quality of service and significant fee increases that they experienced after the merger. CBB leadership communicated to the Suncrest team that remained at the Visalia branch that, if customers did not like the changes, we should simply let them leave. To make matters more challenging, CBB did not have the human resources to service their existing customer base prior to the acquisition of Suncrest and—with the large increase in customers from the merger and the large number of displacements from the acquisition—had great difficulty meeting the needs of

LARSON
LOS ANGELES

DECLARATION OF DAVID BRETT IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: F9F23C74-5F36-4B99-84AE-7895C83AF4E1

1  customers. Over time, Suncrest's existing customers were becoming increasingly

2  dissatisfied and informing myself and other team members at the Visalia branch that

3  they were considering switching banks.

4       15.    Moreover, CBB's agreement to allow me to continue working remotely

5  after the merger had not materialized. In my initial interview with Michael Stain, a

6  Senior Vice President at CBB, I was assured that I could continue to work

7  remotely—something that I had been doing for the prior two years at Suncrest.

8  However, during my time at CBB, I was never provided a laptop—even after

9  numerous requests to James Hall, the Visalia CBB Center Manager—which would

10  have allowed me to work remotely. Instead, CBB required me to be physically

11  present in the office to service my clients. This was inconsistent with my discussions

12  with Mr. Stain.

13       16.    For all of these reasons, I resigned from CBB effective on or around

14  March 18, 2022. It had become clear that many of the client relationships that I was

15  responsible for were going to be unhappy with CBB. It also became clear that I was

16  not going to be happy at CBB. Their customer approach was not in line with what I

17  wanted to provide my clients and not what my clients expected from Suncrest.

18       17.    On or around March 21, 2022, I started my employment with Mission.

19  I never provided Mission with any of the agreements or contracts that I executed

20  with CBB or Suncrest, nor did I provide Mission any information about the

21  provisions in those agreements or contracts except for the amount of a retention

22  bonus I would have received if I had stayed at CBB. I also never disclosed to

23  anyone at Mission the contents of the CBB Associate Handbook and Employment

24  Agreement Concerning Confidential Information and Non-Solicitation of

25  Employees and Customers that I signed as part of my employment with CBB.

26       18.    Exhibit CC is a true and correct copy of a June 28, 2022 email I

27  received from ████████, a Mission client, bates labeled MB15697-MB15702.

28  The June 28, 2022 email also included an escrow agreement that contains

LARSON
LOS ANGELES

5

DECLARATION OF DAVID BRETT IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: F9F23C74-5F36-4B99-84AE-7895C83AF4E1

1  information I obtained directly from ██████████

2

3          I declare under penalty of perjury under the laws of the United States of

4  America that the foregoing is true and correct.

5          Executed on this ‾17.00‾ day of July, 2024, at ___Exeter___, California.

6

7                                                    _____

8                                                    David Brett

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARSON
LOS ANGELES

6

DECLARATION OF DAVID BRETT IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT G

Docusign Envelope ID: BF31DDA0-F1FE-42C2-A240-23745781D10E

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>       Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF LORI CARABAY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:     August 30, 2024<br>Time:    1:30 p.m.<br>Courtroom: 6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:    November 12, 2024 |

LARSON
LOS ANGELES

1

DECLARATION OF LORI CARABAY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: BF31DDA0-F1FE-42C2-A240-23745781D10E

## DECLARATION OF LORI CARABAY

I, Lori Carabay, declare as follows:

1. I am presently employed by Mission Bank ("Mission") as a Relationship Associate III. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2. From approximately April 2013 to January 2022, I worked at Suncrest Bank ("Suncrest") in various roles, including as a Loan Processor (processing loan documentation, onboarding loans, and coordinating payments), a Credit Service Center Supervisor (preparing internal reporting for the bank and managing loan documentation), a Customer Service Representative (working directly with bank customers to manage their accounts and transactions), and a Commercial Banking Specialist (closing loans and coordinating loan payments). Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as a Credit Support IV until I left the bank in March 2022.

3. During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

4. Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest or CBB policy or procedure that prohibited customers from requesting copies of appraisal reports, preliminary

2

DECLARATION OF LORI CARABAY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

LARSON
LOS ANGELES

Docusign Envelope ID: BF31DDA0-F1FE-42C2-A240-23745781D10E

1    title reports, or environmental reports directly from either Suncrest or CBB.

2         5.    I am not aware of any bank policy or procedure at either Suncrest or

3    CBB that prohibits or prevents these third-party vendors from disclosing to other

4    third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on

5    behalf of a CBB or Suncrest customer.

6         6.    In the course of my employment at Suncrest and CBB, I never

7    personally observed or asked customers to execute non-disclosure or confidentiality

8    agreements with Suncrest or CBB. I am also not aware of any policies or procedures

9    at CBB or Suncrest that require customers to execute confidentiality or non-

10   disclosure agreements. I have also never personally observed or asked third-party

11   vendors to execute non-disclosure or confidentiality agreements with Suncrest or

12   CBB. I am also not aware of any policies or procedures at CBB or Suncrest that

13   require third-party vendors to execute non-disclosure or confidentiality agreements.

14        7.    During the course of my employment with Suncrest, CBB, and

15   Mission, I reviewed and dealt with escrow agreements. I understand that escrow

16   agreements contain information that can be obtained directly from the customer. I

17   am not aware of any policies or procedures at Suncrest Bank that prohibited the

18   customer from sharing escrow agreements with third parties.

19        8.    I understand that CBB and Suncrest customers own their loan billing

20   statements, deposit statements, and account statements issued by their respective

21   bank. I am not aware of any agreement, policy, or procedures that dictates that CBB

22   or Suncrest customers do not own their loan billing statements, deposit statements,

23   and account statements. It is my understanding and experience that customers at

24   both Suncrest and CBB were free to share their banking and financial information—

25   including their bank statements—with whomever they choose, and frequently did

26   so.

27        9.    It is my understanding and experience that CBB and Suncrest

28   customers had knowledge of loan interest rates, amounts, and structures offered by

LARSON
LOS ANGELES

3

DECLARATION OF LORI CARABAY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: BF31DDA0-F1FE-42C2-A240-23745781D10E

1  CBB and Suncrest Bank, respectively, and could freely share that information with

2  another bank.

3       10.     Ultimately, I decided to leave CBB because of its corporate culture and

4  the high cost of its health insurance (it was almost twice as expensive as Suncrest's).

5  It was clear to me that CBB did not share the same vision for community banking

6  that made Suncrest such a special place to work. Though I loved my job at Suncrest,

7  in December 2021, I was becoming increasingly concerned about my future post-

8  merger role at CBB and its values. In February 2022, I began to search for new

9  employment. A few weeks later, I accepted employment at Mission. I resigned from

10 CBB on March 14, 2022 and began working at Mission on March 15, 2022.

11      11.     I never provided Mission with any of the agreements or contracts that I

12 executed with CBB or Suncrest, nor did I provide Mission any information about the

13 provisions in those agreements or contracts. I also never disclosed to anyone at

14 Mission the contents of the CBB Associate Handbook and Employment Agreement

15 Concerning Confidential Information and Non-Solicitation of Employees and

16 Customers that I signed as part of my employment with CBB.

17

18      I declare under penalty of perjury under the laws of the United States of

19 America that the foregoing is true and correct.

20      Executed on this ___ day of July, 2024, at _____, California.
        22                                        Visalia

21

22      _____

23      Lori Carabay

24

25

26

27

28

4

DECLARATION OF LORI CARABAY IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT H

Docusign Envelope ID: 8F4F3909-D60F-4BD4-8AB6-441A96DB6ABD

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>       Plaintiff,<br><br>     vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>       Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF ANGELA DEMPSIE IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:     August 30, 2024<br>Time:    1:30 p.m.<br>Courtroom: 6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:   November 12, 2024 |

LARSON
LOS ANGELES

1

DECLARATION OF ANGELA DEMPSIE IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 8F4F3909-D60F-4BD4-8AB6-441A96DB6ABD

## <u>DECLARATION OF ANGELA DEMPSIE</u>

I, Angela Dempsie, declare as follows:

1.      I am presently employed by Mission Bank ("Mission") as a Relationship Associate Level III. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.      From approximately July 2017 to January 2022, I worked at Suncrest Bank ("Suncrest"). To the best of my recollection, my title was Commercial Loan Assistant. Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as Portfolio Manager.

3.      During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with third parties.

4.      Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest or CBB policy or procedure that prohibited customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from either Suncrest or CBB.

5.       I am also not aware of any bank policy or procedure at either Suncrest or CBB that prohibits or prevents these third-party vendors from disclosing to other third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on behalf of a CBB or Suncrest customer.

2

LARSON
LOS ANGELES

DECLARATION OF ANGELA DEMPSIE IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 8F4F3909-D60F-4BD4-8AB6-441A96DB6ABD

6.     In the course of my employment at Suncrest and CBB, I never personally observed or asked customers to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require customers to execute confidentiality or non-disclosure agreements. I have also never personally observed or asked third-party vendors to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require third-party vendors to execute non-disclosure or confidentiality agreements.

7.     During the course of my employment with Suncrest, CBB, and Mission, I reviewed and dealt with escrow agreements. I understand that escrow agreements contain information that can be obtained directly from the customer. I am not aware of any policies or procedures at Suncrest or CBB that prohibited the customer from sharing escrow agreements with third parties.

8.     I understand that CBB and Suncrest customers own their loan billing statements, deposit statements, and account statements issued by their respective bank. I am not aware of any agreement, policy, or procedures that dictates that CBB or Suncrest customers do not own their loan billing statements, deposit statements, and account statements. It is my understanding and experience that customers at both Suncrest and CBB were free to share their banking and financial information—including their bank statements—with whomever they choose, and frequently did so.

9.     It is my understanding and experience that CBB and Suncrest customers had knowledge of loan interest rates, amounts, and structures offered by CBB and Suncrest, respectively, and could freely share that information with another bank.

10.    I resigned from CBB on March 14, 2022, and started working at Mission on March 15, 2022. I left CBB because of the drastic change in culture from Suncrest to CBB and CBB's lack of direction and training of Suncrest

LARSON
LOS ANGELES

3

DECLARATION OF ANGELA DEMPSIE IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 8F4F3909-D60F-4BD4-8AB6-441A96DB6ABD

1  employees. Before the merger, Suncrest was a community bank focused on

2  providing high-quality banking services at competitive rates to individuals and

3  businesses in the Porterville region. After the merger, CBB leadership made it clear

4  to the Suncrest team that stayed that CBB was not interested in serving all of

5  Suncrest's customers. The culture was completely turned upside down. For

6  example, in the course of the business transition, CBB issued mailers to Suncrest's

7  existing customers informing them of significant fee increases that would be

8  imposed on their accounts, including for deposits and transactions. After these

9  mailers were sent out, customers visited the Porterville branch on a nearly daily

10 basis—many with these mailers in hand—complaining about the increased fees.

11 Some customers stated that they would not be able to afford to continue banking

12 with CBB due to the fees. On a call with members of the Porterville branch and

13 CBB leadership, including Michael Stain, a member of the Porterville branch

14 mentioned these increased fees and customer complaints. Mr. Stain told those

15 employees attending the call that if a customer "does not have ███████ in your

16 bank minimum, that is not your target customer" and to "let them go" if they

17 complained. That same evening, when I came home from work, I told my husband

18 that I needed to find a new job. Though I banked with Suncrest before the merger, I

19 changed banks after the merger due to the increased fees imposed by CBB.

20      11.    I never provided Mission with any of the agreements or contracts that I

21 executed with CBB or Suncrest, nor did I provide Mission any information about the

22 provisions in those agreements or contracts. I also never disclosed to anyone at

23 Mission the contents of the CBB Associate Handbook and Employment Agreement

24 Concerning Confidential Information and Non-Solicitation of Employees and

25 Customers that I signed as part of my employment with CBB.

26 //

27 //

28 //

LARSON
LOS ANGELES

4

Docusign Envelope ID: 8F4F3909-D60F-4BD4-8AB6-441A96DB6ABD

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed on this __17.00__ day of July, 2024, at __Springville__, California.

4

5    _____

6    Angela Dempsie

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARSON
LOS ANGELES

5
DECLARATION OF ANGELA DEMPSIE IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT I

Docusign Envelope ID: AFEF240E-AF1F-405B-A318-7CB9812A0096

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation, | Case No. 5:22-cv-01473-FLA-SP |
| Plaintiff, | Hon. Fernando L. Aenlle-Rocha |
| vs. | **DECLARATION OF JORGE ESPINOZA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| MISSION BANK, a California corporation and DOES 1 through 10, inclusive, | |
| Defendant. | *[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]* |
| | Date:         August 30, 2024<br>Time:         1:30 p.m.<br>Courtroom:  6B |
| | Complaint Filed: August 19, 2022<br>Trial Date:          November 12, 2024 |

LARSON
LOS ANGELES

1

DECLARATION OF JORGE ESPINOZA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: AFEF240E-AF1F-405B-A318-7CB9812A0096

## DECLARATION OF JORGE ESPINOZA

I, Jorge Espinoza, declare as follows:

1.      I was employed by Mission Bank ("Mission") as a Relationship Manager from approximately March 2022 to November 2022. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.      From approximately July 2017 to June 2019 and again from April 2021 to January 2022, I worked at Suncrest Bank ("Suncrest") as a Commercial Banking Manager and then as a Director of Commercial Underwriting. Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as Credit Officer III.

3.      During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

4.      Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest or CBB policy or procedure that prohibited customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from Suncrest or CBB.

5.       I am not aware of any bank policy or procedure at either Suncrest or CBB that prohibits or prevents these third-party vendors from disclosing to other

2

LARSON
LOS ANGELES

DECLARATION OF JORGE ESPINOZA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: AFEF240E-AF1F-405B-A318-7CB9812A0096

1    third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on

2    behalf of a CBB or Suncrest customer.

3        6.    In the course of my employment at Suncrest and CBB, I never

4    personally observed or asked customers to execute non-disclosure or confidentiality

5    agreements with Suncrest or CBB. I am also not aware of any policies or procedures

6    at CBB or Suncrest that require customers to execute confidentiality or non-

7    disclosure agreements. I have also never personally observed or asked third-party

8    vendors to execute non-disclosure or confidentiality agreements with Suncrest or

9    CBB. I am also not aware of any policies or procedures at CBB or Suncrest that

10   require third-party vendors to execute non-disclosure or confidentiality agreements.

11   In fact, I am personally aware that some loan documents containing specific terms

12   are publicly available at local courthouses and that some data companies mine these

13   sources and sell that information as a service.

14       7.    During the course of my employment with Suncrest, CBB, and

15   Mission, I reviewed and dealt with escrow agreements. I understand that escrow

16   agreements contain information that can be obtained directly from the customer. I

17   am not aware of any policies or procedures at Suncrest Bank that prohibited the

18   customer from sharing escrow agreements with third parties.

19       8.    I understand that CBB and Suncrest customers own their loan billing

20   statements, deposit statements, and account statements issued by their respective

21   bank. I am not aware of any agreement, policy, or procedures that dictates that CBB

22   or Suncrest customers do not own their loan billing statements, deposit statements,

23   and account statements. It is my understanding and experience that customers at

24   both Suncrest and CBB were free to share their banking and financial information—

25   including their bank statements—with whomever they choose, and frequently did

26   so.

27       9.    It is my understanding and experience that CBB and Suncrest

28   customers had knowledge of loan interest rates, amounts, and structures offered by

3

DECLARATION OF JORGE ESPINOZA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: AFEF240E-AF1F-405B-A318-7CB9812A0096

CBB and Suncrest Bank, respectively, and could freely share that information with another bank.

10. I resigned from CBB on or around March 17, 2022, and started working at Mission the following day. I left CBB due to the change in workplace culture following the Suncrest merger and CBB's decision to change my role at the bank. Though I was a Director of Commercial Underwriting at Suncrest before the merger, I was only offered a position as a Credit Officer III at CBB, which was a significant demotion in title and responsibilities. I asked members of CBB leadership to consider me for available roles as a Relationship Manager or Team Lead with sales or management responsibilities, but was not selected for either position. Instead, I was informed by CBB leadership that I would only be eligible for promotion "in a couple of years." During my employment with CBB, I fulfilled my job duties by successfully underwriting millions of dollars in new loan requests, I was even complimented by CBB's CCO, David Farnsworth, for the quality of my work. Upon my exit interview with CBB's Deputy CCO, Hector Gutierrez, I explained that I had been receptive to a role with CBB, but the organization had dismissed me at every opportunity. I explained my frustration given my past experience as a Credit Administrator at a previous bank where I managed approximately half a billion dollars in commercial credit exposure. Mr. Gutierrez cryptically explained I could not be promoted within CBB "for obvious reasons" which were left unexplained.

11. I never provided Mission with any of the agreements or contracts that I executed with CBB or Suncrest, nor did I provide Mission any information about the provisions in those agreements or contracts. I also never disclosed to anyone at Mission the contents of the CBB Associate Handbook and Employment Agreement Concerning Confidential Information and Non-Solicitation of Employees and Customers that I signed as part of my employment with CBB.

12. I am no longer employed by Mission.

LARSON
LOS ANGELES

4

DECLARATION OF JORGE ESPINOZA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: AFEF240E-AF1F-405B-A318-7CB9812A0096

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed on this ⎯⎯ day of July, 2024, at Visalia, California.

4

5    _____

6    Jorge Espinoza

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

DECLARATION OF JORGE ESPINOZA IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT J

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>        Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF VIRGINIA HOPPER IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; Proposed] Order]*<br><br>Date:        August 30, 2024<br>Time:        1:30 p.m.<br>Courtroom:  6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:      November 12, 2024 |

LARSON
LOS ANGELES

1

DECLARATION OF VIRGINIA HOPPER IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 745E60F1-2EB5-4A24-8CB9-4A18AACDD115

## DECLARATION OF VIRGINIA HOPPER

I, Virginia Hopper, declare as follows:

1.     I am presently employed by Mission Bank ("Mission") as Loan Documentation Specialist. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.     From approximately November 2019 to January 2022, I worked at Suncrest Bank ("Suncrest") as a Operations Specialist in its Notes Department. Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as a Loan Servicing Specialist.

3.     During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

4.     Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest or CBB policy or procedure that prohibited customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from either Suncrest or CBB.

5.     I am not aware of any bank policy or procedure at either Suncrest or CBB that prohibits or prevents these third-party vendors from disclosing to other third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on behalf of a CBB or Suncrest customer.

LARSON
LOS ANGELES

Docusign Envelope ID: 745E60F1-2EB5-4A24-8CB9-4A18AACDD115

6.      In the course of my employment at Suncrest and CBB, I never personally observed or asked customers to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require customers to execute confidentiality or non-disclosure agreements. I have also never personally observed or asked third-party vendors to execute non-disclosure or confidentiality agreements with Suncrest or CBB.  I am also not aware of any policies or procedures at CBB or Suncrest that require third-party vendors to execute non-disclosure or confidentiality agreements.

7.      During the course of my employment with Suncrest, CBB, and Mission, I reviewed and dealt with escrow agreements. I understand that escrow agreements contain information that can be obtained directly from the customer. I am not aware of any policies or procedures at Suncrest that prohibited the customer from sharing escrow agreements with third parties.

8.      I understand that CBB and Suncrest customers own their loan billing statements, deposit statements, and account statements issued by their respective bank. I am not aware of any agreement, policy, or procedures that dictates that CBB or Suncrest customers do not own their loan billing statements, deposit statements, and account statements. It is my understanding and experience that customers at both Suncrest and CBB were free to share their banking and financial information—including their bank statements—with whomever they choose, and frequently did so.

9.      It is my understanding and experience that CBB and Suncrest customers had knowledge of loan interest rates, amounts, and structures offered by CBB and Suncrest Bank, respectively, and could freely share that information with another bank.

10.      I resigned from CBB effective on or around April 8, 2022, and began working at Mission on April 18, 2022. I left CBB primarily because of the significant increase in health insurance costs after the merger. Health insurance at

LARSON
LOS ANGELES

3

DECLARATION OF VIRGINIA HOPPER IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 745E60F1-2EB5-4A24-8CB9-4A18AACDD115

CBB was almost double the cost of health insurance at Suncrest. Accordingly, my first paycheck at CBB was basically cut in half. As soon as that happened, I informed my supervisor at the time that I could not afford to continue working at CBB. In addition to this, I was also concerned about the confusion and uncertainty that followed CBB's acquisition of Suncrest. Despite transitioning systems at the Suncrest Visalia branch to CBB's systems, CBB did not train me or the rest of the Suncrest team how to use them. For weeks, we were not even provided access to CBB's systems. I had very little work or direction from CBB management during this time. Many of us at the Visalia branch felt isolated and that CBB's management did not support us.

11. I never provided Mission with any of the agreements or contracts that I executed with CBB or Suncrest, nor did I provide Mission any information about the provisions in those agreements or contracts. I also never disclosed to anyone at Mission the contents of the CBB Associate Handbook and Employment Agreement Concerning Confidential Information and Non-Solicitation of Employees and Customers that I signed as part of my employment with CBB.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19.00 day of July, 2024, at Tulare, California.



_____
Virginia Hopper

DECLARATION OF VIRGINIA HOPPER IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT K

Docusign Envelope ID: 84081DD2-DA65-42B9-8299-9B89B59A240D

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>        Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF ERICKA MELO IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:        August 30, 2024<br>Time:        1:30 p.m.<br>Courtroom:  6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:        November 12, 2024 |

LARSON
LOS ANGELES

1

DECLARATION OF ERICKA MELO IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 84081DD2-DA65-42B9-8299-9B89B59A240D

## DECLARATION OF ERICKA MELO

I, Ericka Melo, declare as follows:

1.      I am presently employed by Mission Bank ("Mission") as Loan Documentation Specialist II. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.      From approximately April 2017 to January 2022, I worked at Suncrest Bank ("Suncrest") as a Loan Documentation Specialist. Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as Loan Documentation Specialist.

3.      During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

4.      Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest or CBB policy or procedure that prohibited customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from either Suncrest or CBB.

5.      I am not aware of any bank policy or procedure at either Suncrest or CBB that prohibits or prevents these third-party vendors from disclosing to other third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on behalf of a CBB or Suncrest customer.

2

LARSON
LOS ANGELES

DECLARATION OF ERICKA MELO IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 84081DD2-DA65-42B9-8299-9B89B59A240D

6.      In the course of my employment at Suncrest and CBB, I never personally observed or asked customers to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require customers to execute confidentiality or non-disclosure agreements. I have also never personally observed or asked third-party vendors to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require third-party vendors to execute non-disclosure or confidentiality agreements.

7.      During the course of my employment with Suncrest, CBB, and Mission, I reviewed and dealt with escrow agreements. I understand that escrow agreements contain information that can be obtained directly from the customer. I am not aware of any policies or procedures at Suncrest that prohibited the customer from sharing escrow agreements with third parties.

8.      I understand that CBB and Suncrest customers own their loan billing statements, deposit statements, and account statements issued by their respective bank. I am not aware of any agreement, policy, or procedures that dictates that CBB or Suncrest customers do not own their loan billing statements, deposit statements, and account statements. It is my understanding and experience that customers at both Suncrest and CBB were free to share their banking and financial information—including their bank statements—with whomever they choose, and frequently did so.

9.      It is my understanding and experience that CBB and Suncrest customers had knowledge of loan interest rates, amounts, and structures offered by CBB and Suncrest Bank, respectively, and could freely share that information with another bank.

10.     I resigned from CBB in or around March 2022, and began working at Mission on April 18, 2022. I left CBB because the cost of my health insurance significantly increased as a result of the transition from Suncrest to CBB. My

3

LARSON
LOS ANGELES

DECLARATION OF ERICKA MELO IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 84081DD2-DA65-42B9-8299-9B89B59A240D

paycheck was greatly reduced. I also did not appreciate the way that CBB handled the merger. For months after the merger became effective, the Suncrest team members at the Visalia branch were given no formal training concerning CBB's systems and processes. To make matters worse, after CBB took over, CBB management did not allow me and my department to process loan documents at the Visalia branch—CBB employees handled those responsibilities. As a result, for weeks after the merger many of us were left with very little work, guidance, or instruction from CBB. I became increasingly worried about my job security.

11.    I never provided Mission with any of the agreements or contracts that I executed with CBB or Suncrest, nor did I provide Mission any information about the provisions in those agreements or contracts. I also never disclosed to anyone at Mission the contents of the CBB Associate Handbook and Employment Agreement Concerning Confidential Information and Non-Solicitation of Employees and Customers that I signed as part of my employment with CBB.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17.00 day of July, 2024, at ____Visalia____, California.



_____

Erick Melo

DECLARATION OF ERICKA MELO IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT L

Docusign Envelope ID: D5CB3CCE-3CEB-4FBF-B035-7A21C96F3DEF

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MISSION BANK, a California corporation and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No. 5:22-cv-01473-FLA-SP <br><br> Hon. Fernando L. Aenlle-Rocha <br><br> **DECLARATION OF PATRICIA PALACIOS IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** <br><br> *[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]* <br><br> Date:        August 30, 2024 <br> Time:        1:30 p.m. <br> Courtroom:  6B <br><br> Complaint Filed: August 19, 2022 <br> Trial Date:        November 12, 2024 |

1

Docusign Envelope ID: D5CB3CCE-3CEB-4FBF-B035-7A21C96F3DEF

## DECLARATION OF PATRICIA PALACIOS

I, Patricia Palacios, declare as follows:

1.      I am presently employed by Mission Bank ("Mission") as a Note Operations Specialist II. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.      From May 2018 to May 2021, I worked at Suncrest Bank ("Suncrest") as a Customer Service Assistant Manager in its Loan Department. I retired from Suncrest in May 2021.

3.      During my employment at Suncrest, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

4.      Suncrest utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest policy or procedure that prohibited Suncrest customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from Suncrest.

5.       I am not aware of any bank policy or procedure at Suncrest that prohibits or prevents these third-party vendors from disclosing to other third-parties any reports that a vendor prepared on behalf of Suncrest, or on behalf of a Suncrest customer.

6.      In the course of my employment at Suncrest, I never personally

2

LARSON
LOS ANGELES

DECLARATION OF PATRICIA PALACIOS IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: D5CB3CCE-3CEB-4FBF-B035-7A21C96F3DEF

observed or asked customers to execute non-disclosure or confidentiality agreements with Suncrest. I am also not aware of any policies or procedures at CBB or Suncrest that require customers to execute confidentiality or non-disclosure agreements. I have also never personally observed or asked third-party vendors to execute non-disclosure or confidentiality agreements with Suncrest. I am also not aware of any policies or procedures at Suncrest that require third-party vendors to execute non-disclosure or confidentiality agreements.

7.     During the course of my employment with Suncrest and Mission, I reviewed and dealt with escrow agreements. I understand that escrow agreements contain information that can be obtained directly from the customer. I am not aware of any policies or procedures at Suncrest that prohibited the customer from sharing escrow agreements with third parties.

8.     I understand that Suncrest customers own their loan billing statements, deposit statements, and account statements issued by their respective bank. I am not aware of any agreement, policy, or procedures that dictates that Suncrest customers do not own their loan billing statements, deposit statements, and account statements. It is my understanding and experience that customers at Suncrest were free to share their banking and financial information—including their bank statements—with whomever they choose, and frequently did so.

9.     It is my understanding and experience that Suncrest customers had knowledge of loan interest rates, amounts, and structures offered by Suncrest Bank, and could freely share that information with another bank.

10.    In or around the summer of 2021, an announcement was made that Suncrest would be merging with Citizens Business Bank ("CBB"). After the announcement, I was informed that CBB did not intend to offer me employment after the merger. As a result, I decided to retire in or around May of 2021.

11.    In or around April 2022, I was put in touch with Christine Rice at Mission and told that the bank was in need of a part-time employee in its Notes

3

LARSON
LOS ANGELES

DECLARATION OF PATRICIA PALACIOS IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: D5CB3CCE-3CEB-4FBF-B035-7A21C96F3DEF

1  Department. I ultimately decided to return to work and, on or around April 13, 2022,

2  began my employment with Mission as a part-time Intern Specialist within its Notes

3  Department.

4       12.    I never provided Mission with any of the agreements or contracts that I

5  executed with CBB or Suncrest, nor did I provide Mission any information about the

6  provisions in those agreements or contracts. I also never disclosed to anyone at

7  Mission the contents of the CBB Associate Handbook and Employment Agreement

8  Concerning Confidential Information and Non-Solicitation of Employees and

9  Customers that I signed as part of my employment with CBB.

10

11       I declare under penalty of perjury under the laws of the United States of

12  America that the foregoing is true and correct.

13       Executed on this ___240.00___ day of July, 2024, at _____Tulare Ca_____ [city, state].

14

15  Patricia Palacios

16

17

18

19

20

21

22

23

24

25

26

27

28

LARSON
LOS ANGELES

4

DECLARATION OF PATRICIA PALACIOS IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT M

Docusign Envelope ID: 3B33D6CC-6FB6-4444-9C0F-8518C937B2A3

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Tyler J. Franklin (SBN 324281)
*tfranklin@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF DIANIS PIMENTEL IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion; Statement of Unconverted Facts and Conclusions of Law; Declaration of Catherine S. Owens; [Proposed] Order]*<br><br>Date:      August 30, 2024<br>Time:      1:30 p.m.<br>Courtroom:  6B<br><br>Complaint Filed: August 19, 2022<br>Trial Date:      November 12, 2024 |

LARSON
LOS ANGELES

1

DECLARATION OF DIANIS PIMENTEL IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 3B33D6CC-6FB6-4444-9C0F-8518C937B2A3

## DECLARATION OF DIANIS PIMENTEL

I, Dianis Pimentel, declare as follows:

1.       I was employed by Mission Bank ("Mission") from approximately March 2022 to March 2023. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendant Mission's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2.       From approximately July 2018 to January 2022, I worked at Suncrest Bank ("Suncrest") as a Business Development Specialist, Cash Management Manager, and Senior Relationship Manager for Cash Management Solutions. Following Suncrest's merger with Citizens Business Bank ("CBB") in January 2022, I continued to work at CBB as Vice President Relationship Manager.

3.       During my employment at Suncrest and CBB, I was never instructed by anyone to direct or require customers to maintain the confidentiality of documents or information they received from Suncrest or CBB (e.g., bank statements, appraisal reports, title reports, environmental reports, questionnaires, loan documents, etc.) or provided to Suncrest or CBB (e.g., customer financial statements, tax returns, etc.). I am not aware of any bank policy or procedure at Suncrest or CBB that prohibits or prevents customers from disclosing their banking or financial information with competitor banks.

4.       Both Suncrest and CBB utilized third-party vendors to prepare the following types of reports: appraisal reports, preliminary title reports, and environmental reports. I am not aware of any Suncrest or CBB policy or procedure that prohibited customers from requesting copies of appraisal reports, preliminary title reports, or environmental reports directly from Suncrest or CBB.

5.       I am not aware of any bank policy or procedure at either Suncrest or CBB that prohibits or prevents these third-party vendors from disclosing to other third-parties any reports that a vendor prepared on behalf of CBB or Suncrest, or on

2

LARSON
LOS ANGELES

Docusign Envelope ID: 3B33D6CC-6FB6-4444-9C0F-8518C937B2A3

behalf of a CBB or Suncrest customer.

6.   In the course of my employment at Suncrest and CBB, I never personally observed or asked customers to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require customers to execute confidentiality or non-disclosure agreements. I have also never personally observed or asked third-party vendors to execute non-disclosure or confidentiality agreements with Suncrest or CBB. I am also not aware of any policies or procedures at CBB or Suncrest that require third-party vendors to execute non-disclosure or confidentiality agreements.

7.   During the course of my employment with Suncrest, CBB, and Mission, I did not review or deal with escrow agreements.

8.   I understand that CBB and Suncrest customers own their loan billing statements, deposit statements, and account statements issued by their respective bank. I am not aware of any agreement, policy, or procedures that dictates that CBB or Suncrest customers do not own their loan billing statements, deposit statements, and account statements. It is my understanding and experience that customers at both Suncrest and CBB were free to share their banking and financial information—including their bank statements—with whomever they choose, and frequently did so.

9.   It is my understanding and experience that CBB and Suncrest customers had knowledge of loan interest rates, amounts, and structures offered by CBB and Suncrest Bank, respectively, and could freely share that information with another bank.

10.   I resigned from CBB on or around March 2022. I left CBB because I did not feel that it was a good fit for me or my customers. I wanted to work at a community bank and CBB did not offer that to me.

11.   On or around March 16, 2022, I started my employment with Mission. I never provided Mission with any of the agreements or contracts that I executed

DECLARATION OF DIANIS PIMENTEL IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Docusign Envelope ID: 3B33D6CC-6FB6-4444-9C0F-8518C937B2A3

1  with CBB or Suncrest, nor did I provide Mission any information about the

2  provisions in those agreements or contracts. I also never disclosed to anyone at

3  Mission the contents of the CBB Associate Handbook and Employment Agreement

4  Concerning Confidential Information and Non-Solicitation of Employees and

5  Customers that I signed as part of my employment with CBB.

6       12.    I left Mission in or around March 2023.

7

8       I declare under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and correct.

10       Executed on this 22.00 day of July, 2024, at ___Visalia___, California.

12  Dianis Pimentel

DECLARATION OF DIANIS PIMENTEL IN SUPPORT OF DEFENDANT MISSION BANK'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION