# EXHIBIT 103



701 N Haven Avenue
Ontario, CA 91764
909.980.4030
www.cbbank.com

March 25, 2022

Mr. Dustin Della
Regional President
Mission Bank
1933 North Rose Street
Porterville, CA 93257
Email: dustin.della@yahoo.com

Mr. A.J. Antongiovanni
President and CEO
Mission Bank
1301 17th Street
Bakersfield, CA 93301
Email: antona@missionbank.com

Mr. Bryan Easterly
Chief Banking Officer
Mission Bank
1500 Palma Drive, Suite 112
Ventura, CA 93003
easterlyb@missionbank.com

RE:   Serious Alleged Violations Committed by Dustin Della against Citizens Business Bank ("Citizens")

Dear Messrs. Della, Antongiovanni and Easterly:

I am writing to inform you that Dustin Della, who was employed at Citizens until recently as a Senior Vice President and Center Manager in Porterville, California, is alleged to have committed at least three serious violations of California law and his contractual obligations to Citizens, as summarized below. We understand Mr. Della is presently employed as a Regional President at Mission Bank. We wish to advise you that we intend to take legal action against Mr. Della to pursue claims by Citizens for theft of trade secrets, material breaches of his contractual obligations to Citizens, and tortious interference with prospective economic relations, unless such alleged violations are resolved to our prompt satisfaction. Furthermore, we wish to advise you that Citizens reserves all rights in this matter, and that we will hold Mission Bank responsible for any attempts to take advantage of the violations allegedly committed by Mr. Della or to utilize any of the proprietary and confidential information allegedly stolen from Citizens by Mr. Della, including through contacting affected customers of Citizens or attempting to interfere with business relationships established by Citizens or its predecessor bank with such customers.

By way of background, as you are undoubtedly aware, Mr. Della was employed by Suncrest Bank ("Suncrest") in the position of Market President for Porterville and Visalia, at the time, on January 7, 2022, when Suncrest was acquired by Citizens. Prior to this acquisition, on September 28, 2022, Mr. Della willingly accepted and signed an offer letter from Citizens, providing him with a retention bonus of

MB00001

Messrs. Della, Antongiovanni and Easterly
March 24, 2022
Page 2

$50,000, a grant of 5,000 shares of restricted stock of CVB Financial Corp., the public holding company for Citizens, and other specified benefits, including reimbursement of his country club dues.

As part and parcel of his employment with Citizens, Mr. Della agreed to comply with Citizens' Associate Handbook ("Handbook").  The key provisions of the Handbook include the requirements that each employee and manager of Citizens (i) maintains strict confidentiality regarding Citizens' customers and financial and business information and (ii) agrees not to utilize such confidential information in a manner adverse to Citizens' interests. Mr. Della executed an electronic Acknowledgment Agreement regarding the Handbook on January 10, 2022 (copy enclosed).  In addition, also on January 10, 2022, Mr. Della signed and agreed to comply with Citizens' "Employee Agreement Concerning Confidential Information and Non-Solicitation of Employees and Customers" (copy enclosed).  Key parts of this agreement include the requirements that each employee and manager of Citizens (i) maintains strict confidentiality regarding Citizens' customers and financial and business information and (ii) agrees not to solicit customers or employees of Citizens for one year after the termination of employment.  Both of these agreements continue to be fully binding on Mr. Della and were obtained as specific consideration for Citizens' offer to continue to employ him and to provide the valuable benefits enumerated above.

Notwithstanding these commitments, Mr. Della remained in the employ of Citizens for only a brief period, from January 8 to March 14, 2022.  During this brief period of employment at Citizens, while he was evidently engaged in discussions about, or committed to, changing his employment to Mission Bank, we believe Mr. Della committed at least three (and possibly more) sets of overt acts or omissions that in turn may constitute serious breaches of California law and professional ethics.

First, on February 7, 2022, Mr. Della asked Annie Buchanan, Citizens' Credit Support Officer in Porterville, to update a proprietary Excel spreadsheet containing an extensive list of 665 of Suncrest Bank's Paycheck Protection Program ("PPP") loan customers, in order to specifically add the name of the primary contact at each PPP customer, as well as each contact's telephone number and email address, and then to send the spreadsheet via email back to Mr. Della.  This is evidenced not only by testimony from Ms. Buchanan but also by explicit emails back and forth between Mr. Della and Ms. Buchanan.

Second, on February 11, 2022, Mr. Della asked Katrina Puerner, Citizens' Vice President and Service Manager in Porterville, to provide him with a proprietary "Promotional Rate Report," also in the form of an Excel spreadsheet, which contained the names of 40 Suncrest customers along with their deposit account categories, deposit account balances, and present and past rates of interest paid on such account balances. Again, this sequence of events has been directly confirmed with Ms. Puerner.

Third, we have substantial evidence that Mr. Della and his team of close colleagues who joined him in leaving Citizens for Mission Bank either took actions or failed to take actions that could foreseeably sabotage Citizens' relationships with several important Suncrest Bank customers, including Pepita Real Estate LP, YZAK Investments and Stor-it Palmdale. Specifically, we believe that Mr. Della and his departing colleagues either intentionally or recklessly ignored or violated standard procedures that any reasonably knowledgeable lender would follow to ensure that pending loan requests for each of these customers would be processed and consummated within the timeframes needed to meet relevant transaction or escrow deadlines. All these acts or omissions on the part of Mr. Della and his team occurred during the period from early February 2022 to the date of Mr. Della's and his team's departure

MB00002

Messrs. Della, Antongiovanni and Easterly
March 24, 2022
Page 3

from Citizens in mid-March 2022, at a time when Mr. Della and team were certainly well along in discussing or were in fact fully committed to switching their employment from Citizens to Mission Bank.

One striking example involved the final processing of a significant loan at Citizens designed to finance a series of Section 1031 exchange transactions for Pepita Real Estate LP. Mr. Della was the relationship manager responsible for the customer's loan application, and he and his team were well aware this was a time-sensitive matter due to well-known statutory deadlines for consummating Section 1031 exchanges. Notably, prior to their departure, Mr. Della and his team cancelled pending requests by Suncrest/Citizens and the involved customers for title insurance on the properties to be financed, thereby putting the entire series of transactions in jeopardy. While the terms of the loan had changed in certain respects since the initial order for title insurance was placed, Mr. Della and his team were closely involved in the issuance of a revised letter of intent on the loan by Citizens, and yet he and his team deliberately or recklessly cancelled and then failed to re-initiate the order for title insurance, which was a step any experienced lender would have known to take, nor did he and his team inform or instruct anyone else at Citizens to re-initiate the order for title insurance. The office manager at Chicago Title as well as several senior credit officers at Citizens have objectively confirmed this chain of events.

All three of the foregoing sets of actions or omissions were taken or directed by Mr. Della in the weeks immediately preceding his departure from Citizens to Mission Bank, all such actions or omissions took place while he was employed and being compensated by Citizens to further the business interests of Citizens, and the circumstantial evidence heavily indicates that all such actions or omissions were undertaken in contemplation by Mr. Della of his impending job change. As noted, Citizens already possesses solid evidence of each incident recounted above, and we believe evidence regarding the specific timelines and pre-planned sequences of events would be further bolstered via discovery against Mr. Della, the departing team and Mission Bank in connection with any necessary litigation.

First, to state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, a plaintiff must allege two elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret. We believe both federal and California law clearly protect as trade secrets the two types of information at issue in this case, which consist of (1) detailed customer contact and business information which was developed by Suncrest over a period of years, and (2) information about deposit and banking products provided by Suncrest to a separate set of customers, along with the specific pricing and other terms upon which such products have been offered. Obviously, Citizens is the legal successor in interest to Suncrest via the acquisition that closed on January 7, 2022.

Under California law, "'trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or processes that (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). In evaluating this definition, "numerous courts have concluded customer lists can qualify for trade secret protection." The Retirement Group v. Galante, 176 Cal. App. 4th 1226, 1238 (2009); see Readylink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1020 (2005) ("the nature and character of the subject customer information, i.e., billing rates, key contacts, specialized requirements and markup rates, is sophisticated information and irrefutably of commercial value and not readily ascertainable to other competitors."); see also Brocade Comm. Sys. Inc. v. A10 Networks, Inc., 873 F. Supp. 2d 1192, 1214 (N.D.Cal. 2012) ("customer-related

3

Messrs. Della, Antongiovanni and Easterly
March 24, 2022
Page 4

information including customer lists and contact information, pricing guidelines, historical purchasing information, and customers' business needs/preferences … is routinely given trade secret protection."); Courtesy Temporary Service, Inc. v. Camacho 222 Cal. App. 3d 1278, 1287 (1990) (holding customer list of temporary employment agency, containing contacts, information about customers, and billing rates, was a trade secret).  Essentially, "where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market." Galante, 176 Cal. App. 4th at 1238 (quoting Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1521 (1997)).

Second, California courts have affirmed the principle that non-solicit agreements covering customers and employees developed by an employer, based on work performed for and investments made by such employer over an extended period of time, are entirely enforceable, and that such non-solicit agreements are fundamentally different from a non-compete agreement which could restrict an employee from earning a living in his chosen occupation. We would remind Mr. Della and Mission Bank that the two agreements in force between Mr. Della and Citizens are clear and properly tailored in scope, and were obtained voluntarily and in return for valuable consideration, including a retention bonus, significant shares of restricted stock of CVB Financial Corp., and Mr. Della's acceptance of continued employment with Citizens. "[C]ourts have repeatedly held a former employee may be barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business if the employee is utilizing trade secret information to solicit those customers." Galante, 176 Cal. App. 4th at 1237. This acts as an exception to the general prohibition against non-compete agreements. See also Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 942 (2008).

Third, we believe that Mr. Della may be liable for his and his team's potentially tortious actions in what we allege to be a series of attempts to sabotage Citizens' ability to consummate real estate loans for several important customers of Suncrest, including the cancellation of a critical order for title insurance with Chicago Title for Pepita Real Estate LP, as recounted above. In California, to establish the tort of interference with prospective economic relations, a plaintiff must show that: (1) plaintiff and a third party had an economic relation; (2) the relation between plaintiff and the third party would likely have led to future benefits; (3) defendant knew of the relation; (4) defendant intentionally acted wrongfully in order to interfere with the relation; (5) defendant's actions actually interfered with the relation; and (6) defendant's actions caused plaintiff economic harm. We believe that each of these required elements would be satisfied several times over in this case, since Mr. Della is an experienced commercial lender and would have been fully aware of the potentially destructive effects of his actions and omissions on the pending and time-sensitive loan requests by the customers named above.

We trust that you understand Citizens will not hesitate to enforce its statutory and contractual rights in this situation, and to take appropriate action to protect the hard-earned proprietary information and customer relationships that Citizens paid significant consideration to acquire from Suncrest.  If Mr. Della and Mission Bank wish to avoid litigation, the following steps, at a minimum, will be required: (1) Mr. Della must return all purloined information and customer lists to Citizens, represent that no other customer or proprietary information of any type has been taken or copied from Citizens, pledge that no copies of any Citizens customer or proprietary information in any medium have been retained, and promise to scrupulously comply with his ongoing contractual obligations to Citizens, (2) Mission Bank will need to represent that it has not utilized and will not utilize any proprietary, confidential or trade secret information belonging to Citizens, and will need to agree to a "cooling off period" whereby none

MB00004

Messrs. Della, Antongiovanni and Easterly
March 24, 2022
Page 5

of the customers on either of the purloined lists allegedly taken by Mr. Della will be solicited by Mission Bank, and (3) Mr. Della will need to acknowledge that Citizens and the three customers named above are reserving all rights in the event any damages ensue from Mr. Della's and his team's either deliberate or reckless acts and omissions regarding such customers' pending loan requests. Please have your attorney(s) contact me promptly to discuss this.

We surely understand that Citizens and Mission Bank have periodically hired individual employees and managers from each other's organizations, and that such job changes can happen in the ordinary course of business. However, it is definitely NOT in the ordinary course of business for a senior manager who is employed at one of our respective banks to request colleagues to prepare and transmit Excel spreadsheets listing (i) proprietary and confidential PPP loan and contact information for 665 customers and (ii) proprietary and confidential deposit account balance information and interest earning rates for an additional 40 customers, with the ostensible intention to take and utilize such information at his new bank. And it is definitely NOT in the ordinary course of business for a senior manager and his team to take actions or to fail to take actions that could foreseeably result in sabotaging crucial and time-sensitive customer transactions, as part of what would appear to be a misguided effort to damage the relationships between those customers and the bank where he and the team were then employed.

As noted, Citizens reserve all rights in connection with this matter, and we would appreciate your prompt attention to this important and disturbing set of incidents and issues.

Sincerely,

*R Wohl*

Richard H. Wohl
Executive Vice President and General Counsel

Cc:   Ted Dondanville, Executive Vice President and Banking Division Manager
      Michael Stain, Senior Vice President and Regional Manager
      Joyce Kwon, Senior Vice President and Director of Human Resources

Enclosures:
   2021/2022 Associate Handbook Acknowledgment Agreement
   Employee Agreement Concerning Confidential Information and Non-Solicitation of Employees and Customers dated January 10, 2022

MB00005



## 2021 / 2022 ASSOCIATE HANDBOOK ACKNOWLEDGMENT AGREEMENT

**PLEASE READ THIS ACKNOWLEDGMENT AND THE HANDBOOK FOR ASSOCIATES WHICH IS ALSO POSTED ON CONNECT THAT INCLUDES THE COMPANY'S CODE OF PERSONAL AND BUSINESS CONDUCT AND ETHICS AND THE BANK'S WHISTLE-BLOWER POLICY.**

I have read and understand the Handbook for Associates, I understand the standards and policies contained in the Handbook and Code. I also have read and understand that there may be additional Company policies and procedures as well as federal and state laws that I must comply with and stay abreast of that are applicable to my job. I further agree to comply with the Handbook and Code and be in compliance with all policies and procedures of the Bank and comply with all applicable federal and state laws and regulations.

If I have questions concerning the meaning or application of the Handbook and Code, any other Bank policies, or the legal and regulatory compliance requirements applicable to my job, I know I can consult my manager or the Human Resources Department.

This Handbook replaces all earlier Handbooks, and supersedes any and all memoranda and oral descriptions of the terms and conditions of my employment.

Notwithstanding any other representations, I understand that all Bank associates are at-will. This means that either the Bank or I am free to end the employment relationship at any time, for any reason, with or without cause and with or without notice. No one, other than the President of the Bank, has the authority to alter this at-will arrangement, to enter into an agreement of employment with an associate for a specified period of time, or to make any agreement with an associate contrary to this at-will policy. Further, any changes to this at-will policy must be in writing and signed by the President of the Bank.

I understand that this Acknowledgment and the Handbook and Code are not intended and shall not be construed as a contract of employment. Other than the Bank's policy of at-will employment, the Bank's right to change my responsibilities, position, title or compensation, and those policies required by law, the Bank reserves the right to change its policies or practices at any time and I acknowledge that such revisions may occur. All such changes will be communicated through written notices (which may be electronic).

Electronically Signed
_____     _____
**Associate Signature**                  **Date Signed**

_____
**Associate Department or Center Name**

Handbook Acknowledgement v 2021-12

MB00006

# Policy Acknowledgement Status Report

| Employee Name | Associate Id | User ID |
|---|---|---|
| Della, Dustin | 208523 | DDELLA@CVBF685 |

| | |
|---|---|
| Total Policies Assigned | 4 |
| Total Completed Policies | 4 |
| Policy Ack Report Date | 2022-03-22 09:57:30 |

| Policy Name | Version | Required | Status | Completed Date |
|---|---|---|---|---|
| Americans with Disabilities Act Policy | 12/19 | Yes | Acknowledged | 2022-01-10 |
| Associate Handbook v 12/2021 | 12/21 | Yes | Acknowledged | 2022-01-10 |
| Harassment, Discrimination and Retaliation Prevention Policy | 10/21 | Yes | Acknowledged | 2022-01-10 |
| Whistle Blower Policy | 11/21 | Yes | Acknowledged | 2022-01-10 |

MB00007

# EMPLOYEE AGREEMENT CONCERNING CONFIDENTIAL INFORMATION AND NON-SOLICITATION OF EMPLOYEES AND CUSTOMERS

This Agreement is entered into by and between ("Employee") and Citizens Business Bank ("Bank") for the purpose of preventing the unauthorized disclosure of Confidential Information (as defined below). Employee and the Bank are each referred to as a "Party" and collectively as the "Parties".

## R E C I T A L S

A. In order for Employee to perform job responsibilities in connection with employment with the Bank, Employee acknowledges that the Bank will need to disclose to Employee or Employee may otherwise learn certain "Confidential Information" (as defined below) that the Bank considers to be private, proprietary, confidential and secret, including information about Bank employees and customers;

B. The Bank is willing to allow Employee to receive and review such Confidential Information only on the terms and subject to the conditions set forth in this Agreement;

C. Whether or not such information is marked as "Confidential", "Confidential Information" shall include any and all information that contains, reflects or is based upon, in whole or in part, information of a secret, confidential or private nature connected with the business or intended businesses of the Bank (or any of its actual or potential strategic partners), operations, products, concepts, plans, designs and trade secrets. Included within the meaning of Confidential Information are matters of a technical nature (including inventions, ideas, plans, methods, techniques, processes, manuals, guidelines, programs, software code, databases, reports, materials and engineering), matters of a business nature (including without limitation Contacts as defined in Section 2 below, names, phone numbers, e-mail addresses, contact information, financial and other information about existing or planned services, contracts, costs, budgets, forecasts, ideas, plans for further or future development or services, and any other information of a similar nature not generally available to the public.

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. **Sole Property of Employer**. Employee agrees that the Confidential Information is the sole and exclusive property of the Bank and that Employee has no ownership or property rights thereto.

2. **Confidential Information Concerning Contacts**. Employee may also be given access to specific Confidential Information regarding the names, contact information, telephone numbers and other information concerning Bank employees and/or customers ("Contacts"). Employee acknowledges, accepts and agrees that the information maintained by the Bank regarding its Contacts is the exclusive, trade secret and valuable Confidential Information of the Bank, and is crucial to the success and future of the Bank's business and will remain so for the duration of this Agreement. Employee hereby agrees to keep confidential all information concerning any and all such Contacts, including their names, addresses, telephone, telex, facsimile numbers, e-mail addresses and/or other pertinent contact and other information

MB00008

disclosed or revealed to Employee concerning those Contacts as well as the names of any principal, officer, director, employee and personnel of any such Contacts.

In addition to constituting Confidential Information subject to the protections of this Agreement, Employee also acknowledges that such information about Contacts may be protected from disclosure by operation of federal or state law and that, in addition to complying with this Agreement, Employee will comply with all legal requirements concerning the use or disclosure of Confidential Information concerning Contacts.

3. **Proper Use of Confidential Information**. Employee shall hold and maintain the Confidential Information in strictest confidence and in trust for the sole and exclusive benefit of the Bank and its business purposes. Employee shall carefully restrict access to the Confidential Information to only other Bank officers, directors, employees, agents or representatives who clearly need such access in perform services to the Bank and its customers.

4. **No-Solicitation of Employees**. Employee agrees that, during employment with the Bank and for a period of one year after termination of employment with the Bank, not to attempt, directly or indirectly, either on Employee's own behalf or on behalf of any other person or entity, to persuade or solicit any person who is an employee of the Bank to terminate such employment. In addition, at no time after Employee leaves the Bank's employment will Employee seek to obtain or misappropriate any of the Bank's trade secrets or other Confidential Information from any current or former Bank employee.

5. **Non-Solicitation of Customers**. Employee agrees that, during employment with the Bank and for a period of one year after termination of employment with the Bank, not to use, directly or indirectly, either on Employee's own behalf or on behalf of any other person or entity, any Confidential Information to attempt to persuade or solicit any customer of the Bank to cease to do business with the Bank, or to reduce the amount of business it has customarily done or contemplates doing with the Bank, or to expand its business with a competitor of the Bank.

6. **Return of Confidential Information**. Upon termination of Employee's employment with the Bank, or at any time upon request by the Bank, Employee shall promptly return to the Bank all Confidential Information, including all notes, memoranda or other materials and records of every kind and in every form or nature which pertain to or contain Confidential Information, and shall retain no copies thereof or of, any notes on, or abstracts of Confidential Information thereafter.

7. **Injunctive Relief**. Employee acknowledges and agrees that the extent of damage to the Bank in the event of a breach by Employee of any of the covenants contained in this Agreement would be difficult or impossible to ascertain, that there may be no adequate remedy at law available to the Bank in the event of such a breach and that such breach would cause irreparable harm to the Bank. Consequently, Employee agrees that, in the event of such breach, the Bank shall be entitled to enforce any or all of the covenants contained in this Agreement by injunctive or other equitable relief, in addition to receiving damages or other relief to which the Bank may be entitled.

8. **Successors and Assigns**. This Agreement and the obligations hereunder shall be binding on Employee and shall inure to the benefit of the assigns and successors of the Bank.

9. **Entire Agreement**. This Agreement contains the entire understanding among the Parties hereto with respect to the subject matter hereof, and except as herein contained supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written. This Agreement may not be modified or amended other than by an agreement in writing signed by each of the Parties.

Dated: _____     _____
                                   Employee's Signature


Dated: _____     _____
                                   Employer's Signature
                                   Joyce Y. Kwon
                                   Senior Vice President,
                                   Director of Human Resources

 verifies the Electronic Signature of this document

### SIGNATURE

| | |
|---|---|
| Signer Name: | Dustin Della |
| User ID: | DDella@CVBF685 |
| Date Electronically Signed: | Jan 10, 2022 04:45 PM EST |
| File Name: | employee agreement concerning confidential information non-solicitation-adpdms-248.pdf |
| Display Name: | Employee Agreement Concerning Confidential Information Non-Solicitation |

MB00011