# EXHIBIT 107

# K&L GATES

August 5, 2022

VIA EMAIL: jphillips@larsonllp.com

Jonathan E. Phillips
Larson LLP
555 South Flower Street, Suite 4400
Los Angeles, CA 90071

Christina N. Goodrich
Managing Partner, Los Angeles Office
christina.goodrich@klgates.com

T +1 310 552 5547
F +1 310 552 5001

Re:   Citizens Business Bank v. Mission Bank, et al.

Dear Jonathan:

While we appreciate your latest correspondence regarding this dispute, due to your clients' wholly inadequate response to my client's concerns, my client had no choice but to draft the enclosed significant 50-page Complaint, which your clients will be forced to defend against.[1] The factual assertions in your June 7, 2022, letter reflect that your clients are not being forthcoming regarding their ongoing and egregious conduct. Thus, Citizens Business Bank ("CBB") hereby provides Mission Bank ("Mission") and Dustin Della ("Della") (collectively, "Defendants") with this final opportunity to resolve this dispute, before it is forced to file the enclosed Complaint against Mission and initiate arbitration against Della.[2]

To put a finer point on it, your clients have made numerous overt falsehoods in their recitation of events described in your June 7, 2022, letter. I have highlighted a few of those falsehoods below:

1.   **Pepita Properties/Pepita Real Estate LP**: Your letter suggests that the escrow was cancelled because of the departure of the original title officer. This is false. First, it defies logic to suggest that the mere departure of an employee automatically caused the cancellation of the escrow on this loan. If that were true, the title company would not be able to function and would be in serious breach of its duties to banks and customers. Second, CBB is not aware of any circumstances relating to this loan that would have caused the automatic cancellation of escrow. Indeed, the only way that it could be cancelled is at the direction of CBB. No one at CBB was authorized to cancel escrow on this loan. Nonetheless, CBB believes that Della did cancel the escrow as an act of sabotage and to better position himself to take over this loan

---

[1] Please treat this letter and exhibits to the Complaint as "Confidential" as if disclosed under a standard federal court protective order (do not publicly disclose/publish, share only with outside counsel and in-house counsel) while we negotiate such an order because they may contain confidential information. If you do not agree to this term, please let me know immediately.

[2] Please let us know immediately if Della is willing to waive the arbitration agreement, such that CBB can assert its claims against Mission and Della in the same federal court Complaint.

K&L GATES LLP
10100 SANTA MONICA BOULEVARD  EIGHTH FLOOR  LOS ANGELES  CA 90067
T +1 310 552 5000  F +1 310 552 5001  klgates.com

CONFIDENTIAL

MB00103

once he joined Mission. Third, Della was aware of changes to the loan structuring in February 2022 (the loan was initially requested in October 2021), but did not take any action between February 2022 and his resignation on March 14, 2022. This is further evidence of sabotage. Finally, Della was aware that the loan had to close on March 23, 2022, shortly after his resignation and that if it did not close, the client would lose $250,000 in earnest money. Nonetheless, Della did nothing to attempt to close the loan during the weeks before his resignation, which put CBB and its client in a crisis position, which required herculean efforts to close the deal after Della left CBB, by the March 23 close date. In sum, your clients' story regarding this loan is inaccurate and defies logic.

2. **Dakhil Commercial Property LP**: This is another example of your clients' inaccurate recitation of the facts. First, CBB never told Della or the client that it would not renew this line of credit. Second, this line of credit was extended twice by Della in an effort to align the timing of the new line of credit to after he left CBB for Mission, as Della had plenty of support on his team to close accounts in January and thereafter. Third, it is unfathomable that Della would work with Mission to obtain an appraisal for this line of credit while he was still working for CBB and while Dakhil was still a client of CBB. Fourth, CBB had been waiting on completed application materials from Dakhil for quite a while and did not receive it until mid-April 2022, just a few days before it got a demand for payoff information so that Mission could process the line of credit. Finally, if CBB did not intend to renew this line of credit, as your clients' suggest, then why was CBB surprised to learn that Mission had ordered an appraisal for this loan, and why was it still waiting on completed loan documents in mid-April 2022? Simply stated—if CBB did not intend to renew this line of credit, it would not be raising this issue now. The fact that CBB had raised this issue, was shocked to learn that Mission and Della worked on this line of credit while Della was still working at CBB, and was waiting for completed loan documents belies your clients' story.

3. **Promotional Rate Report & PPP Loan Report**: This is yet another example of your clients' inaccurate recitation of the facts. First, no one at CBB requested that Della obtain the promotional rate report or PPP loan report. Second, Della admits that he took no action with respect to these reports—he did not contact anyone on the reports as he contends he planned to do. Third, the reports included numerous CBB clients that were out of Della's assigned geographic area of responsibility. Thus, there would have been no legitimate business reason for Della to contact clients who were working with another person at CBB. In fact, doing so would have been highly irregular and inappropriate. Fourth, the sheer volume of data in the PPP loan report precludes viable use of such data for one-on-one contact by Della—it is just not believable that he intended to contact over 600 CBB customers, many of which were outside his assigned geographic area of responsibility, particularly without first contacting the current CBB relationship manager and working cooperatively to reach out to the client together.

The foregoing are just a few examples of why CBB continues to have grave concerns about your clients' past and ongoing conduct. Frankly, if your clients' explanations for their conduct were even facially plausible, there would be more to discuss.

Additionally, during its investigation into your clients' conduct, CBB has uncovered additional evidence of significant wrongdoing that is, frankly, shocking. As your clients know, Della signed at least three agreements with CBB contractually obligating him not to misuse CBB's confidential information. The conduct described above, as well as below, clearly violates those obligations:

August 5, 2022

MB00104

1. **Video Surveillance of Della Absconding with CBB Property**: CBB's video surveillance of the branch at which Della worked shows that he engaged in shocking and egregious conduct on the last day of his employment. Specifically, on March 14, 2022, CBB's security video shows that Della arrived early to the CBB branch at which he worked (*before the branch opened*). He parked a white pickup truck next to a *back entrance* of the bank. The video shows Della *looked around the outside of the bank* before unlocking the back entrance door and entering the bank. He then proceeded to take what appears to be CBB property, including multiple files, without authorization from the bank. We understand that Della kept some client files in his office. The video shows Della enter his office, *collect multiple files, promptly exit the building, and place the files into his pickup truck* before reentering the building. Della then entered his office again, *grabbed multiple items and brought them outside, placing them into his white pickup truck*. On one of the trips back into his office, Della appears to sort through files to identify specific documents and information to take with him. On a separate trip into his office, Della is seen *taking an item and placing it into his pocket*, apparently to obscure it from CBB's cameras before placing it into the white pickup. Della repeated the above-described process of taking items from his office and placing them into his truck a total of *at least seven times* over the course of approximately ten minutes. *He did this without the knowledge or consent of anyone at CBB*. Your clients must immediately return all of this property to CBB.

2. **Solicitation and Hiring of Nine CBB Employees and Unprompted Solicitation of Another CBB Employee**: As set forth in the attached Complaint, based on (among other things) the timing and circumstances of their departure, Mission and Della conspired to solicit nine CBB employees, who left CBB to join Della at Mission. Mission (in conspiracy with Della) also sent an unsolicited offer letter to another CBB employee, who never applied for a job at Mission. CBB believes that Mission and Della relied on CBB's confidential, proprietary, and trade secret data to identify CBB's valuable employees and solicit them—all in clear violation of Della's contractual and other duties to CBB. For example, it was a violation of Della's contractual obligations (1) not to solicit CBB employees to leave CBB while employed at CBB and (2) by using CBB's confidential, proprietary, and trade secret information to solicit such employees after his employment. (*see, e.g.*, Confidentiality Agreement, § 3 (requiring employees to "hold and maintain the Confidential Information in strictest confidence and in trust for the sole and exclusive benefit of the Bank and its business purposes.")) In sum, Mission's and Della's conduct in soliciting these employees was intensely disruptive and damaging, particularly given the unsolicited offer of employment to Ms. Puerner, who never applied for a job at Mission, but who Mission nonetheless decided to try to lure away from CBB without her consent.

3. **Solicitation of at Least a Dozen Other Customers and Interference with CBB Relationships**: As set forth in the attached Complaint, Mission and Della conspired to solicit, and did indeed solicit, at least a dozen of CBB's clients and interfered with those relationships, all in knowing violation of Della's contractual obligations and duties to CBB. Despite CBB repeatedly demanding this conduct cease, it continues unabated.

In total, your clients' conduct has caused CBB damage of at least $9,590,479. CBB will also seek punitive damages, disgorgement, attorneys' fees and costs, and interest. Given that CBB's investigation is

August 5, 2022

still ongoing, its damages are likely much higher as it is continuing to uncover additional wrongdoing and lost clients.

At this point, CBB has lost patience and asked me to prepare the attached federal court Complaint against Mission, to be followed by a demand for arbitration against Della.

Notwithstanding the above, CBB has authorized me to give your clients one final chance to resolve this matter before it files suit. CBB demands that your clients immediately agree to the following, without condition:

1.      Your clients agree that Mission and its employees, including but not limited to Della, will not use CBB's property, including but not limited to its confidential, proprietary, and trade secret information, the promotional rate report, and PPP loan report;

2.      Your clients agree that Mission and its employees, including but not limited to Della, will return all CBB property to CBB, including but not limited to electronic data, physical files, external drives (i.e., thumb drives), and all other CBB property;

2.      Your clients agree to verify that neither Mission nor Della nor any other of Mission's employees currently has any CBB property, including but not limited to confidential, proprietary, and trade secret information, the promotional rate report, and PPP loan report;

3.      Your clients agree that Della (and all other former CBB employees who now work for Mission) will comply with all contractual obligations to CBB, including but not limited to limitations on the ability to solicit CBB's clients using CBB's confidential, proprietary, and trade secret information;

4.      Your clients agree that Mission and its employees, including but not limited to Della, will cease all efforts to interfere with CBB's contracts and prospective business relationships, including but not limited to interfering with Della's contractual obligations to CBB.

5.      Your clients agree to mediate this dispute with the mediation costs to be split equally between CBB and Mission subject to, *inter alia*, the following conditions:

      a.      The parties to the mediation would be Mission, CBB, and Della.

      b.      The parties would agree to a confidentiality agreement to cover the content of the mediation and any information exchanged therewith. The parties agree that Federal Rule of Evidence 408 and the mediation privilege shall apply to the mediation and related conduct.

      c.      The parties would agree that each side would be entitled to conduct three depositions per side in preparation for the mediation, which would be conducted pursuant to the Federal Rules of Civil Procedure, but would not be counted under the Rules against any party as a deposition for purposes of any subsequently-filed case or arbitration proceedings.

4

August 5, 2022

    d.  The parties would agree to conduct third-party forensic analysis on devices and accounts of Mission, Della, and other former CBB employees now at Mission with the costs to be split equally between Mission and CBB. The parties would agree to a protocol to address how the forensic analysis will be conducted, address concerns about confidentiality and disclosure of data discovered during the forensic analysis to CBB, and set forth the methods by with the forensic analyst will search for CBB's property on Mission's, Della's, and other's devices.

    e.  The parties agree to exchange mediation briefs with each other that contain opening offers/demands. The parties would be able to provide a short (5-page) confidential brief solely to the mediator.

    f.  CBB will provide evidence to the mediator in connection with the mediation, which will include but is not limited to video recordings showing Della's conduct on the last day of his work at CBB where he repeatedly enters and exits his office at the CBB branch with what appears to be CBB property.

    g.  The parties agree that each side shall be permitted to make an opening in a joint session with the mediator of no more than thirty minutes per side. After the openings, the parties would separate into different rooms (virtual or in-person) and then meet with the mediator to discuss any open issues and questions from the mediator. The mediator would then prepare a mediator's proposal to be circulated to the parties and address any questions or concerns that the parties may have. The mediator's proposal will specify the damages that he/she/they believes will be found in any litigation by a judge or jury, along with specifying a number for settlement. The parties shall have three (3) business days to respond to the mediator's proposal. All parties must agree to the mediator's proposal in order for the mediator to proceed to finalizing the terms of any proposed settlement. If all parties do not agree to the mediator's proposal, they can nonetheless agree to keep the mediation open to negotiate a settlement through the mediator or directly with each other.

    h.  The parties would agree that no party will file suit against another party until after the mediator declares that the mediation has concluded, in which case CBB can file suit and initiate arbitration immediately.

Please provide me with your clients' responses to this letter by August 12, 2022. If we do not hear from you by that date with agreement to the above-described demands, my clients will be left with no choice but to file their lawsuit against Mission and commence arbitration against Della, along with other former CBB employees who are now Mission employees that have engaged in wrongful conduct including a conspiracy with Mission/Della.

5

August 5, 2022

Nothing contained in this correspondence shall be construed as a waiver of any right, claim, defense, or remedy that CBB may have against Mission Bank, Dustin Della, or any other person or entity, such rights being expressly reserved.

Yours sincerely

*Christina N. Goodrich*

Christina N. Goodrich
Managing Partner, Los Angeles Office

CNG
Enclosure

6

August 5, 2022

MB00108