Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Jonathan E. Phillips (SBN 233965)
jphillips@larsonllp.com
Catherine S. Owens (SBN 307626)
cowens@larsonllp.com
Tyler J. Franklin (SBN 324281)
tfranklin@larsonllp.com
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANT MISSION BANK'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE DANIEL LIMON FROM OFFERING IMPROPER EXPERT TESTIMONY AT TRIAL**<br><br>*[Filed concurrently with Declaration of Catherine S. Owens and [Proposed] Order]*<br><br>Date: October 25, 2024<br>Time: 1:00 p.m.<br>Crtrm.: 6B<br><br>Trial Date: November 12, 2024 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on October 25, 2024 at 1:00 p.m., or on such later date and time as the Court may order, in Courtroom 6B, at 350 West 1st Street, Los Angeles, California 90012, Defendant Mission Bank ("Mission") will and hereby does move the Court for an order *in limine* to preclude Plaintiff Citizens Business Bank's ("CBB") lay witness, Daniel Limon, from offering any expert testimony at trial. This motion is made pursuant to Federal Rules of Civil Procedure 26(a)(2)(B), (D), and 37(c)(1) and Federal Rules of Evidence 701 on the grounds that (1) CBB failed to designate any expert witnesses and (2) lay witnesses are not permitted to provide expert opinions.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the attached declaration of Catherine S. Owens and exhibits, all other papers and records filed in this matter, and any other argument or evidence that may be presented at or in connection with the hearing on this motion.

**STATEMENT OF LOCAL RULE 7-3 COMPLIANCE**

Mission makes this Motion following a meet-and-confer conference of counsel held pursuant to Local Rule 7-3 that took place on September 20, 2024. Mission hereby certifies that it has met and conferred in good faith in an effort to resolve the present dispute without need for judicial intervention.

Dated: September 27, 2024                     LARSON LLP

By: *S G Larson*
Stephen G. Larson
Jonathan E. Phillips
Catherine S. Owens
Tyler J. Franklin
Attorneys for Defendant
MISSION BANK

## I. INTRODUCTION

Plaintiff Citizens Business Bank ("CBB") alleges that Defendant Mission Bank ("Mission") misappropriated CBB's trade secrets and interfered with CBB's employee and customer relationships. CBB designated Daniel Limon as its corporate representative pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 30(b)(6) to testify as to CBB's purported damages. CBB did ***not*** designate any damages experts (or any experts for that matter). Mission now seeks an Order *in limine* precluding CBB from using its lay witness, Limon, as an undisclosed expert at trial.

Notwithstanding CBB's decision not to designate any experts to support its claims, CBB introduced improper expert testimony from Limon in support of CBB's Opposition to Mission's Motion for Summary Judgment. Specifically, Limon submitted a declaration setting forth his damages calculations in which he applied his specialized knowledge in the banking industry to perform a "transfer pricing methodology" to calculate the net interest income loss on certain loans that were purportedly taken by Mission. Limon also consulted two third-party deposit studies to analyze and calculate CBB's alleged damages for demand deposit accounts and money market accounts. In reaching these opinions, Limon made various assumptions and relied on third-party data, including information provided by other CBB employees. In short, Limon's testimony in opposition to summary judgment constituted quintessential expert opinion—i.e., a complex analysis of CBB's claimed damages based in large part on third-party information for which Limon has no personal knowledge.

Mission expects that CBB will attempt to elicit similar improper expert testimony from Limon at trial. But Limon was never disclosed or designated as an expert witness. As such, Limon may only provide testimony as a lay witness pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 701. Accordingly, because CBB failed to disclose any experts, and because lay witnesses may not provide

expert testimony, the Court should preclude Limon from offering any expert testimony at trial, including the expert testimony and opinions set forth in Paragraphs 16-32 of the Declaration of Daniel Limon, attached hereto as Ex. A and filed on the docket at Dkt. No. 111-9.

## II.   LEGAL STANDARDS

### A.   The Court Has "Wide Latitude" to Exclude Improper Expert Testimony

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).[1] The Ninth Circuit explained that motions *in limine* "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Bodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003). A motion *in limine* is proper when, as here, it can be established before trial that the opinion of a particular witness is inadmissible. *See, e.g.*, *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 930 (10th Cir. 2004) (precluding lay witness from testifying about lost profits because it constituted impermissible expert opinion).

Under Fed. R. Civ. P. 26(a)(2)(A), "a party must disclose to the other parties the identities of any witness it may use at trial to present expert opinion testimony under Federal Rules of Evidence 702, 703, or 705." This includes the disclosure of unretained experts. Fed. R. Civ. P. 26(a)(2)(C). Expert disclosures must be made at least 90 days before the date set for trial or as stipulated by the parties. Fed. R. Civ. P. 26(a)(2)(D). "A central purpose of the expert disclosure requirements in Rule 26(a)(2) is to prevent unfair surprise at trial" *Ballard v. United States*, Case No. EDCV 06-715-VAP(OPx), 2007 WL 4794101, at *3 (C.D. Cal. Aug. 28, 2007)."If a

---

[1] All emphasis is added and internal citations omitted unless stated otherwise.

party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

District courts are given "particularly wide latitude" to issue sanctions under Fed. R. Civ. P. 37(c)(1). *Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001). This particular subsection, implemented in the 1993 amendments to the Rules of Civil Procedure, is a recolonized broadening of the sanctioning power. *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998) ("[T]he new rule clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule . . . ."). The Advisory Committee Notes describe it as a "self-executing," "automatic" sanction to "provide[] a strong inducement for disclosure of material." Fed. R. Civ. P. 37 advisory committee's note (1993). As such, "[e]xcluding expert evidence as a sanction for failure to disclose expert witnesses in a timely fashion is automatic and mandatory unless the party can show the violation is either justified or harmless." *See Carson Harbor Village, Ltd. v. Unocal Corp.*, No. CV 96-3281 MMM (RCX), 2003 WL 22038700, at *1 (C.D. Cal. Aug. 8, 2003).

### B. Federal Rule of Evidence 701 Governs Lay Witness Testimony

Lay testimony is governed by Fed. R. Evid. 701, which states:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

## III. ARGUMENT

The Court should preclude Limon from offering any expert testimony at trial, including the expert opinions and testimony set forth at Paragraphs 16-32 of his declaration, attached hereto as Exhibit A, for at least the following reasons.

### A. Limon Cannot Offer Expert Testimony at Trial Because He Was Not Disclosed As an Expert Witness

First, Limon should be precluded from offering expert testimony at trial because he was never disclosed as an expert witness. Pursuant to Mission and CBB's stipulation and the resulting Court Order, initial expert disclosures were due on May 31, 2024, rebuttal expert disclosures were due on June 28, 2024, and the expert discovery cut-off date was July 12, 2024. Dkt. No. 88. CBB did not disclose any expert witnesses on May 31, 2024, nor at any time thereafter. Declaration of Catherine S. Owens ("Owens Decl."), ¶¶ 3, 4. Indeed, counsel for CBB acknowledged this during the parties' September 20, 2024 meet and confer. *Id.* at ¶ 4. Accordingly, any witness that CBB calls at trial, including Limon, may only be allowed to testify as a lay witness pursuant to Fed. R. Evid. 701. CBB cannot offer expert testimony.

### B. Limon's Testimony Is Improper Lay Opinion Because It Is Not "Rationally Based on the Witness's Perception"

Second, Limon should be precluded from offering the testimony set forth in paragraphs 16-21 of his declaration because his opinions are not "rationally based on [his] perception." Fed. R. Evid. 701. Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (1) rationally based on the witness's perception…").

At trial, Limon is expected to testify as to the methodology and assumptions that he used to calculate CBB's damages. *See* Owens Decl., ¶ 5, Ex. A ¶¶ 16-32. Specifically, as reflected in his declaration, Limon will testify that he "worked with CBB's finance team to define and establish the methodology to calculate the

damages" and "[i]n assessing damages, [he] employed the transfer pricing methodology, which calculates the net interest income loss associated with each loan and deposit." *Id.* at ¶ 20. This "[t]ransfer pricing is [a] widely used methodology that banks use to determine the profitability of a specific loan or a deposit." *Id.* Limon will also testify that he "analyzed the damages associated with the net interest income loss associated from demand deposit accounts" and that "[t]o determine the net interest income lost, [he] utilized a deposit study conducted with a third-party consultant…[that] was completed as part of the bank's ordinary operations." *Id.* at ¶ 21.

Limon's declaration makes clear that his damages opinions are based on the knowledge of other witnesses. For instance, in paragraph 17 of his declaration, he testifies that he "worked with CBB's sales team at the Porterville Branch, as well as Michael Stain and Steven Cashiola, to identify the CBB customer relationships at issue" and that "**Steven Cashiola provided [him] with information** and documents, which are maintained in the ordinary course of business in CBB's core system (including in Navigator), regarding certain customers that CBB lost accounts for." *See id.* at ¶ 17. This is confirmed by Steven Cashiola, who also submitted a declaration in opposition to summary judgment. Cashiola testified that he "assisted Mr. Limon in preparing this document [i.e., the damages spreadsheet] **by providing [Limon] certain information regarding certain lost CBB customers,** including their name, loan number, loan category, departure date, interest rate type, the rate reset frequency, the original or estimated loan amount, and the coupon rate." *See* Dkt. No. 111-7 at ¶ 32.

But Cashiola was not the only person that provided Limon information necessary to conduct the damages analysis. Limon also stated in his declaration that he **"worked with CBB's finance team** to define and establish the methodology to calculate the damages," Owens Decl., ¶ 5, Ex. A at ¶ 20, and that he conducted "[a] review of documents within the loan files and documents prepared by CBB's credit

team as well as systems populated by [CBB's] operations team…in validating the data underlying [his] damages assessment," *id.* at ¶ 26. Further, in terms of CBB's purported damages as to demand deposit accounts and money market accounts, Limon stated that he "utilized a deposit study conducted **with a third-party consultant**." *Id.* at ¶¶ 21-22.

Thus, as shown above, Limon's testimony is not based on his personal knowledge and should be excluded as improper lay opinion. Fed. R. Evid. 701.

### C.  Limon's Testimony Is Improper Lay Opinion Because It Is Based on Specialized Knowledge Within the Scope of Rule 702

Third, Limon's damages opinions should be excluded because his testimony is based on "specialized knowledge within the scope of Rule 702," and thus outside the scope of permissible lay opinion under Rule 701. Fed. R. Evid. 701.

Numerous courts have held that "a witness…may not offer lay testimony that is based on specialized knowledge." *Everest Stables, Inc. v. Canani*, Case No. CV099446DSFVBKX, 2011 WL 13213657, at *3 (C.D. Cal. Oct. 6, 2011). In distinguishing between lay and expert testimony, courts have looked at the Advisory Committee Notes which state that "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.' *Id.* at *2 (quoting 2000 Advisory Comm. Notes, Fed. R. Evid. 701). Thus, "knowledge derived from previous professional experience falls squarely 'within the scope of Rule 702' and thus by definition outside of Rule 701." *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011); *see also United States v. Preston*, 873 F.3d 829, 836 (9th Cir. 2017) ("while expert witnesses may testify in the form of opinion as to general matters based on specialized knowledge, Fed. R. Evid. 702, lay witnesses may not"); *see, e.g.*, *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (excluding testimony regarding valuation of property because it was based on technical or specialized knowledge).

As relevant to this case, the Advisory Committee Notes to Rule 702, which governs expert testimony, provide that "bankers" are types of "skilled witnesses" that fall "within the scope of the rule." Fed. R. Evid. 702 advisory committee's note (1972). Indeed, the Advisory Committee Notes explain that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702 advisory committee's notes (2000).

That is precisely the type of testimony that Limon is expected to offer at trial. In his declaration, Limon goes to great lengths explaining that his damages opinions are based on his decades of experience working in the banking industry and that he has the requisite skill and experience to calculate CBB's alleged damages: "Based on this experience in the banking industry, and my specific experience at CBB, I am able to calculate the income that CBB earns on any given account" and "[g]iven my position, experience, and credentials, I calculated lost profit damages for CBB as to the customers and transactions/accounts that CBB lost due to Mission's conduct…" *See* Owens Decl., ¶ 5, Ex. A at ¶ 16; *see also id.* at ¶¶ 5-6.

Limon then goes on to utilize his experience in the "banking and finance industry" to implement the "transfer pricing methodology" to calculate CBB's alleged damages. *Id.* at ¶ 20. This analysis required him to calculate a "fund's transfer rate" using a "base index rate," "a credit premium," and a "liquidity premium." *Id.* The transfer pricing methodology also required him to apply the "net interest margin to the average balance estimated at that point in time for that period" to calculate the "net income loss" on the transaction for that year. *Id.*

Limon then states that he also calculated the net interest income loss associated with demand deposit accounts and money market accounts based on two deposit studies conducted by a third-party consultant. *Id.* at ¶¶ 21-22. He explains that this "deposit study evaluates historical data of closure rates over time for deposits accounts, to determine the 'decay rate,' which is the remaining estimated life of the account." *Id.* at ¶ 21. With respect to demand deposit accounts, he used

the deposit studies to determine the decay rates of accounts at CBB. *Id.* He "then applied the net interest margin, which is the transfer rate less the coupon rate, to the average deposit balance for the period of time the deposit was expected to stay with CBB. This yielded the net interest income that CBB lost from these accounts due to their closure." *Id.* Limon explains that he used a similar analysis to determine the net interest income loss associated with money market deposit accounts. *Id.* at ¶ 22.

There is no dispute that Limon's damages opinions and calculations are based on his specialized knowledge in the field, and thus are the subject of expert testimony. As outlined above, Limon's damages calculations do not involve straightforward arithmetic, but instead apply a sophisticated damages model that requires an in-depth analysis of a particular methodology used by banks. *See* Owens Decl., ¶ 5, Ex. A at ¶ 20. Indeed, Limon's declaration uses "sophisticated financial concepts" like "fund's transfer rate," "base index rate," "credit premium," "liquidity premium," and "decay rate" that are not easily accessible by any ordinary person. *LifeWise Master Funding,* 374 F.3d at 929. In these circumstances, "[c]ourts do not permit lay witness testimony when that testimony involves the use of a sophisticated damages calculation." *See Joshua David Mellberg LLC v. Will*, 386 F.Supp.3d 1098, 1108 (D. Ariz. 2019) (excluding CFO's lay testimony regarding lost profits because the witness "conducted his analysis of JDM's financials utilizing specialized knowledge that is properly within the purview of Rule 702"); *Atencio v. TuneCore, Inc.*, Case No. CV 16-1925-DMG (MRWx), 2018 WL 6265073, at *9 (C.D. Cal. Nov. 13, 2018) ("Moreover, testimony regarding complicated financial valuations does not fall within the realm of acceptable layperson testimony under FRE 701."); *United States v. White*, 492 F.3d 380, 403–04 (6th Cir. 2007) (finding that testimony offered by auditors was improper expert testimony because the witnesses "relied to a significant degree on specialized knowledge acquired over years of experience as Medicare auditors").

/ / /

Accordingly, because Limon was not designated as an expert, and because Limon's anticipated testimony will constitute improper expert opinion, the Court should preclude Limon from offering any testimony at trial based on methodologies, valuations, and assumptions not within his personal knowledge, including any testimony set forth in Paragraphs 16-32 of his declaration.

### D. Mission Will Suffer Prejudice if Limon Is Permitted to Provide Expert Testimony

Finally, CBB's failure to designate Limon as an expert witness would unfairly prejudice Mission. "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd.*, 259 F.3d at 1107. Here, CBB was required to timely disclose any experts it intends to rely on at trial. For whatever reason, CBB chose not to designate any experts in this case, which it confirmed to Mission on multiple occasions. If Mission had known that CBB intended to use Limon to provide expert testimony, Mission would have submitted a rebuttal expert report and had the opportunity to conduct follow-up discovery to test Limon's assumptions and data underlying his analyses. Instead, reasonably believing that CBB did not intend to offer expert testimony, Mission did not pursue expert discovery. As such, if the Court were to allow Limon to provide expert opinions as to CBB's damages, Mission would be unable to rebut those opinions at trial as it understandably designated no experts based on CBB's representations that it was not designating any experts. *See, e.g., Joshua David Mellberg LLC*, 386 F. Supp. 3d at 1109.

/ / /

/ / /

/ / /

## IV. CONCLUSION

For these reasons, the Court should issue an Order excluding any expert testimony offered by Daniel Limon at trial, including the expert testimony and opinions set forth in Paragraphs 16-32 of the Declaration of Daniel Limon, attached hereto as Ex. A and filed on the docket at Dkt. No. 111-9.

Dated: September 27, 2024         LARSON LLP

By: /s/ S.G. Larson
Stephen G. Larson
Jonathan E. Phillips
Catherine S. Owens
Tyler J. Franklin
Attorneys for Defendant MISSION BANK