**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Ryan Q. Keech (SBN 280306)
ryan.keech@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
Connor J. Meggs (SBN 336159)
connor.meggs@klgates.com
Katy Ramos
katy.ramos@klgates.com

*Attorneys for Plaintiff*
*CITIZENS BUSINESS BANK*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CITIZENS BUSINESS BANK, a California banking corporation,

Plaintiff,

v.

MISSION BANK, a California corporation and DOES 1 through 10, inclusive,

Defendant.

Case No. 5:22-cv-01473-FLA-SP
Hon. Fernando L. Aenlle-Rocha

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

Trial Date: November 12, 2024
Time: 8:30 a.m.
Courtroom: 6B

**TABLE OF CONTENTS**


**MEMORANDUM OF CONTENTIONS OF LAW AND FACT ............................ 4**

**I. Introduction ........................................................................ 4**

**II. CBB's Claims ........................................................................ 6**

**A. Claim 1: Misappropriation of Trade Secrets (18 U.S.C. ¶ 1836) ..... 6**

**1. Summary of Claim ........................................................ 6**

**2. Required Elements ........................................................ 6**

**3. Key Evidence in Support ................................................ 7**

**B. Claim 2: Intentional Interference with Contractual Relations ........ 9**

**1. Summary of Claim ........................................................ 9**

**2. Required Elements ........................................................ 9**

**3. Key Evidence in Support ................................................ 11**

**C. Claim 3: Intentional Interference with Prospective Economic Advantage ........................................................................ 12**

**1. Summary of Claim ........................................................ 12**

**2. Required Elements ........................................................ 12**

**3. Key Evidence in Support ................................................ 14**

**D. Claim 4: Negligent Interference with Prospective Economic Relations ........................................................................ 16**

**1. Summary of Claim ........................................................ 16**

**2. Required Elements ........................................................ 16**

**3. Key Evidence in Support ................................................ 17**

**E. Claim 5: Violation of California Unfair Competition Law (Cal. Civ. Code ¶¶ 17200, *et seq.*) ................................................ 19**

**1. Summary of Claim ........................................................ 19**

**2. Required Elements ........................................................ 19**

**3. Key Evidence in Support ................................................ 21**

**III. Defendant'S Affirmative Defenses ........................................ 21**

**A. Unasserted Affirmative Defense: Defense Preemption of CBB's state law claims by CBB's trade secrets claim under the DTSA.... 22**

1. **Summary of Affirmative Defense** ........ 22

2. **Key Evidence in Opposition** ........ 23

B. **Affirmative Defense 2: Failure to State Trade Secrets with Particularity** ........ 23

1. **Summary of Affirmative Defense** ........ 23

2. **Key Evidence in Opposition** ........ 24

C. **Affirmative Defense 3: Alleged Trade Secrets Obtained by Proper Means** ........ 24

1. **Summary of Affirmative Defense** ........ 24

2. **Key Evidence in Opposition** ........ 25

D. **Affirmative Defense 4: Inadequate Protection by Owner** ........ 26

1. **Summary of Affirmative Defense** ........ 26

2. **Key Evidence in Opposition** ........ 27

E. **Affirmative Defense 5: Information Was Readily Ascertainable by Proper Means** ........ 27

1. **Summary of Affirmative Defense** ........ 27

2. **Key Evidence in Opposition** ........ 27

F. **Affirmative Defense 6: Good Faith** ........ 28

1. **Summary of Affirmative Defense** ........ 28

2. **Key Evidence in Opposition** ........ 28

G. **Affirmative Defense 10: Failure to Mitigate** ........ 28

1. **Summary of Affirmative Defense** ........ 28

2. **Key Evidence in Opposition** ........ 29

H. **Affirmative Defense 12: Conduct Not Unlawful** ........ 29

1. **Summary of Affirmative Defense** ........ 29

2. **Key Evidence in Opposition** ........ 29

I. **Affirmative Defense 13: Conduct Not Unfair** ........ 29

1. **Summary of Affirmative Defense** ........ 29

2. **Key Evidence in Opposition** ........ 30

J. **Affirmative Defense 14: No Trade Secrets at Issue** ........ 30

**1. Summary of Affirmative Defense .... 30**

**2. Key Evidence in Opposition .... 31**

**K. Affirmative Defense 16: Adequate Remedy at Law .... 31**

**1. Summary of Affirmative Defense .... 31**

**2. Key Evidence in Opposition .... 31**

**IV. ANTICIPATED EVIDENTIARY ISSUES .... 31**

**V. ISSUES OF LAW .... 33**

**VI. BIFURCATION OF ISSUES .... 34**

**VII. JURY TRIAL .... 34**

**VIII. DAMAGES, EXEMPLARY DAMAGES, RESTITUTION, AND ATTORNEYS' FEES AND COSTS .... 35**

**MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

Pursuant to the Court's Civil Trial Scheduling Order (DE 88) and Local Rule 16-4, Plaintiff Citizens Business Bank ("Plaintiff" or "CBB") submits this Memorandum of Contentions of Fact and Law, addressing the contentions of the Parties in advance of the trial scheduled to commence on November 12, 2024. CBB reserves the right to correct, amend, and/or supplement this document to address any questions, concerns, or issues that come to its attention regarding its content. This document is not a comprehensive list of all arguments, authority, witness, or exhibits that CBB intends to rely on at trial, but contains brief summaries of key issues and facts consistent with the requirements of Local Rule 16.

## I. INTRODUCTION

This action revolves around a widespread and disturbing conspiracy by Mission and others to acquire highly competitively sensitive, trade secret, and other valuable information from CBB through its employees so that it could open a branch in Visalia, California and unfairly compete with CBB. By way of background, CBB was founded in 1974 by a dairy farmer and small business owner who saw a need to support other business owners in his community. CBB has grown to be a highly successful and trusted financial institution with approximately $16 billion in assets with 3 trust offices and over 60 banking locations throughout California, including in Visalia.

CBB acquired Suncrest in January 2022.[1] In doing so, it acquired all of its Trade Secrets, data/files, and property—it also hired certain Suncrest employees, including Della and the Former CBB Employees. Two months later, in March 2022, Della and the Former CBB Employees abruptly left CBB to join Mission. Immediately thereafter, CBB's customers began closing their accounts with CBB and/or pulled out of deals pending at CBB. Due to the speed at which this happened and based on information

---

[1] Suncrest Bank ("Suncrest"); Plaintiff Citizens Business Bank, includes Suncrest beginning on January 7, 2022 (collectively, "CBB"); Defendant Mission Bank ("Defendant" or "Mission"); Dustin Della ("Della"), collectively with Lori Carabay, Angie Dempsie, Armidelia, Dave Brett, Diania Pimentel, Ericka Melo, Jorge Espinoza, Patricia Palacios, and Virgina Hopper (the "Former CBB Employees").

from CBB's customers and employees, CBB became concerned that Mission and Della had stolen CBB's Trade Secrets and interfered with relationships, including through sabotage.

On March 25, 2022, CBB's General Counsel sent a letter to Mission (and Della), formally notifying them that CBB believed Mission & Della had stolen CBB's trade secrets, sabotaged its relationships, and interfered with its business relationships. CBB specifically identified the Trade Secrets it believed were stolen (and related customers) based on its investigation to date. CBB also informed Mission of the various agreements between Della and CBB and obligations he (and the Former CBB Employees) owed to CBB, including confidentiality obligations. CBB was concerned that Mission and Della had used, and would continue to use, its Trade Secrets, and demanded that they return all of CBB's property, which it repeated during the next 4 months. Mission refused to comply. Instead, it responded by ignoring undisputed facts showing wrongdoing, boldly proclaiming that its investigation (the contents of which it has refused to disclose based on privilege) established its innocence, making veiled threats as to CBB's own hiring practices, and hoping CBB would not pursue this dispute. CBB was, thus, forced to file this action.

Discovery has proven CBB's allegations and suspicions were correct all along. Mission had entered into a conspiracy with Della, Former CBB Employees, and others at Mission to steal CBB's Trade Secrets, sabotage its relationships, lure away its customers, and unfairly compete. Mission entered into this conspiracy knowing Della and the Former CBB Employees were still working for, and owed obligations to, CBB. That did not deter Mission. Indeed, Mission executives even strategized about what documents to steal from CBB and directly asked Della for specification documents and information (including expressly asking Della to "smuggle" out certain documents—reflecting a clear understanding that Della *was not supposed to send those documents to Mission*).

There is now overwhelming and conclusive evidence of Mission's guilt. For example, Mission produced numerous emails showing that, during his final months at CBB, Della sent Mission's executives countless Trade Secret Credit Memos, the entire Suncrest Loan Policy, Pipeline data and reports, and excerpts from CBB's customer compilation data. Della also produced highly incriminating emails and texts establishing his conspiracy with Mission.

As set forth below, CBB intends to proceed to trial on all of its claims and seeks a jury trial on all claims to which it is entitled to a jury. CBB seeks compensatory damages, disgorgement, restitution, and exemplary damages, along with its attorneys' fees, costs, interest, and injunctive relief.

## II. CBB'S CLAIMS

### A. Claim 1: Misappropriation of Trade Secrets (18 U.S.C. ¶ 1836)

#### 1. Summary of Claim

Plaintiff CBB alleges that Defendant obtained and misappropriated its Trade Secrets to help launch its new Visalia branch, solicit and take its clients and employees, and unfairly compete with CBB. As such, CBB contends that Defendant is liable for misappropriation of trade secrets under 18 U.S.C. ¶ 1836.

#### 2. Required Elements

The required elements for misappropriation of trade secrets that CBB must show by a preponderance of the evidence are:

1. CBB possessed trade secrets;
2. CBB has taken reasonable measures to keep such information secret;
3. The trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person;
4. Defendant misappropriated the trade secrets; and
5. Defendant's misappropriation damaged CBB.

18 U.S.C. ¶ 1832, 1836; *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–61 (9th Cir. 2020). Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). The same is true under federal law. Here, (1) Mission formed and operated a conspiracy with Della, Former CBB Employees, and employees of Mission and operated that conspiracy in late 2021 through the present, (2) Mission and its co-conspiracy engaged in wrongful conduct in furtherance of that conspiracy, including by requesting CBB's trade secret documents from Della while he was still working at CBB, receiving and using such information, receiving and using non-trade secret customer information, sabotaging CBB relationships, refusing to return CBB's trade secrets and other property, and other bad actions, and (3) CBB has suffered damages as a result of that conduct.

**3. Key Evidence in Support**

CBB will introduce the following categories of evidence establishing that Mission misappropriated CBB's Trade Secrets:

- Testimony and evidence showing that CBB possessed Trade Secrets, including but not limited to its credit memos, loan policies, pipeline compilation information and report, ppp loan report, promo rate report, customer compilation data, and other highly sensitive information;
- Testimony and evidence showing that CBB derived economic value from its Trade Secrets;

- Testimony and evidence showing that CBB has taken significant measures to maintain the secrecy of its Trade Secrets, including through its confidentiality agreements with Della and the Former CBB Employees, its employment policies, surveillance, and password protected access;
- Testimony and evidence showing that Della and the Former CBB Employees were employees of CBB and owed CBB contractual obligations to keep confidential CBB's Trade Secrets;
- Testimony and evidence showing that Della and certain Former CBB Employees had access to CBB's Trade Secrets;
- Testimony and evidence showing that Mission was aware that CBB's Trade Secrets were confidential;
- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to misappropriate CBB's Trade Secrets;
- Testimony and evidence showing that Mission and its co-conspirators solicited Della and the Former CBB Employees for their knowledge of and access to CBB's Trade Secrets in order to acquire CBB's Trade Secrets;
- Testimony and evidence showing that Della and certain Former CBB Employees took CBB's Trade Secrets and shared them with Mission for Mission's benefit and as part of the conspiracy;
- Testimony and evidence showing that Mission's misappropriation of CBB's Trade Secrets was willful and malicious;
- Testimony and evidence showing that Mission, Della, and certain Former CBB Employees solicited CBB's clients on Misson's behalf, including during their employment at CBB;
- Testimony and evidence showing that Mission and its co-conspirators used CBB's Trade Secrets; and

- Testimony and evidence showing that CBB suffered damages as a result of Mission's (and its co-conspirators') misappropriation of its Trade Secrets.

**B. Claim 2: Intentional Interference with Contractual Relations**

**1. Summary of Claim**

CBB alleges that Mission was aware of contractual relations between CBB and its clients and CBB and its at-will employees, and intentionally interfered with such contractual relations. Specifically, Mission utilized CBB's highly valuable, confidential, and proprietary information, including CBB's Trade Secrets, to intentionally solicit its employees and clients, resulting in clients moving their accounts to Mission.

CBB also contends that, separate and apart from any misappropriation of trade secrets, Mission and its co-conspirators interfered with CBB's contractual relationships it knew existed between CBB and its clients and customers in an effort to sabotage and lure away customers, including by acquiring CBB's customers private information from Della while he was at CBB without CBB's permission or the customer's permission, in an effort to fast-track their solicitation of such customers.

Mission and its co-conspirators knew of CBB's employees obligations and duties (including duties of loyalty) to CBB, including to not distribute its customer's non-trade secret information outside the bank, and nonetheless conspired to obtain and use that information without CBB's or the customer's knowledge or consent.

As such, CBB contends that Mission is liable for intentional interference with contractual relations.

**2. Required Elements**

The required elements for intentional interference with contractual relations that CBB must show by a preponderance of the evidence are:

1. There was a valid contract between CBB and its clients and at-will employees;

2. Mission knew of the contracts;
3. Mission's conduct prevented performance or made performance more expensive or difficult;
4. Mission's interference with CBB's contractual relations with its at-will employees was independently wrongful because Della and the other Former CBB Employees violated their contractual and fiduciary duties to CBB and Mission misused CBB's confidential and proprietary information without CBB's consent to solicit CBB's clients and at-will employees;
5. Mission intended to disrupt the performance of this contract or knew that disruption of performance was certain or substantially certain to occur;
6. CBB was harmed; and
7. Mission's conduct was a substantial factor in causing CBB harm.

*Pac. Gas & Elec, Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1125–30 (Cal. 1990); Judicial Council of California Civil Jury Instructions (2024 edition) No. 2201. *Intentional Interference with Contractual Relations*. Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). The same is true under federal law. Here, (1) Mission formed and operated a conspiracy with Della, Former CBB Employees, and employees of Mission and operated that conspiracy in late 2021 through the present, (2) Mission and its co-conspiracy engaged in wrongful conduct in furtherance of that conspiracy, including by requesting CBB's trade secret documents from Della while he was still working at CBB, receiving and using such information,

receiving and using non-trade secret customer information, sabotaging CBB relationships, refusing to return CBB's trade secrets and other property, and other bad acts, and (3) CBB has suffered damages as a result of that conduct.

**3. Key Evidence in Support**

CBB will introduce the following categories of evidence establishing that Mission intentionally interfered with contractual relations:

- Testimony and evidence showing that CBB had valid contracts with its clients;
- Testimony and evidence showing that CBB had valid contracts with its at-will employees, including Della and the other Former CBB Employees;
- Testimony and evidence showing that Mission was aware of the contracts CBB had with its clients and with its employees;
- Testimony and evidence showing that Mission intentionally solicited CBB's employees and clients;
- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its clients and customers;
- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its employees;
- Testimony and evidence showing that Mission knowingly and willfully induced Della and the other Former CBB Employees to violate their contractual and other duties to CBB;
- Testimony and evidence showing that Della and the other Former CBB Employees knowingly and willfully violated their contractual and other duties to CBB;

- Testimony and evidence showing that Mission intentionally interfered with the contractual relationships between CBB and its clients and at-will employees;
- Testimony and evidence showing that Mission's intentional interference was wrongful and outside the boundaries of fair competition because they unlawfully disseminated, distributed, and used CBB's non-trade secret property and customer information to sabotage and lure away CBB's customers and at-will employees. Separately, to the extent actionable, it was wrongful because Mission misappropriated CBB's Trade Secrets and used same to hire CBB's at-will employees and steal CBB's current clients and prospective clients, inducing CBB's employees to violate their contractual and legal obligations to CBB;
- Testimony and evidence showing that due to Mission's actions, there was an actual disruption of the contractual relationship between CBB and its clients;
- Testimony and evidence showing that CBB suffered financial losses as a result of Mission's solicitation and interference with its contracts.

### C. Claim 3: Intentional Interference with Prospective Economic Advantage

#### 1. Summary of Claim

CBB alleges that Mission knew of CBB's economic relationships with its employees and current and prospective clients, and Defendant intentionally interfered with those relationships. CBB contends that Mission is liable to CBB as a result.

#### 2. Required Elements

The required elements for intentional interference with prospective economic advantage that CBB must show by a preponderance of the evidence are:

1. CBB was in an economic relationship with its at-will employees and CBB's current and prospective clients that probably would have resulted in an economic benefit to CBB;
2. Mission knew of the relationships and their value;
3. Mission intended or was substantially certain to disrupt the relationships;
4. The interference was independently wrongful because Mission induced Della and certain Former CBB Employees to violate their contractual and other obligations to CBB and Mission misused CBB's confidential and proprietary information without CBB's consent to solicit CBB's at-will employees, potential clients, and actual clients;
5. Mission's conduct disrupted the at-will employment relations between CBB and its at-will employees to occur, as well as CBB's relations with its current clients and prospective clients; and
6. The disruption proximately caused economic harm to CBB.

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–66 (Cal. 2003); Judicial Council of California Civil Jury Instructions (2024 edition) No. 2202. *Intentional Interference with Prospective Economic Relations*. Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). The same is true under federal law. Here, (1) Mission formed and operated a conspiracy with Della, Former CBB Employees, and employees of Mission and operated that conspiracy in late 2021 through the present, (2) Mission and its co-conspiracy engaged

in wrongful conduct in furtherance of that conspiracy, including by requesting CBB's trade secret documents from Della while he was still working at CBB, receiving and using such information, receiving and using non-trade secret customer information, sabotaging CBB relationships, refusing to return CBB's trade secrets and other property, and other bad acts, and (3) CBB has suffered damages as a result of that conduct.

**3. Key Evidence in Support**

CBB will introduce the following categories of evidence establishing that Defendant intentionally interfered with prospective economic advantage:

- Testimony and evidence showing that CBB had an economic relationship with its former at-will employees, including Della and the Former CBB Employees;
- Testimony and evidence showing that CBB invested substantial resources in developing and training these employees;
- Testimony and evidence showing that CBB had an economic relationship with its current, former, and prospective customers;
- Testimony and evidence showing that CBB's economic relationships with its former at-will employees and its current, former, and prospective customers provided a high probability of future economic benefit to CBB;
- Testimony and evidence showing Mission had actual and constructive knowledge of the at-will employment relations between CBB and its former employees;
- Testimony and evidence showing Mission had actual and constructive knowledge of CBB's relationships with its customers;
- Testimony and evidence showing that Mission knew of the economic value of CBB's relationships with its employees and current, former, and prospective customers;

- Testimony and evidence showing that Mission intentionally interfered with these relationships by soliciting CBB's former employees and customers;
- Testimony and evidence showing that Mission intentionally misused CBB's confidential and proprietary information without CBB's consent to solicit CBB's at-will employees, potential clients, and actual clients;
- Testimony and evidence showing that Mission's interference was wrongful and outside the boundaries of fair competition because they unlawfully misappropriated CBB's Trade Secrets and used same to hire CBB's at-will employees and steal CBB's current clients and prospective clients, inducing CBB's employees to violate their contractual and legal obligations to CBB;
- Testimony and evidence showing that Mission's wrongful actions disrupted the economic relationships between CBB and its at-will employees;
- Testimony and evidence showing that Della and certain Former CBB Employees violated their contracts and obligations to CBB;
- Testimony and evidence showing that Mission's wrongful actions disrupted the economic relationships between CBB and its current, former, and prospective customers;
- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its clients and customers;
- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its employees;
- Testimony and evidence showing that Mission's disruption has caused CBB to suffer actual and direct damages.

### D. Claim 4: Negligent Interference with Prospective Economic Relations

#### 1. Summary of Claim

CBB alleges that Mission knew of CBB's economic relationships with its employees and current and prospective clients and wrongfully interfered with such relationships by failing to act with due care. As a result, CBB suffered economic harm. As such, CBB contends that Mission is liable for negligent interference with prospective economic relations.

#### 2. Required Elements

The required elements for negligent interference with prospective economic relations that CBB must show by a preponderance of the evidence are:

1. CBB was in an economic relationship with its at-will employees and CBB's current and prospective clients that probably would have resulted in an economic benefit to CBB;
2. Mission knew of the relationships and their value;
3. Mission owed a duty of care towards CBB;
4. Mission must have been aware that if it did not act with due care, its actions would interfere with CBB's relationships and cause CBB to lose in whole or in part the probable future economic benefit or advantage of the relationships;
5. Mission failed to act with due care;
6. The interference was independently wrongful because Della and certain of the CBB Former Employees violated their contractual and obligations to CBB and Mission misused CBB's confidential and proprietary information without CBB's consent to solicit CBB's at-will employees, potential clients, and actual clients;
7. Mission's conduct disrupted the at-will employment relations between CBB and its at-will employees to occur, as well as CBB's relations with its current clients and prospective clients; and

8. The disruption proximately caused economic harm to CBB.

*Hot Focus Inc. v. Best Accessory Grp.*, 2022 WL 17078942, at *4 (C.D. Cal. Aug. 30, 2022); *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1077–80 (Cal. Ct. App. 2007); Judicial Council of California Civil Jury Instructions (2024 edition) No. 2204. *Negligent Interference with Prospective Economic Relations*. Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). The same is true under federal law. Here, (1) Mission formed and operated a conspiracy with Della, Former CBB Employees, and employees of Mission and operated that conspiracy in late 2021 through the present, (2) Mission and its co-conspiracy engaged in wrongful conduct in furtherance of that conspiracy, including by requesting CBB's trade secret documents from Della while he was still working at CBB, receiving and using such information, receiving and using non-trade secret customer information, sabotaging CBB relationships, refusing to return CBB's trade secrets and other property, and other bad acts, and (3) CBB has suffered damages as a result of that conduct.

**3. Key Evidence in Support**

CBB will introduce the following categories of evidence establishing that Mission negligently interfered with prospective economic relations:

- Testimony and evidence showing that CBB had an economic relationship with its former at-will employees, including Della and the CBB Former Employees;

- Testimony and evidence showing that CBB invested substantial resources in developing and training these employees;
- Testimony and evidence showing that CBB had an economic relationship with its current, former, and prospective customers;
- Testimony and evidence showing that CBB's economic relationships with its former at-will employees and its current, former, and prospective customers provided a high probability of future economic benefit to CBB;
- Testimony and evidence showing Mission had actual and constructive knowledge of the at-will employment relations between CBB and its former employees;
- Testimony and evidence showing Mission had actual and constructive knowledge of CBB's relationships with its customers;
- Testimony and evidence showing that Mission knew of the economic value of CBB's relationships with its employees and current, former, and prospective customers;
- Testimony and evidence showing that Mission owed a duty of care to CBB;
- Testimony and evidence showing that Mission was aware or must have been aware that if it did not act with due care, its actions would interfere with CBB's relationships and cause CBB to lose future economic benefits due to the relationships;
- Testimony and evidence showing that Della and certain Former CBB Employees violated their contracts and obligations to CBB;
- Testimony and evidence showing that Mission misused CBB's confidential and proprietary information without CBB's consent to solicit CBB's at-will employees, potential clients, and actual clients;
- Testimony and evidence showing that Mission's interference was wrongful and outside the boundaries of fair competition because they

unlawfully misappropriated CBB's Trade Secrets and used same to hire CBB's at-will employees and steal CBB's current clients and prospective clients, inducing CBB's employees to violate their contractual and legal obligations to CBB;

- Testimony and evidence showing that Mission's wrongful actions disrupted the relationships between CBB and its at-will employees;
- Testimony and evidence showing that Mission's wrongful actions disrupted the relationships between CBB and its current, former, and prospective customers;
- Testimony and evidence showing that Mission's disruption has caused CBB to suffer actual and direct damages.

**E. <u>Claim 5: Violation of California Unfair Competition Law (Cal. Civ. Code ¶¶ 17200, *et seq.*)</u>**

**1. Summary of Claim**

Mission committed unlawful and/or unfair business practices, including inducing to violate and violating contractual and fiduciary duties to CBB, misusing CBB's non-trade secret data, documents, and information to solicit CBB's employees and clients, and misappropriating CBB's Trade Secrets. These acts unlawful and/or unfair acts caused economic harm to CBB. As such, CBB contends that Mission violated California Unfair Competition Law.

**2. Required Elements**

The required elements for violation of California Unfair Competition Law that CBB must show by a preponderance of the evidence are:

1. Defendant committed unlawful and/or unfair acts in misappropriating CBB's Trade Secrets, intentionally interfering with contractual relations, intentionally interfering with prospective economic advantage, and/or negligently interfering with prospective economic relations; and
    a. Mission's acts constituted unlawful business practices; and

b. Mission's acts constituted unfair business practices because they offended public policy, threatened and/or harmed competition, and/or were immoral, unethical, oppressive, or unscrupulous; and

2. CBB suffered economic harm and lost money and/or property;

3. Mission's unlawful and/or unfair conduct caused such economic harm to CBB; and

4. Injunctive relief is an appropriate remedy to compensate CBB for harm caused by Mission as to conduct not otherwise compensable by monetary damages and, as to certain conduct, injunctive relief ordering the return or forensic destruction of all copies of CBB's property and an injunction preventing any further dissemination or use is the only way to ensure that Mission's conduct stops.

*Foremost Grps., Inc. v. Ayers Bath USA Corp.*, 2012 WL 13012450, at *6–7 (C.D. Cal. May 7, 2012); *Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*, 2011 WL 13135282, at *3 (C.D. Cal. Jan. 3, 2011); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 178–88 (Cal. 1999). Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). The same is true under federal law. Here, (1) Mission formed and operated a conspiracy with Della, Former CBB Employees, and employees of Mission and operated that conspiracy in late 2021 through the present, (2) Mission and its co-conspiracy engaged in wrongful conduct in furtherance of that conspiracy, including by requesting CBB's

trade secret documents from Della while he was still working at CBB, receiving and using such information, receiving and using non-trade secret customer information, sabotaging CBB relationships, refusing to return CBB's trade secrets and other property, and other bad acts, and (3) CBB has suffered damages as a result of that conduct.

**3. Key Evidence in Support**

CBB will introduce the following categories of evidence establishing that Mission violated California Unfair Competition Law:

- In support of its claim, CBB will rely on the key facts and evidence outlined in Section II above to show that Mission committed unlawful and unfair acts;
- Testimony and evidence showing that Mission's unfair business practices harmed competition;
- Testimony and evidence showing that Mission's unlawful and unfair conduct caused economic harm to CBB;
- Testimony and evidence showing that injunctive relief would adequately compensate CBB for the harm caused by Mission (but only to the extent not otherwise covered by another claim for which damages are available).

## III. <u>DEFENDANT'S AFFIRMATIVE DEFENSES</u>

Mission represented to CBB in a September 13, 2024 email that it would not be pursuing the following affirmative defenses at trial: (1) Affirmative Defense 1: No Subject Matter Jurisdiction, (2) Affirmative Defense 7: Unclean Hands, (3) Affirmative Defense 8: Latches, Waiver, and/or Estoppel, (4) Affirmative Defense 9: Consent/Ratification, and (5) Affirmative Defense 11: Offset/Reduction.

**A. Unasserted Affirmative Defense: Defense Preemption of CBB's state law claims by CBB's trade secrets claim under the DTSA.**

**1. Summary of Affirmative Defense**

Mission did not assert this issue in its Answer as an affirmative defense nor has it sought leave to amend its answer to do so. (DE 11.) Thus, it is waived. *See, e.g.*, *Hernandez v. Creative Concepts*, 295 F.R.D. 500, 505 (D. Nev. 2013) (cannot plead defense at summary judgment for first time without satisfying Rules 15 and 16). To the extent it is not waived, Mission raised this "defense" in its Motion for Summary Judgment for the first time, well after the close of discovery. Mission argues that CBB's state law claims (2-5) are preempted by the California Uniform Trade Secrets Act. As set forth in CBB's Opposition to Mission's Motion for Summary Judgment, such claims are not preempted and, to the extent that preemption applies at all, the claims are based on conduct other than the misappropriation of trade secrets. Thus, at a minimum, CBB's state law claims (2-5) based on its wrongful conduct other than the theft of CBB's Trade Secrets are viable and should be proceed to trial. Finally, to the extent that this "defense" has not been waived by Mission's failure to raise it in its answer, CBB asserts that the manner in which Mission has argued this issue is an attack on the pleading of CBB's claims, rather than the merits of such claims and the legal question of preemption is one that will be decided by the Court in Mission's pending Motion. Cal. Civ. Code § 3426.7(b)(1); *Race Winning v. Gearhart*, 2023 WL 4681539, at *7 (C.D. Cal. Apr. 21, 2023) (no supersession). CBB has asserted a tortious interference with contract claim, which is not superseded. *Loop AI Labs v. Gatti*, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (no supersession). And, any defect in pleading can be remedied through conforming to proof. *See, e.g.*, *Gray v. Golden*, 866 F.Supp.2d 1129, 1141 (N.D. Cal. 2011).

CBB's state law claims are based on a violation of contracts prohibiting competition while employed at CBB, interference causing breaches of duty of loyalty, as well as unfair competition. They are also based on interference with CBB's

contracts that prohibited employee and customer raiding, disclosure of data that CBB does not claim is a trade secret (like tax returns, customer financial statements, and other customer-provided confidential information), and misuse of company property. None of this turns on whether a trade secret exists.[2] Thus, the state law claims remaining after the Court's decision on that Motion will not be further subject to this defense at trial. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence establishing that CBB has pleaded sufficient facts to support its state law claims (2-5) as set forth above in the discussion of the facts introduced to support such claims and in its Opposition to the Motion for Summary Judgment. In the interest of efficiency, CBB cross refers to Section II above, which articulates a brief summary of those facts.

**B. <u>Affirmative Defense 2: Failure to State Trade Secrets with Particularity</u>**

**1. Summary of Affirmative Defense**

Mission argues "[t]he Complaint is barred, in whole or in part, because Plaintiff has failed to state its alleged trade secrets with the required particularity. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658-660 (9th Cir. 2020)." (DE 11 at 34.) This is not a recognized affirmative defense to CBB's claims, particularly its DTSA claim. It is also not a defense to such claims as there is no heightened pleading standard for DTSA claims and, even if there was, the sufficiency of CBB's pleading was an issue Mission should have raised in a Rule 12(b)(6) motion.

---

[2] *Swarmify v. Cloudflare*, 2018 WL 1609379, at *2 (N.D. Cal. Apr. 3, 2018) (no supersession); *Angelica Textile v. Park*, 220 Cal. App. 4th 495, 506 (2013), as modified (Oct. 29, 2013), as modified on denial of reh'g (Nov. 7, 2013) (no supersession); *Silvaco v,. Intel*, 184 Cal. App. 4th 210, 241-242 (2010) (disapproved on other grounds by *Kwikset v. Sup Ct*, 51 Cal. 4th 310 (2011)) (no supersession); *see also ClearOne v. Chiang*, 2007 WL 4376125, at *4 (D. Utah Dec. 13, 2007) (no supersession); *Copart v. Sparta*, 277 F. Supp. 3d 1127, 1160 (E.D. Cal. 2017) (no supersession).

Nonetheless, to the extent Mission's argument is treated as a "defense," it lacks any merit given that CBB specifically identified numerous trade secrets at issue in pre-filing communications, its Complaint, many discovery responses, during depositions, during meet and confers, and in its summary judgment briefing, including by identifying documents containing its trade secrets by bates number, all of which are legally protectable. *See, e.g., US v. Nosal,* 844 F.3d 1024, 1043 (9th Cir. 2016); *Chartwell*, 2019 WL 2177262, at *6 (customer and employee data protectable); *Sun Distrib. v. Corbett*, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018) (customer list protectable); *Henry v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (same); *Extreme v. Spotgenie*, 2013 WL 12081182, at *3 (C.D. Cal. Nov. 22, 2013) (customer list protectable); *Brain Inj. Ass'n of California v. Yari*, 2020 WL 3643482, at *5 (C.D. Cal. Apr. 30, 2020) (citing *MAIv. Peak,* 991 F.2d 511, 521 (9th Cir. 1993) (customer information protectable); *see also Morlife v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997) (same); *Argo v. Pro.*, 2013 WL 11327772, at *3 (C.D. Cal. Dec. 6, 2013) (customer lists protectable). This "defense" is duplicative of other defenses, including the fourteenth defense. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence establishing that CBB has pleaded sufficient facts to support its DTSA (and state law claims (2-5)) as set forth in Section II above and in its Opposition to the Motion for Summary Judgment. In the interest of efficiency, CBBB cross refers to Section II above, which articulates a brief summary of those facts.

**C. <u>Affirmative Defense 3: Alleged Trade Secrets Obtained by Proper Means</u>**

**1. Summary of Affirmative Defense**

Mission argues that "Plaintiff's trade secret misappropriation claim is barred, in whole or in part, in that Defendant obtained the alleged trade secrets by proper means

or independently developed them." (DE 11 at 34.) Mission has not offered any evidence to establish this defense. Rather, the undisputed evidence shows that Mission did obtain CBB's trade secrets by proper means, but rather improperly including through Della. Any suggestion by Mission that CBB's customers' access to some of their own information, some of which may make up part of CBB's trade secrets supports this defense is simply wrong and contrary to settled law. *See, e.g.*, *Sun Distrib. v. Corbett*, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018) ("noting that "it is a given that in any case, the customers themselves will have access to their own information," but this fact alone does not mean that such information maintained about the customer cannot be a trade secret"; acknowledging that the "value to the customer list is in the completeness and details of the list; the fact that each individual customer has access to its own information does not make Plaintiff's list of customers worthless."); *Wanke, Indus. v. Keck*, 209 Cal. App. 4th 1151, 1175 (2012) (acknowledging that "where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market." ) As is any suggestion that the availability of certain information from other sources also establishes this defense as it overlooks that CBB spent substantial resources of its own to acquire, maintain, and update its trades secrets and that the undisputed evidence shows that Mission and its co-conspirators took those trade secrets directly from CBB, as opposed to acquiring them from other sources. *Id.; see* Section II, III.B. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence and testimony establishing its claims as set forth in Section II above. CBB will also introduce evidence and testimony establishing that:

- CBB's Trade Secrets and confidential or proprietary information were not readily ascertainable by proper means;

- CBB's Trade Secrets included compilations of information pertaining to numerous customers, which were not shared with CBB's customers, but rather were maintained on CBB's internal password protected systems;
- CBB has taken significant measures to maintain the secrecy of its Trade Secrets, including through, *inter alia*, its confidentiality agreements with Della and its other employees, policies barring dissemination and use of its property;
- CBB invested substantial time, effort, and resources over the course of several years to develop specific customer lists and compilations including historical information, preferences, and pricing structures, which has great value to Plaintiff; and
- CBB's Trade Secrets included other valuable, confidential, and specific information, processes, and procedures that were developed over many years and not shared to customers or anyone else not under a duty to maintain their confidentiality.

**D. <u>Affirmative Defense 4: Inadequate Protection by Owner</u>**

**1. Summary of Affirmative Defense**

Mission argues that "[t]he Complaint is barred, in whole or in part, because Plaintiff failed to make reasonable efforts to maintain the secrecy of the alleged misappropriated trade secrets." (DE 11 at 35.) Mission has not articulated the basis for this assertion, in light of the substantial evidence showing the steps CBB did take to protect its trade secrets. To the extent that Mission argues that the customer's access to some of their own information, some of which is contained in CBB's trade secrets (which the undisputed evidence shows is not shared with its customers), that argument is contrary to well-settled law. It is also unclear what elements Mission contends are required for it to establish this as an affirmative defense. This defense is also duplicative of the third and fifth defenses. CBB reserves the right to argue that

Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence and testimony establishing its claims and the adequate protection of its trade secrets as set forth in Section II above.

**E. <u>Affirmative Defense 5: Information Was Readily Ascertainable by Proper Means</u>**

**1. Summary of Affirmative Defense**

Mission argues "[t]he Complaint is barred, in whole or in part, because the alleged trade secret information was readily ascertainable by proper means at the time of the alleged misappropriation." (DE 11 at 35.) Mission has not offered any evidence to establish this defense. Rather, the undisputed evidence shows that CBB's trade secrets were not readily ascertainable by proper means and the mere fact that a customer has access to some of their own information does not prevent CBB from asserting its properly protected trade secrets that protects that information. *See, e.g.*, *Sun Distrib. v. Corbett*, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018); *Wanke, Indus. v. Keck*, 209 Cal. App. 4th 1151, 1175 (2012); *Id.; see* Section II, III.B-D. This defense is also duplicative of the third and fourth defenses. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence and testimony establishing its claims and the adequate protection of its trade secrets as set forth in Section II and Sections III.B-D above. Additionally, CBB will offer evidence showing that it did not share its trade secret credit memos, loan policy, pipeline reports, and customer compilation data outside the bank such that its trade secrets were readily ascertainable by proper means. CBB will also present evidence that it did not share these documents with its customers.

**F. Affirmative Defense 6: Good Faith**

**1. Summary of Affirmative Defense**

Mission argues that "[t]he Complaint is barred, in whole or in part, because Defendant acted in good faith at all pertinent times." (DE 11 at 35.) Mission has not articulated the basis for this assertion. It is also unclear what elements Mission contends are required for it to establish this as an affirmative defense. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence and testimony establishing its claims and Mission did not act in good faith as set forth in Section II above. Additionally, it will present evidence showing that Mission was on notice from the outset that its conspiracy with Della and others was unlawful and nonetheless continued to engage in the conspiracy and related wrongful conduct. CBB will also present evidence showing that it specifically put Mission on notice of its unlawful conduct repeatedly before it filed this action and that Mission conduct continued and that the intent of such conduct was to unjustly enrich Mission to CBB's detriment and unfairly compete. CBB will also present evidence that Mission continues to maintain CBB's misappropriated trade secrets and other property to this day.

**G. Affirmative Defense 10: Failure to Mitigate**

**1. Summary of Affirmative Defense**

Mission argues that "Plaintiff is barred from recovery to the extent Plaintiff failed to mitigate damages, if any, with respect to the matters alleged in the Complaint." (DE 11 at 36.) Mission has not articulated the basis or applicability of this theory, so CBB is unaware how Mission intends to rely upon it. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence establishing its claims and that CBB did not fail to mitigate damages, as set forth in Sections II, III.B-F above. Additionally, CBB will offer evidence showing the steps that it took to rescue transactions and customers from Mission's and its co-conspirators' and misconduct, as well as to locate missing information and to stop Mission's conduct through pre-filing communications and otherwise.

**H. <u>Affirmative Defense 12: Conduct Not Unlawful</u>**

**1. Summary of Affirmative Defense**

Mission argues that "[t]he Complaint is barred, in whole or in part, because any alleged conduct of Defendants was not "unlawful," within the meaning of Business and Professions Code § 17200 or otherwise. (DE 11 at 36.) Mission has not articulated the basis or applicability of this theory, so CBB is unaware how Mission intends to rely upon it. This also appears to be simply a defense to CBB's § 17200 claim and not actually an affirmative defense. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence establishing its claims and that Mission's conduct was unlawful, as set forth in Sections II, III.B-G above.

**I. <u>Affirmative Defense 13: Conduct Not Unfair</u>**

**1. Summary of Affirmative Defense**

Mission argues that "[t]he Complaint is barred, in whole or in part, because any alleged conduct of Defendants was not 'unfair,' within the meaning of Business and Professions Code § 17200 or otherwise. The alleged conduct of obtaining new clients and new employees through lawful means is part of Defendant's business operations and consistent with industry norms. Such conduct is consistent with a competitive market and outweighs any harm or impact to Plaintiff." (DE 11 at 36.) Mission has not articulated the basis or applicability of this theory, so CBB is unaware how Mission

intends to rely upon it. This also appears to be simply a defense to CBB's § 17200 claim and not actually an affirmative defense. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence establishing its claims and that Mission's conduct was unfair, as set forth in Sections II, III.B-H above.

**J. <u>Affirmative Defense 14: No Trade Secrets at Issue</u>**

**1. Summary of Affirmative Defense**

Mission argues that "[t]he Complaint is barred, in whole or in part, because the information allegedly misappropriated does not constitute trade secrets." (DE 11 at 36.) This is not a recognized affirmative defense to CBB's claims, particularly its DTSA claim. Nonetheless, to the extent Mission's argument is treated as a "defense," it lacks any merit given that CBB specifically identified numerous legally protectable trade secrets at issue in pre-filing communications, its Complaint, many discovery responses, during depositions, during meet and confers, and in its summary judgment briefing, including by identifying documents containing its trade secrets by bates number, all of which are legally protectable. *See, e.g., US v. Nosal,* 844 F.3d 1024, 1043 (9th Cir. 2016); *Chartwell*, 2019 WL 2177262, at *6 (customer and employee data protectable); *Sun Distrib. v. Corbett*, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018) (customer list protectable); *Henry v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (same); *Extreme v. Spotgenie*, 2013 WL 12081182, at *3 (C.D. Cal. Nov. 22, 2013) (customer list protectable); *Brain Inj. Ass'n of California v. Yari*, 2020 WL 3643482, at *5 (C.D. Cal. Apr. 30, 2020) (citing *MAIv. Peak,* 991 F.2d 511, 521 (9th Cir. 1993) (customer information protectable); *see also Morlife v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997) (same); *Argo v. Pro.*, 2013 WL 11327772, at *3 (C.D. Cal. Dec. 6, 2013) (customer lists protectable). This "defense" is duplicative of affirmative

defenses 2-5. CBB reserves the right to argue that Mission has no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. <u>Key Evidence in Opposition</u>**

CBB will introduce evidence establishing that CBB has legally protectable trade secrets as set forth in Section II above and in its Opposition to the Motion for Summary Judgment. In the interest of efficiency, Plaintiff cross refers to Section II, III.B-I above, which articulates a brief summary of those facts.

**K. <u>Affirmative Defense 16: Adequate Remedy at Law</u>**

**1. Summary of Affirmative Defense**

Mission argues that "Plaintiff is not entitled to injunctive or other equitable relief in this action because it has an adequate remedy at law." (DE 11 at 37.) Mission has not articulated the basis or applicability of this theory, so CBB is unaware how Mission intends to rely upon it. To the extent that Mission argues that CBB is not entitled to an injunction barring it from using, possessing, dissemination CBB's trade secrets as it has no legal entitlement to do so and its continued retention of CBB's property is further evidence of bad faith. The same is true of an injunction sought to compel Mission to return and/or forensically destroy all copies of CBB's property on its systems. CBB reserves its rights to argue that Mission have no right to assert this affirmative defense, or to revise and add to its position as necessary.

**2. Key Evidence in Opposition**

CBB will introduce evidence establishing that CBB is entitled to injunctive and other equitable relief because there is no adequate remedy at law to address certain aspects of the harm caused (and continued to be caused) by Mission's conduct, as discussed in Sections II, III.B-J above.

**IV. <u>ANTICIPATED EVIDENTIARY ISSUES</u>**

In furtherance of an efficient trial, CBB proposed to Mission during the Parties' conference of counsel on pretrial matters that the parties stipulate (1) that most, if not all, of the authenticity of the documents to be used at trial, and (2) that the documents

produced by each side are the business records of the producing party. Mission expressed a willingness to consider both. Subsequently, and in connection with preparing the Joint Exhibit List, neither party has challenged the authenticity of any document included therein. CBB identified a number of documents as business records, only some of which Mission agreed to stipulate to as being business records.

The Parties additionally discussed a potential stipulation to certain facts, and are continuing to consider the issue. CBB anticipates the Parties will be able to stipulate as to at least some relevant facts prior to the beginning of trial.

Plaintiff has stated its intent to file the following motions *in limine* seeking to preclude the following:

- *Motion in Limine No. 1* to Preclude Arguments and Evidence that Lay Witness Testimony Regarding Damages is Improper.
- *Motion in Limine No. 2* to Preclude Arguments, Evidence, and Testimony Regarding the Methodologies, Contents, and Results of any Pre-Filing Investigation Mission Undertook with Respect to CBB's Allegations.
- *Motion in Limine No. 3* to Preclude Introduction of Mission Bank Credit Memos or Eliciting Testimony of the Same.
- *Motion in Limine No. 4* to Preclude Introduction of Evidence Showing Mission Bank Sharing Documents with Competitor Banks or Eliciting Testimony of the Same.
- *Motion in Limine No. 5* to Preclude Introduction of Hearsay Testimony about Whether Plaintiff Approved Certain Loans.

Defendant has stated its intent to file the following motions *in limine* seeking to preclude the following, each of which Plaintiff disagrees with:

- *Motion in Limine No. 1* – Motion to exclude any expert testimony offered by CBB witnesses, including Michael Stain, Daniel Limon, and Steven Cashiola.

- *Motion in Limine No. 2* – Motion to exclude any documents produced by CBB after the close of fact discovery.
- *Motion in Limine No. 3* – Motion to exclude any testimony regarding portions of the errata sheet to the deposition transcript of Michael Stain.
- *Motion in Limine No. 4* – Motion to exclude any evidence or argument regarding the collection, preservation, or production of documents by Mission in this case, including, without limitation, any evidence or argument concerning any purported spoliation or deletion of relevant information by Mission custodians.
- *Motion in Limine No. 5* - Motion to exclude videos or images of Dustin Della leaving CBB's office with his personal belongings on his last day of employment.

The parties intend to oppose each other's motions *in limine*, but may decide to change course as to certain motions depending on how the issues are ultimately framed in each of the motions as filed.

## V. ISSUES OF LAW

CBB contends that the key issues of law within each claim in this action that it has identified so far include the following:

- Whether CBB is entitled to injunctive relief to stop Mission from engaging in the wrongful conduct asserted herein;
- Whether CBB is entitled to injunctive relief to require Mission to return or forensically destroy all of CBB's data, documents, and information currently in its possession, custody, or control;
- Whether CBB is entitled to injunctive relief requiring Mission request and obtain information from third parties to whom it disseminated CBB's data, documents, and information so as to compile an accounting of all third parties who may still have such property;

- Whether Mission is liable to CBB on its fifth claim for unfair competition under § 17200;
- Whether CBB is entitled to relief from Mission on its fifth claim for unfair competition under § 17200;
- Whether CBB's state law claims (claims 2-5) are completely or partially preempted/superseded by the California Uniform Trade Secrets Act—this issue is currently pending before the Court in Mission's Motion for Summary Judgment;
- Whether any of Mission's "affirmative defenses" that it has identified it intends to pursue at trial are actually affirmative defenses;
- Other legal issues as set forth in this brief, including the issues addressed in the claims section and identified in the evidentiary issues.

## VI. BIFURCATION OF ISSUES

CBB does not propose bifurcation, except as to any issues that must be decided by the Court, such as equitable issues discussed below, which should be decided after the jury trial.

## VII. JURY TRIAL

CBB demanded a jury trial in the operative Complaint in this action. The issues of misappropriation of CBB's Trade Secrets, intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic relations and damages are issues to be tried by the jury. CBB's claim for equitable relief in the form of injunctive relief and for Mission's alleged Unfair Competition in Violation of California's Business & Professions Code § 17200 *et seq.* are legal issues for the Court, but any underlying factual determinations on which they are based should be resolved by the jury.

## VIII. DAMAGES, EXEMPLARY DAMAGES, RESTITUTION, AND ATTORNEYS' FEES AND COSTS

CBB seeks compensatory damages, including in the form of its lost revenue and profits as a result of Mission's conduct and, as to any harm not already addressed by such relief, seeks to recover Mission's revenue and profits resulting from its wrongful conduct. CBB seeks relief in the form of disgorgement and restitution, to the extent not already covered by the foregoing damages. CBB also seeks exemplary damages under 18 U.S. Code § 1836(b)(3)(C) due to Mission's willful and malicious conduct, as evidenced by *inter alia* its decision to continue to engage in its wrongful conduct after receiving repeated and specific notice from CBB of its allegations. CBB seeks its attorneys' fees and costs pursuant to 18 U.S. Code § 1836(b)(3)(D) and Federal Rule of Civil Procedure 54(d), which awards attorneys' fees where a trade secret was willfully and maliciously misappropriated.

Dated: September 27, 2024

**K&L GATES LLP**

By: */s/ Christina N. Goodrich*
Christina N. Goodrich
Ryan Q. Keech
Zachary T. Timm
Connor J. Meggs
Katherine M. Ramos

*Attorneys for Plaintiff Citizens Business Bank*