Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Jonathan E. Phillips (SBN 233965)
jphillips@larsonllp.com
Catherine S. Owens (SBN 307626)
cowens@larsonllp.com
Tyler J. Franklin (SBN 324281)
tfranklin@larsonllp.com
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Attorneys for
Defendant MISSION BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANT MISSION BANK'S OPPOSITION TO PLAINTIFF CITIZENS BUSINESS BANK'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE ARGUMENTS AND EVIDENCE THAT LAY WITNESS TESTIMONY REGARDING DAMAGES IS IMPROPER**<br><br>[*Filed concurrently with Declaration of Catherine S. Owens*]<br><br>Date:    October 25, 2024<br>Time:    1:00 p.m.<br>Crtrm.:  6B<br><br>Trial Date:    November 12, 2024 |

## I. INTRODUCTION

Plaintiff Citizens Business Bank ("CBB") did not designate any expert witnesses. Defendant Mission Bank ("Mission") filed its Motion *in Limine* No. 1 (Dkt. No. 154) seeking to preclude CBB's lay witness, Daniel Limon, from offering at trial certain opinions that constitute improper expert testimony.[1] CBB responded by filing this Motion *in Limine* No. 1 seeking to "preclude arguments and evidence that lay witness testimony regarding damages is improper." Dkt. No. 161 at 2.[2] The Court should deny CBB's motion for multiple reasons.

*First*, CBB's motion fails to meet the requirements under the Federal Rules of Civil Procedure that motions "state with particularity the grounds for seeking the order" that is requested. Fed. R. Civ. P. 7(b)(1)(B). CBB does not articulate what specific evidence it is seeking to exclude. Instead, CBB's motion seeks a court order that simply asks the parties to comply with well-established rules of evidence. That is grounds for denying the motion.

*Second*, contrary to CBB's accusations and bluster, Mission has no intention of arguing that CBB was required to retain an expert or present expert testimony in support of its alleged damages or damages calculations. Mission acknowledges that lay witnesses may testify as to lost profits and damages to the extent such testimony is based on their personal knowledge. As discussed in Mission's Motion *in Limine* No. 1, Mission only seeks to exclude Daniel Limon, a lay witness, from offering certain improper *expert* opinions. Mission does not seek to exclude proper lay witness testimony about CBB's alleged lost profits.

*Finally*, CBB's motion is a disguised request for a gag order that seeks to prevent Mission from making an argument to the jury that CBB did not meet its

---

[1] Mission will not repeat all the arguments in its Motion *in Limine* No. 1, but does refer the Court to its Motion, which is Dkt. No. 154 in the Court's docket.
[2] CBB did not paginate its motion. *See* L.R. 11-3.3. Accordingly, Mission cites to the PDF page numbers of CBB's motion.

burden of proof. This would prevent Mission from being allowed to fully litigate the issues at hand, one of which is whether CBB suffered any damages and, if so, in what amount.

## II. ARGUMENT

### A. CBB's Motion Fails to Comply with Federal Rule of Civil Procedure 7(b)(1)

CBB's motion fails to meet the requirement under the Federal Rules of Civil Procedure that motions "state with particularity the grounds for seeking the order" that is requested. Fed. R. Civ. P. 7(b)(1)(B).[3] With regard to motions *in limine* specifically, such motions "must identify the evidence at issue and state with specificity why such evidence is inadmissible." *U.S.A. v. Lewis*, 493 F. Supp. 3d 858, 861 (C.D. Cal. 2020). "The 'failure to specify the evidence' that a motion *in limine* 'seek[s] to exclude constitutes a sufficient basis upon which to deny th[e] motion.'" *Id.*

Here, CBB fails to identify with particularity any specific argument or evidence that it seeks to exclude. Implicit in CBB's motion is the assumption that Mission will act improperly by invoking arguments contrary to the law. Dkt. No. 161 at 5 ("As a preliminary matter, Mission should be precluded from making arguments before the jury that are contrary to law…"). However, there has been no indication that Mission is planning to make improper arguments or arguments contrary to the law at trial. Not surprisingly, then, CBB fails to identify any specific piece of anticipated evidence or argument from Mission that would justify such a motion.

By definition, a motion *in limine* must address something "certain." Indeed, a motion *in limine* is "a pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary 8th edition, Garner 2004.

---

[3] All internal citations are omitted and emphasis added.

1 CBB's motion, however, addresses the generality that Mission's counsel may
2 possibly use improper litigation tactics to exclude or rebut certain testimony and/or
3 argue to the jury during closing arguments that certain testimony should be
4 disregarded. Yet, nowhere in its motion does CBB identify a single piece of **actual**
5 **evidence** that it seeks to prevent Mission from challenging. Furthermore, CBB does
6 not even bother to include the deposition testimony in question from its own witness
7 that it believes Mission will challenge, or even cite the page and line numbers where
8 the testimony may be found. Nor does CBB include the documents it refers to as
9 exhibits or cite to a particular bates numbered document. The relief requested is
10 phrased in such a vague and overly broad manner that it could embrace a great deal
11 of evidence that Mission might properly challenge. *See, e.g.*, Dkt. No. 161 at 4
12 ("Thus, any argument regarding CBB's ability to prove its damages through lay
13 testimony must be precluded.").

14     Following CBB's position to its logical conclusion, any argument or question
15 regarding CBB's damages and burden of proof could therefore be perceived by CBB
16 as improper—simply because it was introduced by lay witnesses—thereby making it
17 impossible for Mission to present its case in a way that would not violate the
18 moving target of CBB's subjective construct.

19     **B.**     **Mission Does Not Intend to Argue to the Jury that CBB was**
20         **Required to Retain a Damages Expert**

21     CBB oversimplifies and generalizes the rules regarding testimony and
22 damages. Mission does not contend that CBB was required to retain a damages
23 expert to establish damages, "though that would…[make] the jury's task easier."
24 *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1223 (9th Cir. 2010). Mission
25 acknowledges that a lay witness *may* provide testimony "based on a combination of
26 their personal observations of the subject matter at issue and skills, knowledge, or
27 experience obtained through their vocation," and that such testimony *may* be
28 allowed to establish damages in certain situations. *Encompass Ins. Co. v. Berger*,

No. 2:12-cv-08294-MWF-PJW, 2013 WL 12124281, at *3 (C.D. Cal. Dec. 10, 2013). Indeed, CBB's authority explicitly states that "[i]n some cases, expert testimony is required to ensure that the jury is not left to speculation or guesswork in determining the amount of damages to award." *spinTouch, Inc. v. Outform, Inc.*, No. 8:21-cv-00840-DOC-ADS, 2022 WL 4596691, at *4 (internal quotations omitted). Thus, Mission does not have any objections to CBB's lay witnesses providing lay witness testimony establishing that CBB may have incurred damages, including lost profits, **based on their personal knowledge**. However, this does not allow CBB to circumvent the Federal Rules of Evidence and permit lay witnesses to testify to any matter regarding damages they so choose.

As set forth in Mission's Motion *in Limine* No. 1, Federal Rule of Evidence 701 specifically provides that a lay witness cannot provide testimony based on scientific, technical, or otherwise specialized kowledge. This "prevent[s] parties from evading the reliability of the requirements set forth in Federal Rule of Evidence 702 by proffering expert testimony under the guise of lay witness testimony." *Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 887 (C.D. Cal. 2006); Fed. R. Evid. 701 advisory committee's note to 2000 amendment. "[T]his amendment is meant to prevent non-experts from testifying using 'a process of reasoning which can be mastered only by specialists in the field.'" *Los Angeles Times Commc'ns*, 442 F. Supp. 2d. at 887 (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendment). Instead, lay witnesses should employ a "process of reasoning familiar in everyday life." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Therefore, to the extent CBB's lay witness testimony crosses over into the realm of expert testimony, the Court should deny CBB's motion and allow Mission to properly make such objections at trial.

1. Mission May Argue That Lay Witness Testimony be Limited to the Witnesses' Personal Knowledge

As discussed above, Mission does not contend that CBB's lay witnesses may

not provide testimony regarding CBB's damages **to the extent they have personal knowledge of the facts**.[4] Mission only argues that CBB cannot use lay witnesses to provide expert testimony as contemplated by Federal Rule of Evidence 702.

It is true that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. This limited testimony is permitted because the witness has "particularized knowledge…by virtue of his or her position in the business." *Id.* However, there is a clear distinction between this type of lay testimony based on personal knowledge, and the type of "lay testimony" Mission anticipates CBB's lay witnesses will attempt to offer. In fact, CBB's cited cases note this very distinction. These cases allow lay witness testimony regarding whether the party incurred damages and what those damages are, but do not allow a lay witness to offer testimony regarding detailed methodology used to calculate damage based on specialized knowledge and information from sources other than the witness's personal knowledge.

As CBB's authorities acknowledge, "quantifying the amount of damages…will require some level of specialized knowledge." *Encompass*, 2013 WL 12124281, at *4. The lay witness in *Encompass*, which CBB cites in support of its motion, was allowed to testify because "[n]o fact witnesses [were] asked to provide detailed, extensive knowledge of legal damages issues. The testimony [was] highly fact bound, **focusing on whether damage exists and, if so, what it could cost to fix it**. Such conclusions are 'common enough' among those with relevant experience and 'require such a limited amount of expertise.'" *Id*. This is not the case here. *See*

---

[4] If CBB intends to offer lay witness testimony to this extent, the witness(es) "must be qualified based on their experience to render their opinion but are not technically expert witnesses." *Encompass Ins.*, 2013 WL 12124281, at *3.

Dkt. No. 154 (Mission's Motion *in Limine* No. 1).

Likewise, in *United States v. Lindsey*, 680 F.App'x 563, 566 (9th Cir. 2017), another case CBB cites, the defendant was unable to offer any "explanation for why the witness' testimony, which was based on their personal observations while working for the lenders—rather than on scientific, technical, or specialized knowledge—did not qualify as lay testimony." Dkt. No. 161 at 6-7. Here, Mission can show—and has shown in its Motion *in Limine* No. 1—why CBB's purported lay witness testimony, specifically Limon's testimony, does not qualify as lay testimony.

### 2. Limon's Testimony Regarding Methodology Exceeds the Scope Permitted for Lay Witnesses

Since CBB's motion is overbroad and fails to cite any specific testimony it contends will be at issue, Mission is forced to guess as to which testimony CBB is addressing. Limon's testimony regarding the methodology used to calculate CBB's damages exceeds the scope permitted under Federal Rule of Evidence 701 and governing case law because it is based on "extensive knowledge of legal damages issues." *Id.*; Declaration of Catherine S. Owens ("Owens Decl."), ¶ 5, Ex. A ¶¶ 16-32. As reflected in his declaration, Limon will testify that he "worked with CBB's finance team to define and establish the methodology to calculate the damages" and "[i]n assessing damages, [he] employed the transfer pricing methodology, which calculates the net interest income loss associated with each loan and deposit." Owens Decl., ¶ 5, Ex. A ¶ 20. This "[t]ransfer pricing is [a] widely used methodology that banks use to determine the profitability of a specific loan or a deposit." *Id.* Limon will also testify that he "analyzed the damages associated with the net interest income loss associated from demand deposit accounts" and that "[t]o determine the net interest income lost, [he] utilized a deposit study conducted with a third-party consultant…[that] was completed as part of the bank's ordinary operations." *Id.* at ¶ 21. This type of methodology development, analysis, and

reliance upon studies and third-party consultants clearly takes Limon's testimony into the realm of expert testimony. *See* Fed. R. Evid. 702.

CBB's reliance on *Milton H. Greene Archives, Inc. v. Julien's Auction House LLC* is misplaced. In *Milton*, the lay witness's testimony on the valuation of auction items was permitted because (1) it was part of her regular job duties; (2) based on her personal knowledge; and (3) would be helpful to the jury. 345 Fed.Appx. 244, 247 (9th Cir. 2009). The lay witness was also allowed to testify as to a chart that "*she prepared*." *Id*. Unlike in *Milton*, Limon's declaration makes clear that his damages opinions are based on the knowledge of other witnesses, based on specialized knowledge, and are not straightforward.

For instance, in paragraph 17 of Limon's declaration, he testifies that he "worked with CBB's sales team at the Porterville Branch, as well as Michael Stain and Steven Cashiola, to identify the CBB customer relationships at issue" and that "**Steven Cashiola provided [him] with information** and documents, which are maintained in the ordinary course of business in CBB's core system (including in Navigator), regarding certain customers that CBB lost accounts for." *Id.* at ¶ 17. This is confirmed by Cashiola, who also submitted a declaration in opposition to Mission's motion for summary judgment. Cashiola testified that he "assisted Mr. Limon in preparing this document [i.e., the damages spreadsheet] **by providing [Limon] certain information regarding certain lost CBB customers,** including their name, loan number, loan category, departure date, interest rate type, the rate reset frequency, the original or estimated loan amount, and the coupon rate." Dkt. No. 111-7 at ¶ 32.

But Cashiola was not the only person that provided Limon information necessary to conduct the damages analysis. Limon also stated in his declaration that he **"worked with CBB's finance team** to define and establish the methodology to calculate the damages," Owens Decl., ¶ 5, Ex. A at ¶ 20, and that he conducted "[a] review of documents within the loan files and documents prepared by CBB's credit

team as well as systems populated by [CBB's] operations team…in validating the data underlying [his] damages assessment." *Id.* at ¶ 26. Further, in terms of CBB's purported damages as to demand deposit accounts and money market accounts, Limon stated that he "utilized a deposit study conducted **with a third-party consultant**." *Id.* at ¶¶ 21-22. Limon's testimony is thus not based on his personal knowledge and is not a "process of reasoning familiar in everyday life [to lay witnesses]." Fed. R. Evid. 701 advisory committee's note to 2000 amendment.

In short, it is evident that Limon conducted an analysis of CBB's damages utilizing specialized knowledge that is properly within the purview of Federal Rule of Evidence 702, and thus does not qualify as lay testimony.

### C. Arguments Regarding CBB's Burden of Proof and Damages Is Not Unfairly Prejudicial Under Federal Rule of Evidence 403

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Here, the arguments CBB contends Mission should be excluded from making are not unfairly prejudicial. "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee notes to 1972 proposed rules.

Mission has no intention of straying from acceptable standards for conducting itself at trial and should be allowed to advocate for its case and present its defenses. Counsel are provided considerable liberty in making closing arguments that embrace reasonable inferences from the evidence presented at trial. *U.S. v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997). It is not improper argument to remind the jury, or even to implore to the jury, that a party has not met its burden of proof. In fact, that is the essence of jury trials.

In addressing the jury, Mission will not request that the jurors find that CBB did not meet its burden of proof regarding damages *because* CBB did not retain an

expert. However, Mission *is* allowed to argue that CBB did not meet its burden of proof regarding damages because CBB's lay witness testimony does not support such a finding, and is not as credible as Mission's witness's testimony. It is then for the jury to decide whether CBB met its burden and weigh the credibility of the evidence presented. *Roach v. Hulings*, 41 U.S. 319, 10 L. Ed. 979 (1842) ("decisions on the weight of the evidence belong exclusively to the jury…"). CBB cannot circumvent the foundation of a jury trial by having its damages issue decided *in limine*. This is not the type of argument that Federal Rule of Evidence 403 contemplates being excluded. If it was, any argument not in support of an opposing party's position would be prohibited, and there would be no need for trials. Mission should not be prevented from presenting its full defense because CBB chose not to retain an expert.

### III. CONCLUSION

For the foregoing reasons, the Court should deny CBB's Motion in *Limine* No. 1. Mission does not seek to argue that CBB was required to retain a damages expert, and Mission does not seek to exclude proper lay witness testimony. Mission only argues, as set forth in its Motion in Limine No. 1 (Dkt. No. 154), that Daniel Limon's lay witness testimony exceeds the scope permitted by Rule 701.

Dated: October 11, 2024          LARSON LLP

By: /s/ Stephen G. Larson
Stephen G. Larson
Jonathan E. Phillips
Catherine S. Owens
Tyler J. Franklin
Attorneys for Defendant MISSION BANK