**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Ryan Q. Keech (SBN 280306)
ryan.keech@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
Katy Ramos
katy.ramos@klgates.com

*Attorneys for Plaintiff*
*CITIZENS BUSINESS BANK*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CITIZENS BUSINESS BANK, a California banking corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MISSION BANK, a California corporation and DOES 1 through 10, inclusive,<br><br>　　　　　Defendant. | Case No. 5:22-cv-01473-FLA-SP<br><br>**[PROPOSED] PRETRIAL CONFERENCE ORDER**<br><br>Trial Date:　　November 12, 2024<br>Time:　　　　 8:30 a.m.<br>Courtroom:　　6B |

**PRETRIAL CONFERENCE ORDER**

1

# TABLE OF CONTENTS

I.    THE PARTIES AND PLEADINGS ............................................................ 2

II.   JURISDICTION ............................................................................................ 2

III.  TRIAL DURATION ..................................................................................... 2

IV.   JURY TRIAL ................................................................................................ 2

V.    ADMITTED FACTS ..................................................................................... 3

VI.   STIPULATED FACTS .................................................................................. 6

VII.  PARTIES' CLAIMS AND DEFENSES ...................................................... 7

VIII. REMAINING TRIABLE ISSUES ............................................................. 26

IX.   DISCOVERY ............................................................................................... 28

X.    DISCLOSURES AND EXHIBIT LIST ...................................................... 28

XI.   WITNESS LISTS ........................................................................................ 28

XII.  MOTIONS *IN LIMINE* .............................................................................. 28

XIII. BIFURCATION ........................................................................................... 30

XIV.  ADMISSIONS ............................................................................................. 30

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRETRIAL CONFERENCE ORDER**

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED: [1]

## I.    THE PARTIES AND PLEADINGS

The parties remaining in this case are the same as indicated in the operative Complaint (DE 1): Plaintiff Citizens Business Bank ("Plaintiff" or "CBB") and Defendant Mission Bank ("Defendant" or "Mission").  The Court has not dismissed any claims from CBB's Complaint nor has CBB voluntarily withdrawn any such claims.  Mission has not amended its operative Answer (DE 11), but has informed CBB that it will not be pursuing the following affirmative defenses at trial: (1) Affirmative Defense 1: No Subject Matter Jurisdiction, (2) Affirmative Defense 7: Unclean Hands, (3) Affirmative Defense 8: Latches, Waiver, and/or Estoppel, (4) Affirmative Defense 9: Consent/Ratification, (5) Affirmative Defense 11: Offset/Reduction, and (6) Affirmative Defense 14: No Trade Secrets at Issue.

## II.    JURISDICTION

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. §§ 1331, 1367, and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b), (d)(1).

## III.    TRIAL DURATION

The trial is estimated to take 20 days.

## IV.    JURY TRIAL

The trial is to be by jury.

---

[1] Plaintiff Citizens Business Bank ("Plaintiff" or "CBB"); Defendant Mission Bank ("Defendant" or "Mission"); Dustin Della ("Della"), collectively with Lori Carabay, Angie Dempsie, Armidelia, Dave Brett, Diania Pimentel, Ericka Melo, Jorge Espinoza, Patricia Palacios, and Virgina Hopper (the "Former CBB Employees").

2

**PRETRIAL CONFERENCE ORDER**

Plaintiff and Defendant shall serve and file "Unopposed/Agreed Upon Set of Jury Instructions and Verdict Forms" as well as the "Joint Statement re: Disputed Instructions and Verdicts" by no later than October 11, 2024.

The parties will continue to meet and confer on the disputed jury instructions, disputed verdict forms, and the proposed Pretrial Conference Order (including but not limited to the statement of issues) in an effort to find additional common ground so as to streamline both the Pretrial Conference and Trial. If the parties are able to reach agreement on any additional issues, they will notify the Court of such agreement in an amended Proposed Pretrial Conference Order, amended Joint Agreed Upon Jury Instructions, amended Joint Agreed Upon Verdict forms, and/or any other pretrial filing.

## V.    ADMITTED FACTS

The following facts are admitted and require no proof, without prejudice to any evidentiary objections:[2]

1.    Mission admits that it received demand letters from CBB's general counsel and outside counsel. (DE 11 ¶6; *see* DE 1 ¶6);

2.    Mission admits that its July 29, 2022 quarterly earnings press release stated that "Dustin Della and his superstar team in Visalia, California have already funded nearly $50 million of loans since joining us in March!" (DE 11 ¶¶7, 209; *see* DE 1 ¶¶7, 209);

3.    Mission admits that CBB announced an agreement to acquire Suncrest in the summer of 2021. (DE 11 ¶9; *see* DE 1 ¶9);

4.    Mission admits that it extended an offer for a position as a Mission employee to Katrina Puerner. (DE 11 ¶19; *see* DE 1 ¶19);

---

[2] Reference is made to the source of the admission after each statement, namely the Answer (DE 11), followed by a "see" cite to the Complaint for context.

3

**PRETRIAL CONFERENCE ORDER**

5.      Mission admits that it hired Lori Carabay, Angie Dempsie, Dave Brett, Dianis Pimentel, Jorge Espinoza, Ericka Melo, Virginia Hopper, Armidelia Avila, and Patricia Palacios. (DE 11 ¶20; *see* DE 1 ¶20);

6.      Mission admits that CBB sent cease-and-desist letters to Mission before CBB filed the Complaint.  (DE 11 ¶¶23, 199; *see* DE 1 ¶¶23, 199);

7.      Mission admits that CBB is a California banking corporation founded in 1974, with its principal place of business at 701 N. Haven Ave., Ontario, California 91764. CBB is the wholly-owned banking subsidiary of CVB Financial Corp., a NASDAQ-listed California bank holding company.  (DE 11 ¶26; *see* DE 1 ¶26);

8.      Mission admits that it is a regional bank originally founded in 1998 in Bakersfield California, which focuses on the banking needs of local businesses. Mission is a California corporation with a principal place of business at 1430 Truxton Ave, Suite 130, Bakersfield, California 93301. Mission also has offices in, *inter alia*, Los Angeles County including in Lancaster, California. Mission can be served via its registered agent for service of process, Sheldon D.C. Ralph, at 1430 Truxton Ave, Suite 130, Bakersfield California 93302.  (DE 11 ¶27; *see* DE 1 ¶27);

9.      Mission admits that in July 2021, CBB and Suncrest announced an agreement for CBB to acquire Suncrest, whereby Suncrest would be merged with and into CBB.  (DE 11 ¶55; *see* DE 1 ¶55);

10.      Mission admits that on January 7, 2022, CBB announced the completion of its merger with Suncrest.  (DE 11 ¶58; *see* DE 1 ¶58);

11.      Mission admits that, before the Complaint was filed, CBB made available to counsel for Mission the actual names of the clients alleged in this Complaint (identified therein as Clients A-O) pursuant to a confidentiality agreement.  (DE 11 fn. 3; *see* DE 1 fn. 3);

12.      With respect to Client B, Mission admits that it explained in a March 31, 2022 letter that the individual at Chicago Title responsible for placing the title insurance left during the middle of the transaction and further admits that it confirmed

4

**PRETRIAL CONFERENCE ORDER**

in a June 7, 2022 letter that any delay was caused by this departure.  (DE 11 ¶103; *see* DE 1 ¶103);

13.     Mission admits that it recorded a Deed of Trust for Client D on April 29, 2022.  (DE 11 ¶117; *see* DE 1 ¶117);

14.     Mission admits that Mission closed a loan for Client E.  (DE 11 ¶121; *see* DE 1 ¶121);

15.     Mission admits that it recorded a Deed of Trust for Client E on March 16, 2022.  (DE 11 ¶124; *see* DE 1 ¶124);

16.     Mission admits that it ordered an appraisal for Client F on or around March 4, 2022. (DE 11 ¶129; *see* DE 1 ¶129);

17.     Mission admits that it recorded Deeds of Trust for Client H on April 20, 2022. (DE 11 ¶142; *see* DE 1 ¶142);

18.     Mission admits that Clients I and J are Mission Bank clients. (DE 11 ¶144; *see* DE 1 ¶144);

19.     Mission admits that Mission Bank issued a check to Client N on or about May 12, 2022. (DE 11 ¶180; *see* DE 1 ¶180);

20.     Mission admits that it sent an offer letter to Puerner. (DE 11 ¶193; *see* DE 1 ¶193);

21.     Mission admits that on March 25, 2022, CBB's General Counsel sent a letter to Mission, Della, and Bryan Easterly. (DE 11 ¶200; *see* DE 1 ¶200);

22.     Mission admits that Exhibit 1 to the Complaint is a copy of the March 25, 2022 letter from CBB to Mission and Della with attachments.  (DE 11 ¶201; *see* DE 1 ¶201);

23.     Mission admits that on April 29, 2022, CBB sent Mission's outside counsel a letter. Mission admits that Exhibit 2 to the Complaint is a partially redacted copy of the April 29, 2022 letter.  (DE 11 ¶202; *see* DE 1 ¶202);

**PRETRIAL CONFERENCE ORDER**

24.    Mission admits that CBB's outside counsel sent an email to Mission's outside counsel on May 17, 2022. Mission admits that Exhibit 3 to the Complaint is a partially redacted copy of the May 17, 2022 email.  (DE 11 ¶203; *see* DE 1 ¶203);

25.    Mission admits that on May 25, 2022, CBB's CEO sent an email to Mission's CEO. Mission admits that Exhibit 4 to the Complaint is a partially redacted copy of the May 25, 2022 email.  (DE 11 ¶204; *see* DE 1 ¶204);

26.    Mission admits that it retained separate outside counsel, and further admits that Mission's outside counsel contacted CBB's outside counsel on May 27, 2022. Mission admits that CBB's outside counsel sent Mission's new outside counsel an email on June 1, 2022. Misson admits that Exhibit 5 to the Complaint is a partially redacted copy of the June 1, 2022 email.  (DE 11 ¶205; *see* DE 1 ¶205);

27.    Mission admits that after the June 1, 2022 email, CBB's and Mission's outside counsel conducted telephone conferences and Mission sent a written letter to CBB on June 7, 2022. Mission admits that CBB sent Mission a letter on August 5, 2022. Mission admits that Exhibit 6 to the Complaint is a partially redacted copy of the August 5, 2022 letter.  (DE 11 ¶206; *see* DE 1 ¶206);

28.    Mission admits that on March 25, 2022, CBB's General Counsel sent a letter to Mission and Della. Mission further admits that CBB and Mission engaged in telephonic and written communications, including written correspondence dated April 29, 2022, May 17, 2022, May 25, 2022, June 1, 2022, and August 5, 2022. (DE 11 ¶235; *see* DE 1 ¶235);

## VI.   STIPULATED FACTS

The following facts, though stipulated, shall be without prejudice to any evidentiary objections:

The dates of employment of the CBB Former Employees at Mission.

The date that the CBB Suncrest merger closed and was announced.

## VII.  PARTIES' CLAIMS AND DEFENSES

**Plaintiff's Claims:**[3]

(a)    Plaintiff plans to pursue the following claims against Defendant:

**Claim 1: Misappropriation of Trade Secrets (18 U.S.C. § 1836)**

**Claim 2: Intentional Interference with Contractual Relations**

**Claim 3: Intentional Interference with Prospective Economic Advantage**

**Claim 4: Negligent Interference with Prospective Economic Relations**

**Claim 5: Violation of California Unfair Competition Law (Cal. Civ. Code §§ 17200, *et seq.*)**

(b)    The elements required to establish Plaintiff's claims are:

**Claim 1: Misappropriation of Trade Secrets (18 U.S.C. § 1836)**

1. CBB possessed trade secrets;

2. CBB has taken reasonable measures to keep such information secret;

3. The trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person;

4. Defendant and/or one or more of its co-conspirators misappropriated the trade secrets;

5. CBB was harmed; and

6. Defendant's and/or one or more of its co-conspirator's misappropriation was a cause of CBB's harm.

18 U.S.C. § 1832, 1836; *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–61 (9th Cir. 2020).

Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for

---

[3] Defendant has not agreed to the content of this Section, including but not limited to the elements, applicable law, and key facts/evidence. The parties will continue to meet and confer to find common ground on the content of their respective sections and file an amended Proposed Pretrial Conference Order, as appropriate.

**PRETRIAL CONFERENCE ORDER**

this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). The same is true under federal law.

### Claim 2: Intentional Interference with Contractual Relations

1. That there was a contract between CBB and one of more of its customer(s)—and/or between CBB and one or more of its employee(s);

2. That Mission and/or one or more of its co-conspirators knew of the contract(s), including that it may have had constructive knowledge of the contract through its co-conspirator(s), including but not limited to Della;

3. That Mission's and/or one or more of its co-conspirators conduct prevented performance or made performance more expensive or difficult;

4. That Mission and/or one or more of its co-conspirators intended to disrupt the performance of the contract(s), or knew that disruption of performance was certain or substantially certain to occur following Mission's and/or one or more of its co-conspirator's conduct;

5. That CBB was harmed; and

6. That Mission's and/or one or more of its co-conspirator's conduct was a substantial factor in causing CBB's harm.

*Pac. Gas & Elec, Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1125–30 (Cal. 1990); Judicial Council of California Civil Jury Instructions (2024 edition) No. 2201. *Intentional Interference with Contractual Relations*.

Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for

8

**PRETRIAL CONFERENCE ORDER**

this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). The same is true under federal law.

### Claim 3: Intentional Interference with Prospective Economic Advantage

1. That CBB and one of more of its customers—and/or between CBB and one or more of its employees were in an economic relationship that probably would have resulted in an economic benefit to CBB;

2. That Mission and/or one or more of its co-conspirators knew of the relationship(s), including that it may have had constructive knowledge of the relationship(s) through its co-conspirator(s), including but not limited to Della;

3. That Mission and/or one or more of its co-conspirators engaged in wrongful conduct including but not limited to violating federal and state statutes, including but not limited to 18 U.S.C. § 1836, et seq for misappropriation of trade secrets and California Business & Professions Code § 17200, et seq for unfair and unlawful business practices, banking regulations, CBB policies and/or procedures, duties, and contracts—in order to interfere with the prospective economic relationships between CBB and its customers and prospective customers—and/or between CBB and one or more of its employees;

4. That by engaging in this conduct, Mission and/or one or more of its co-conspirators intended to disrupt the relationship(s), or knew that disruption of the relationship(s) was certain or substantially certain to occur;

5. That the relationship(s) was disrupted;

6. That CBB was harmed; and

7. That Mission's conduct and/or the conduct of one or more of its co-conspirators was a substantial factor in causing CBB's harm.

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–66 (Cal. 2003); *Pac. Gas & Elec. Co. v. Bear Stearns & Co*., 50 Cal. 3d 1118, 1126 (1990); Judicial Council of California Civil Jury Instructions (2024 edition) No. 2202. *Intentional Interference with Prospective Economic Relations*.

Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995).  The same is true under federal law.

### Claim 4: Negligent Interference with Prospective Economic Relations

1. That CBB and one of more of its customers—and/or between CBB and one or more of its employees were in an economic relationship that probably would have resulted in a future economic benefit to CBB;

2. That Mission and/or one or more of its co-conspirators knew or should have known of these relationships, including that it may have had constructive knowledge of the relationships through its co-conspirator(s), including but not limited to Della;

3. That Mission and/or one or more of its co-conspirators knew or should have known that these relationships would be disrupted if it failed to act with reasonable care;

**PRETRIAL CONFERENCE ORDER**

4. That Mission and/or one or more of its co-conspirators failed to act with reasonable care;

5. That Mission and/or one or more of its co-conspirators engaged in wrongful conduct including but not limited to violating federal and state statutes, including but not limited to 18 U.S.C. § 1836, et seq for misappropriation of trade secrets and California Business & Professions Code § 17200, et seq for unfair and unlawful business practices, banking regulations, CBB policies and/or procedures, duties, and contracts—in order to interfere with the prospective economic relationships between CBB and its customers and prospective customers—and/or between CBB and one or more of its employees;

6. That the relationships were disrupted;

7. That CBB was harmed; and

8. That Mission's and/or one or more of its co-conspirator's wrongful conduct was a substantial factor in causing CBB's harm.

*Hot Focus Inc. v. Best Accessory Grp.*, 2022 WL 17078942, at *4 (C.D. Cal. Aug. 30, 2022); *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1077–80 (2007); Judicial Council of California Civil Jury Instructions (2024 edition) No. 2204. *Negligent Interference with Prospective Economic Relations*.

Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995).  The same is true under federal law.

**PRETRIAL CONFERENCE ORDER**

## Claim 5: Violation of California Unfair Competition Law (Cal. Civ. Code §§ 17200, *et seq.*)

1.  Defendant and/or one or more of its co-conspirators committed unlawful and/or unfair acts in misappropriating CBB's Trade Secrets, intentionally interfering with contractual relations, intentionally interfering with prospective economic advantage, and/or negligently interfering with prospective economic relations; and

    a.  Mission's and/or one or more of its co-conspirator's acts constituted unlawful business practices; and

    b.  Mission's and/or one or more of its co-conspirator's acts constituted unfair business practices because they offended public policy, threatened and/or harmed competition, and/or were immoral, unethical, oppressive, or unscrupulous; and

2.  CBB suffered economic harm and lost money and/or property;

3.  Mission's and/or one or more of its co-conspirator's unlawful and/or unfair conduct caused such economic harm to CBB; and

4.  Injunctive relief is an appropriate remedy to compensate CBB for harm caused by Mission and/or one or more of its co-conspirators as to conduct not otherwise compensable by monetary damages and, as to certain conduct, injunctive relief ordering the return or forensic destruction of all copies of CBB's property and an injunction preventing any further dissemination or use is the only way to ensure that Mission's conduct stops.

*Foremost Grps., Inc. v. Ayers Bath USA Corp.*, 2012 WL 13012450, at *6–7 (C.D. Cal. May 7, 2012); *Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*, 2011 WL 13135282, at *3 (C.D. Cal. Jan. 3, 2011); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 178–88 (Cal. 1999).

Additionally, by virtue of entering into a conspiracy with Della and others, Mission is liable for the acts of its co-conspirators, which also establish liability for

12

**PRETRIAL CONFERENCE ORDER**

this claim. *See, e.g.*, *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 145 Cal.Rptr. 778, 780 (1978) (civil conspiracy where two or more people who agree to engage in an unlawful act). Civil conspiracy is not a separate claim, but a method for imposing liability on claims, where the following elements are met: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995).  The same is true under federal law.

(c)    The key evidence Plaintiff relies on for each claim is:

**Claim 1: Misappropriation of Trade Secrets (18 U.S.C. § 1836)**

- Testimony and evidence showing that CBB possessed Trade Secrets, including but not limited to its credit memos, loan policies, pipeline compilation information and report, ppp loan report, promo rate report, customer compilation data, and other highly sensitive information;

- Testimony and evidence showing that CBB derived economic value from its Trade Secrets;

- Testimony and evidence showing that CBB has taken significant measures to maintain the secrecy of its Trade Secrets, including through its confidentiality agreements with Della and the Former CBB Employees, its employment policies, surveillance, and password protected access;

- Testimony and evidence showing that Della and the Former CBB Employees were employees of CBB and owed CBB contractual obligations to keep confidential CBB's Trade Secrets;

- Testimony and evidence showing that Della and certain Former CBB Employees had access to CBB's Trade Secrets;

- Testimony and evidence showing that Mission was aware that CBB's Trade Secrets were confidential;

13

**PRETRIAL CONFERENCE ORDER**

- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to misappropriate CBB's Trade Secrets;
- Testimony and evidence showing that Mission and its co-conspirators solicited Della and the Former CBB Employees for their knowledge of and access to CBB's Trade Secrets in order to acquire CBB's Trade Secrets;
- Testimony and evidence showing that Della and certain Former CBB Employees took CBB's Trade Secrets and shared them with Mission for Mission's benefit and as part of the conspiracy;
- Testimony and evidence showing that Mission's misappropriation of CBB's Trade Secrets was willful and malicious;
- Testimony and evidence showing that Mission, Della, and certain Former CBB Employees solicited CBB's clients on Misson's behalf, including during their employment at CBB;
- Testimony and evidence showing that Mission and its co-conspirators used CBB's Trade Secrets; and
- Testimony and evidence showing that CBB suffered damages as a result of Mission's (and its co-conspirators') misappropriation of its Trade Secrets.

**Claim 2: Intentional Interference with Contractual Relations**

- Testimony and evidence showing that CBB had valid contracts with its clients;[4]
- Testimony and evidence showing that CBB had valid contracts with its at-will employees, including Della and the other Former CBB Employees;

---

[4] The terms customers and clients are used interchangeably.

14

**PRETRIAL CONFERENCE ORDER**

- Testimony and evidence showing that Mission was aware of the contracts CBB had with its clients and with its employees;

- Testimony and evidence showing that Mission intentionally solicited CBB's employees and clients;

- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its clients and customers;

- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its employees;

- Testimony and evidence showing that Mission knowingly and willfully induced Della and the other Former CBB Employees to violate their contractual and other duties to CBB;

- Testimony and evidence showing that Della and the other Former CBB Employees knowingly and willfully violated their contractual and other duties to CBB;

- Testimony and evidence showing that Mission intentionally interfered with the contractual relationships between CBB and its clients and at-will employees;

- Testimony and evidence showing that Mission's intentional interference was wrongful and outside the boundaries of fair competition because they unlawfully disseminated, distributed, and used CBB's non-trade secret property and customer information to sabotage and lure away CBB's customers and at-will employees.  Separately, to the extent actionable, it was wrongful because Mission misappropriated CBB's Trade Secrets and used same to hire CBB's at-will employees and steal CBB's current clients and prospective clients, inducing CBB's employees to violate their contractual and legal obligations to CBB;

15

**PRETRIAL CONFERENCE ORDER**

- Testimony and evidence showing that due to Mission's actions, there was an actual disruption of the contractual relationship between CBB and its clients;
- Testimony and evidence showing that CBB suffered financial losses as a result of Mission's solicitation and interference with its contracts.

**Claim 3: Intentional Interference with Prospective Economic Advantage**

- Testimony and evidence showing that CBB had an economic relationship with its former at-will employees, including Della and the Former CBB Employees;
- Testimony and evidence showing that CBB invested substantial resources in developing and training these employees;
- Testimony and evidence showing that CBB had an economic relationship with its current, former, and prospective customers;
- Testimony and evidence showing that CBB's economic relationships with its former at-will employees and its current, former, and prospective customers provided a high probability of future economic benefit to CBB;
- Testimony and evidence showing Mission had actual and constructive knowledge of the at-will employment relations between CBB and its former employees;
- Testimony and evidence showing Mission had actual and constructive knowledge of CBB's relationships with its customers;
- Testimony and evidence showing that Mission knew of the economic value of CBB's relationships with its employees and current, former, and prospective customers;
- Testimony and evidence showing that Mission intentionally interfered with these relationships by soliciting CBB's former employees and customers;

16

**PRETRIAL CONFERENCE ORDER**

- Testimony and evidence showing that Mission intentionally misused CBB's confidential and proprietary information without CBB's consent to solicit CBB's at-will employees, potential clients, and actual clients;
- Testimony and evidence showing that Mission's interference was wrongful and outside the boundaries of fair competition because they unlawfully misappropriated CBB's Trade Secrets and used same to hire CBB's at-will employees and steal CBB's current clients and prospective clients, inducing CBB's employees to violate their contractual and legal obligations to CBB;
- Testimony and evidence showing that Mission's wrongful actions disrupted the economic relationships between CBB and its at-will employees;
- Testimony and evidence showing that Della and certain Former CBB Employees violated their contracts and obligations to CBB;
- Testimony and evidence showing that Mission's wrongful actions disrupted the economic relationships between CBB and its current, former, and prospective customers;
- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its clients and customers;
- Testimony and evidence showing that Mission conspired with Della, Former CBB Employees, and others at Mission to interfere with CBB's relationships with its employees;
- Testimony and evidence showing that Mission's disruption has caused CBB to suffer actual and direct damages.

17

**PRETRIAL CONFERENCE ORDER**

**Claim 4: Negligent Interference with Prospective Economic Relations**

- Testimony and evidence showing that CBB had an economic relationship with its former at-will employees, including Della and the CBB Former Employees;

- Testimony and evidence showing that CBB invested substantial resources in developing and training these employees;

- Testimony and evidence showing that CBB had an economic relationship with its current, former, and prospective customers;

- Testimony and evidence showing that CBB's economic relationships with its former at-will employees and its current, former, and prospective customers provided a high probability of future economic benefit to CBB;

- Testimony and evidence showing Mission had actual and constructive knowledge of the at-will employment relations between CBB and its former employees;

- Testimony and evidence showing Mission had actual and constructive knowledge of CBB's relationships with its customers;

- Testimony and evidence showing that Mission knew of the economic value of CBB's relationships with its employees and current, former, and prospective customers;

- Testimony and evidence showing that Mission owed a duty of care to CBB;

- Testimony and evidence showing that Mission was aware or must have been aware that if it did not act with due care, its actions would interfere with CBB's relationships and cause CBB to lose future economic benefits due to the relationships;

- Testimony and evidence showing that Della and certain Former CBB Employees violated their contracts and obligations to CBB;

**PRETRIAL CONFERENCE ORDER**

- Testimony and evidence showing that Mission misused CBB's confidential and proprietary information without CBB's consent to solicit CBB's at-will employees, potential clients, and actual clients;

- Testimony and evidence showing that Mission's interference was wrongful and outside the boundaries of fair competition because they unlawfully misappropriated CBB's Trade Secrets and used same to hire CBB's at-will employees and steal CBB's current clients and prospective clients, inducing CBB's employees to violate their contractual and legal obligations to CBB;

- Testimony and evidence showing that Mission's wrongful actions disrupted the relationships between CBB and its at-will employees;

- Testimony and evidence showing that Mission's wrongful actions disrupted the relationships between CBB and its current, former, and prospective customers;

- Testimony and evidence showing that Mission's disruption has caused CBB to suffer actual and direct damages.

**Claim 5: Violation of California Unfair Competition Law (Cal. Civ. Code §§ 17200, *et seq.*)**

- In support of its claim, CBB will rely on the key facts and evidence outlined in Section II above to show that Mission committed unlawful and unfair acts;

- Testimony and evidence showing that Mission's unfair business practices harmed competition;

- Testimony and evidence showing that Mission's unlawful and unfair conduct caused economic harm to CBB;

19
**PRETRIAL CONFERENCE ORDER**

- Testimony and evidence showing that injunctive relief would adequately compensate CBB for the harm caused by Mission (but only to the extent not otherwise covered by another claim for which damages are available).

**Defendant's Affirmative Defenses:[5]**

(a)    Defendant plans to pursue the following affirmative defenses:

**Defense 1: Failure to State Trade Secrets with Particularity**

**Defense 2: Alleged Trade Secrets Obtained by Proper Means**

**Defense 3: Inadequate Protection by Owner**

**Defense 4: Information Was Readily Ascertainable by Proper Means**

**Defense 5: Good Faith**

**Defense 6: Failure to Mitigate Damages**

**Defense 7: Conduct Not Unlawful**

**Defense 8: Conduct Not Unfair**

**Defense 9: Adequate Remedy at Law**

(b)    The elements required to establish Defendant's affirmative defenses are:

**Defense 1: Failure to State Trade Secrets with Particularity**

A trade secret plaintiff "must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Agile Sources Partners, Inc. v. Dempsey*, 2021 WL 4860693, at *6 (C.D. Cal. July 15, 2021). "[A]llegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectable trade secrets[] are

---

[5] Plaintiff has not agreed to the content of this Section, including but not limited to the elements, applicable law, characterization of any defense as an affirmative defenses that is not actually an affirmative defense, and key facts/evidence. The parties will continue to meet and confer to find common ground on the content of their respective sections and file an amended Proposed Pretrial Conference Order, as appropriate.

20

insufficient to state a claim." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020) (emphasis original). Accordingly, a trade secret plaintiff cannot rely on catchall phrases or merely identify categories of supposed trade secrets. See *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-67 (9th Cir. 1998). "[A]lthough a plaintiff need not spell out the details of the trade secret, [i]t is inadequate for plaintiff[] to 'cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information.'" *Harvest Small Business Finance v. Mitnick*, 2024 WL 694372, at *6 n.5 (C.D. Cal. Jan. 23, 2024) ("Plaintiffs have not identified the other trade secrets alleged with sufficient particularity and instead cite to entire document files allegedly misappropriated by Defendants."); *X6D Limited v. Li-Tek Corporations Company*, 2012 WL 12952726, at *6-*9 (C.D. Cal. 2012) (granting summary judgment because citing documents that "reference or reflect" trade secrets is not sufficient); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1155 (C.D. Cal. 2007) (granting summary judgment because plaintiffs failed to identify where to find "trade secrets" in 34 documents).

**<u>Defense 2: Alleged Trade Secrets Obtained by Proper Means</u>**

Information that is "generally known" or that is "readily ascertainable through proper means" is not a trade secret. 18 U.S.C. § 1839(3)(B); *Direct Techs., Ltd. Liab. Co. v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016).

**<u>Defense 3: Inadequate Protection by Owner</u>**

Information does not constitutes a trade secret unless a plaintiff "took reasonable measures to maintain the confidentiality of th[e] information." *Virun, Inc. v. Cymbiotika, LLC*, 2023 WL 2372393, at *5 (C.D. Cal. Jan. 3, 2023); see 18 U.S.C. § 1839(3)(A)-(B).

**<u>Defense 4: Information Was Readily Ascertainable by Proper Means</u>**

Information that is "generally known" or that is "readily ascertainable through proper means" is not a trade secret. 18 U.S.C. § 1839(3)(B); *Direct Techs., Ltd. Liab. Co. v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016).

**PRETRIAL CONFERENCE ORDER**

**Defense 5: Good Faith**

A defendant is not liable for trade secret misappropriation unless the defendant acquired, used, or disclosed the purported trade secret using "improper means," which "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and does not include reverse engineering, independent derivation, or any other lawful means and acquisition." 18 U.S.C. § 1839(6).

**Defense 6: Failure to Mitigate Damages**

"A plaintiff cannot be compensated for damages which he could have avoided by reasonable effort or expenditures." *Green v. Smith*, 261 Cal. App. 2d 392, 396 (Ct. App. 1968).

**Defense 7: Conduct Not Unlawful**

"The 'unlawful' prong of the UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "In other words, to be 'unlawful' under the UCL, [a defendant's] conduct must violate another 'borrowed' law." *Id*.

**Defense 8: Conduct Not Unfair**

"An 'unfair' business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Francois & Co., LLC v. Nadeau*, 334 F.R.D. 588, 598 (C.D. Cal. 2020) (quoting McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008)).

**Defense 9: Adequate Remedy at Law**

"[E]quitable relief will not be afforded when the plaintiff's remedies at law are adequate to redress his or her injury." *Ramona Manor Convalescent Hospital v. Care Enterprises*, 177 Cal.App.3d 1120, 1140 (Cal.App. 4 Dist., 1986).

(c)    The key evidence Defendant relies on for its affirmative defenses are:

22

**Defense 1: Failure to State Trade Secrets with Particularity**

(1)    CBB's Complaint failed to identify with sufficient particularity the alleged trade secrets, relying on broad descriptions of categories of purported confidential and non-public information;

(2)    In its written discovery responses, CBB used similar broad and unbounded descriptions failing to sufficiently identify the precise information constituting trade secrets.

(3)    At deposition, CBB's corporate executives were unable to identify specific information constituting trade secrets.

**Defense 2: Alleged Trade Secrets Obtained by Proper Means**

(1)    Neither CBB nor Suncrest required customers or third-party vendors to execute confidentiality agreements preventing them from disclosing information concerning customer accounts and loans with competitor banks.

(2)    Mission lawfully acquired information and documents concerning former CBB customers by receiving information and documents directly from the customers, third parties lawfully possessing such information or documents, or through publicly available sources.

**Defense 3: Inadequate Protection by Owner**

(1)    Neither CBB nor Suncrest required customers or third-party vendors to execute confidentiality agreements preventing them from disclosing information concerning customer accounts and loans with competitor banks.

(2)    Mission lawfully acquired information and documents concerning former CBB customers by receiving information and documents directly from the customers, third parties lawfully possessing such information or documents, or through publicly available sources.

**Defense 4: Information Was Readily Ascertainable by Proper Means**

23

**PRETRIAL CONFERENCE ORDER**

(1)    Neither CBB nor Suncrest required customers or third-party vendors to execute confidentiality agreements preventing them from disclosing information concerning customer accounts and loans with competitor banks.

(2) Mission lawfully acquired information and documents concerning former CBB customers by receiving information and documents directly from the customers, third parties lawfully possessing such information or documents, or through publicly available sources.

### Defense 5: Good Faith

(1)    Neither CBB nor Suncrest required customers or third-party vendors to execute confidentiality agreements preventing them from disclosing information concerning customer accounts and loans with competitor banks.

(2)    Mission lawfully acquired information and documents concerning former CBB customers by receiving information and documents directly from the customers, third parties lawfully possessing such information or documents, or through publicly available sources.

(3)    Mission did not unlawfully acquire or use any of CBB's alleged trade secrets, including, without limitation, because Mission did not conspire with CBB employees to obtain any of CBB's alleged trade secrets.

### Defense 6: Failure to Mitigate Damages

(1) CBB customers and employees experienced dissatisfaction with CBB due to CBB's failure to properly manage its acquisition of Suncrest Bank and the transition of its business.

(2) Had CBB properly managed its acquisition of Suncrest Bank and the transition of its business, its asserted damages could have been avoided.

(3) CBB failed to provide the same level of customer service to Suncrest customers as those customers had come to expect from their bank.

(4) CBB failed to offer customers loans on terms that were satisfactory to the customers.

24

**PRETRIAL CONFERENCE ORDER**

(5) CBB turned down loan applications from customers that then looked to Mission to service their financial needs.

**Defense 7: Conduct Not Unlawful**

As CBB's UCL claim is derivative of its misappropriation of trade secrets claim, Mission anticipates introducing the following key evidence:

(1) CBB's alleged trade secrets consist entirely of public information or information that Mission can (and did) readily obtain through proper means.

(2) Neither CBB nor Suncrest required customers to execute confidentiality agreements preventing them from disclosing information concerning their accounts and loans with competitor banks.

(3) CBB did not use or receive independent economic value from its alleged trade secrets.

(4) Mission did not unlawfully acquire or use any of CBB's alleged trade secrets, including, without limitation, because Mission did not conspire with CBB employees to obtain any of CBB's alleged trade secrets.

(5) CBB is unable to identify what property former CBB employee Dustin Della took him from his office on his last day of employment with CBB.

(6) CBB is unable to establish how certain alleged trade secrets were created.

(7) CBB is unable to establish a causal connection between Mission's alleged misappropriation of trade secrets and CBB's asserted damages.

**Defense 8: Conduct Not Unfair**

As CBB's UCL claim is derivative of its misappropriation of trade secrets claim, Mission anticipates introducing the following key evidence:

(1) CBB's alleged trade secrets consist entirely of public information or information that Mission can (and did) readily obtain through proper means.

(2) Neither CBB nor Suncrest required customers to execute confidentiality agreements preventing them from disclosing information concerning their accounts and loans with competitor banks.

25

**PRETRIAL CONFERENCE ORDER**

(3) CBB did not use or receive independent economic value from its alleged trade secrets.

(4) Mission did not unlawfully acquire or use any of CBB's alleged trade secrets, including, without limitation, because Mission did not conspire with CBB employees to obtain any of CBB's alleged trade secrets.

(5) CBB is unable to identify what property former CBB employee Dustin Della took him from his office on his last day of employment with CBB.

(6) CBB is unable to establish how certain alleged trade secrets were created.

(7) CBB is unable to establish a causal connection between Mission's alleged misappropriation of trade secrets and CBB's asserted damages.

**Defense 9: Adequate Remedy at Law**

(1) In seeking claims for misappropriation of trade secrets and tortious interference through the filing of its Complaint, Mission has elected to pursue remedies at law.

(2) Mission's Complaint seeks equitable remedies of injunctive relief.

## VIII.  REMAINING TRIABLE ISSUES

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

**Claims**

All of the elements of all of Plaintiff's claims, which are as set forth above (subject to further meet and confer by parties to reach agreement on elements, applicable law, and key facts/evidence):

Claim 1: Misappropriation of Trade Secrets (18 U.S.C. § 1836)

Claim 2: Intentional Interference with Contractual Relations

26

**PRETRIAL CONFERENCE ORDER**

Claim 3: Intentional Interference with Prospective Economic Advantage

Claim 4: Negligent Interference with Prospective Economic Relations

Claim 5: Violation of California Unfair Competition Law (Cal. Civ. Code §§ 17200, *et seq.*)

Plaintiff's assertion of a conspiracy between Mission, Della, and others, such that the conduct of each member of the conspiracy is imputed to the other and the co-conspirators are liable for the acts of each other in furtherance of the conspiracy.

Plaintiff's entitlement to damages and the amount of such damages, including but not limited to compensatory and consequential damages, lost net revenue and other losses, exemplary/punitive damages, attorneys' fees and costs, pre and post judgment interest, and such other monetary relief as is permitted under its claims.

Plaintiff's entitlement to and amount of unjust enrichment, restitution (disgorgement) of all money, property, and benefits wrongfully obtained by Mission.

Plaintiff's entitlement to, nature, and specific form of injunctive relief, including but not limited to a permanent injunction.

**Affirmative Defenses**

All of the elements of Defendant's affirmative defenses, which are as set forth above (subject to further meet and confer by parties to reach agreement on elements, applicable law, and key facts/evidence):

Defense 1: Failure to State Trade Secrets with Particularity

Defense 2: Alleged Trade Secrets Obtained by Proper Means

Defense 3: Inadequate Protection by Owner

Defense 4: Information Was Readily Ascertainable by Proper Means

Defense 5: Good Faith

Defense 6: Failure to Mitigate Damages

Defense 7: Conduct Not Unlawful

Defense 8: Conduct Not Unfair

Defense 9: Adequate Remedy at Law

27

**PRETRIAL CONFERENCE ORDER**

## IX.    DISCOVERY

All discovery is complete.

## X.    DISCLOSURES AND EXHIBIT LIST

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The Parties' Joint Exhibit List has been filed under separate cover as required by Local Rule 16-6.1 ("Joint Exhibit List") on September 27, 2024, which is subject to amendment after the Court issues its Order on Mission's pending Motion for Summary Judgment.  In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

## XI.    WITNESS LISTS

Witness lists of the parties were filed with the court on September 27, 2024, which is subject to amendment after the Court issues its Order on Mission's pending Motion for Summary Judgment.

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment) and subject to any amendment after the Court issues its Order on Mission's pending Motion for Summary Judgment.

## XII.    MOTIONS *IN LIMINE*

Motions *in limine* were be filed with the Court on September 27, 2024.  The parties have met and conferred on the motions *in limine*.  The following motions *in limine*, and no others, are pending and, at this time, the parties intend to oppose each of the opposing party's motions, except as noted below:

**CBB**

- *Motion in Limine No. 1* to Preclude Arguments and Evidence that Lay Witness Testimony Regarding Damages is Improper.

28

**PRETRIAL CONFERENCE ORDER**

- *Motion in Limine No. 2* to Preclude Arguments, Evidence, and Testimony Regarding the Methodologies, Contents, and Results of any Pre-Filing Investigation Mission Undertook with Respect to CBB's Allegations.
    - *Mission filed a Qualified Non-Opposition on October 11, 2024.*
- *Motion in Limine No. 3* to Preclude Introduction of Mission Bank Credit Memos or Eliciting Testimony of the Same.
    - *Mission filed a Qualified Non-Opposition on October 11, 2024.*
- *Motion in Limine No. 4* to Preclude Introduction of Evidence Showing Mission Bank Sharing Documents with Competitor Banks or Eliciting Testimony of the Same.
- *Motion in Limine No. 5* to Preclude Introduction of Hearsay Testimony about Whether Plaintiff Approved Certain Loans.

**Mission**

- *Motion in Limine No. 1* – Motion to exclude any expert testimony offered by CBB witnesses, including Michael Stain, Daniel Limon, and Steven Cashiola.
- *Motion in Limine No. 2* – Motion to exclude any documents produced by CBB after the close of fact discovery.
- *Motion in Limine No. 3* – Motion to exclude any testimony regarding portions of the errata sheet to the deposition transcript of Michael Stain.
- *Motion in Limine No. 4* – Motion to exclude any evidence or argument regarding the collection, preservation, or production of documents by Mission in this case, including, without limitation, any evidence or argument concerning any purported spoliation or deletion of relevant information by Mission custodians.
- *Motion in Limine No. 5* - Motion to exclude videos or images of Dustin Della leaving CBB's office with his personal belongings on his last day of employment.

**PRETRIAL CONFERENCE ORDER**

## XIII. BIFURCATION

Bifurcation of the following issues for trial is ordered:

The Court shall bifurcate trial on CBB's 5th claim for violation of Business & Professions Code Section 17200, for equitable relief, including unjust enrichment and an injunction. Such trial shall be a bench trial that occurs after the jury trial on a date to be jointly proposed by the parties.

The issue of the amount of any award of attorneys' fees will be briefed to the Court after the jury trial.

## XIV. ADMISSIONS

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice, on a showing of good cause, or after the Court issues its Order on Mission's pending Motion for Summary Judgment, at which point the content of the Order may require the parties to request amendment of this Order, or otherwise upon request by the Parties after further meet and confers to reach common ground on currently-disputed issues or to otherwise narrow the scope of matters in dispute.

IT IS SO ORDERED.

Dated: October 11, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

**PRETRIAL CONFERENCE ORDER**

1 | Approved as to form and content:

2

3

4 | Dated:  October 11, 2024

**K&L GATES LLP**

By: */s/ Christina N. Goodrich*

5 | Christina N. Goodrich
Ryan Q. Keech
6 | Zachary T. Timm
Connor J. Meggs
7 | Katherine Ramos
*Attorneys for Plaintiff Citizens Business Bank*

8

9 | Dated:  October 11, 2024

**LARSON LLP**

By: */s/ Stephen G. Larson*

10 | Stephen G. Larson

11 | Jonathan E. Phillips

12 | Catherine S. Owens

Tyler J. Franklin

13 | *Attorneys for Defendant MISSION BANK*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

**PRETRIAL CONFERENCE ORDER**